**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
Jacob Cutler (SBN 264988)
*jacobc@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
FRANK GOMEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRANK GOMEZ,** | Case No.: 2:23-cv-03454-SVW-JC |
| Plaintiff, | **DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES** |
| vs. | [Filed Concurrently with Plaintiff's Notice of Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof] |
| **FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,** | *Assigned to the Honorable Judge Stephen V. Wilson* |
| Defendants. | Date:     October 23, 2023<br>Time:     1:30 p.m.<br>Dept.:    10A |

## <u>DECLARATION OF ROGER KIRNOS</u>

I, Roger Kirnos, declare as follows:

1.      I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff Frank Gomez ("Plaintiff") in the instant action.  I am the Managing Partner of Knight Law Group and, as such, I have personal knowledge of the following facts. If sworn as a witness, I could and would testify to them competently.

2.      I make this declaration in support of Plaintiff's Motion for Attorney's Fees, Costs and Expenses ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $22,048.50 in attorney's fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $22,048.50. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $11,024.25, for a total attorney's fee award of $33,072.75. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**.  Plaintiff also requests reimbursement of costs and expenses in the amount of $886.58. My firm advanced all of the costs in this matter. Plaintiff is concurrently filing a motion for costs that attaches Plaintiff's bill of costs.  The total amount requested in fees, costs and expenses is $33,959.33.

3.      On July 1, 2017, Plaintiff purchased a new 2017 Ford F-150 VIN 1FTEW1EG1HKE19250 for a total sales price of $70,854.64 inclusive of a $4,000.00 Mfg. Rebate ("Subject Vehicle"). The vehicle was distributed by Ford Motor Company ("FMC", "Ford" or "Defendant"), which provided an express written warranty to be serviced by Ford authorized repair facilities. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit B**.

4.      On November 4, 2020, within the applicable warranty period, Plaintiff took the Subject Vehicle to a Ford authorized repair facility because of transmission related concerns. The technician replaced multiple transmission components.

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

5.    On February 16, 2021, Plaintiff returned to the dealership with transmission related concerns. The technician replaced the transmission.

6.    From November 3, 2021 until August 25, 2022, Plaintiff brought back the Subject Vehicle with various concerns on about three (3) more occasions. Despite these multiple repair attempts, these problems with the vehicle continued unabated.

7.    Notwithstanding the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiff's vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's issues, which it records in various databases accessible to its authorized repair facilities and the corporate offices. These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem attributable to Ford, and billed Ford for the work.

8.    Despite FMC's affirmative duty under the law to perform an investigation and offer relief, FMC failed to provide restitution in accordance with the Song Beverly Act.

9.    Plaintiff contacted Knight Law and told the firm about the problems with the vehicle and the way FMC treated him. After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to represent him and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. In taking on this duty, the firm was facing a litigation behemoth— FMC is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

10.    As a result of FMC's failure to fix the material defects associated with Plaintiff's vehicle, or otherwise comply with the Song-Beverly Act, Plaintiff filed a

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

Complaint in this action on February 14, 2023, in Los Angeles County alleging willful violations of the Song-Beverly Act, and seeking, among other things, civil penalties.

11.    On March 27, 2023, FMC filed its Answer denying liability and asserting numerous defenses.

12.    Written discovery was promptly drafted and served on Defendant on or about May 3, 2023, consisting of requests for admissions, requests for production of documents, form interrogatories, and special interrogatories. Plaintiff benefited from Knight Law's expertise and efficiency, as just 2.3 hours were billed to draft this entire set of written discovery (including case specific requests about this vehicle and its defects). Plaintiff's counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

13.    On May 5, 2023, FMC removed the case to federal court.

14.    Plaintiff prepared his Rule 26(f) Report and appeared for the scheduling conference on June 12, 2023.

15.    On June 29, 2023, Plaintiff attended the Case Management Conference in State Court.

16.    In July of 2023 Plaintiff made his initial disclosures and engaged in settlement negotiations. On July 17, 2023, Plaintiff attended the status conference re settlement.

17.    On August 23, 2023, FMC served a Rule 68 Offer for $100,000.00 in exchange for surrender of the Subject Vehicle plus a motion for attorney's fees, costs, and expenses. The offer provided a full buyback on the vehicle, incidental and consequential damages, and substantial civil penalties (given the mileage offset). Plaintiffs accepted on September 5, 2023. A true and correct copy of the signed Offer

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

1  is attached hereto as **Exhibit C.**

2      18.    Plaintiff, as the prevailing party in this action, has made every

3  reasonable effort to resolve the payment of Plaintiff's attorney's fees, costs, and

4  expenses by FMC but was forced to file this Motion with the Court. Specifically,

5  Plaintiff engaged in discussions starting on September 14, 2023, and continuing on

6  to September 21, 2023, including multiple telephonic conversations. In fact, Plaintiff

7  offered to reduce their lodestar by (15%) a reduction of thousands of dollars. In

8  response, Ford refused to move its position by even one penny. It only offered what

9  Plaintiff already rejected (the $12,500 provided for in the Rule 68 Offer that could

10  be accepted in lieu of a motion for attorney's fees, costs, and expenses).

11      **The Firm's Fees Incurred in Litigating This Matter Are Reasonable**

12      **Pursuant to the Lodestar Method**

13      19.    I am the Managing Partner at Knight Law Group, LLP.  I graduated in

14  2009 from Southwestern University School of Law in the top 10% with cum laude

15  honors and received several academic based scholarships including the Dean's Merit

16  Award.  While in law school, I was an oralist on the team that reached the semi-

17  finals at the August A. Rendigs, Jr. National Products Liability Moot Court

18  Competition.  I received the CALI Excellence Award for Real Estate Transactions.

19  I received a certificate for completing the Alternative Dispute Resolution program

20  in Hong Kong and Beijing through Pepperdine Law School's esteemed Strauss

21  Institute for Dispute Resolution.  I was a judicial extern for then-Chief Judge

22  Alexander Kozinski of the Ninth Circuit Court of Appeals and thereafter served as

23  a judicial extern to Judge F. Gary Klausner of the United States District Court,

24  Central District of California.  I received a B.A. in Economics with a minor in

25  English from the University of California at Los Angeles, where I graduated with

26  Provost Honors in 2000.  I also studied economics at the University of Westminster

27  in London, England.  I was admitted to the California State Bar in 2012.  I am

28  admitted to practice in each of the United States District Courts in California.

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

20.     I have been prosecuting consumers' claims under the Song-Beverly Act, and other consumer statutes such as the Consumer Legal Remedies Act ("CLRA) and the Automobile Sales Finance Act ("ASFA"), since 2013.  I joined Knight Law Group in 2017 as a Partner at the firm.  My professional focus has been to protect consumers from large-scale abuses by automobile manufacturers.  I have been involved in the settlement of hundreds of cases over the years.  I have been trial counsel in over 25 consumer-protection cases that have gone to jury verdict, and was one of the trial attorneys on the team that won a record verdict of $8.2M against Ford Motor Company, besting previous jury verdicts of $7.6M, $2.8M, and $1.6M.  Three of these verdicts were in the Top 50 of all verdicts in California in the year they were rendered according to Top Verdicts, and were the #1, #2 and #5 top verdicts in the area of "Consumer Fraud, Deceptive Trade Practices, False Advertising, Fraudulent Concealment, Lemon Law" that year.  In addition to litigating individual cases, I have been the lead attorney for Knight Law's clients in multiple federal Multi-District Litigation and state Judicial Counsel Coordinated Proceedings.  I have represented clients in appeals and was personally and directly involved in authoring the briefing in at least 20 appeals, whether as appellant or respondent, including the following list of cases, which is not an exhaustive list of all appellate matters in which Knight Law Group was involved (Note: One asterisk (*) signifies an appeal brought as an Appellant, and two asterisks (**) signifies an appeal in which we were the Respondent):

<u>Published Opinions</u>

a.  *Warren v. Kia Motors America* (2018) 30 Cal.App.5th 24; San Bernardino County, Case No. CIVDS1414575; Fourth Appellate District, Case No. SCV254959*

b.  *Hanna v. Mercedes-Benz, USA* (2019) 36 Cal.App.5th 493; Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776*

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

c. *Patel v. Mercedes-Benz, USA* (2019) 43 Cal.App.5th 1007; Los
Angeles County, Case No. BC580425; Second Appellate
District, Case No. B293813*

d. *Berroteran v. Ford Motor Company* (2019) 41 Cal.App.5th 518
(*review granted* 2/11/20); Los Angeles County, Case No.
B542525; Second Appellate District, Case No. B296639*

e. *Berroteran v. Ford Motor Company* (2022) --- P.3d ----, 2022
WL 664719 Los Angeles County, Case No. B542525; California
Supreme Court, Case No. S259522

f. *Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105;
Sonoma County Case No. SCV254959; First Appellate District,
Case No. A154811**

g. *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946,
San Joaquin County, Case No. 39-2013-00299512-CU-BC-
STK; Third Appellate District, Case No. C089603**

h. *Niedermeier v. FCA US* (2020) 56 Cal.App.5th 1052 (*review
granted* 2/20/21); Los Angeles County, Case No. BC638010;
Second Appellate District, Case No. B293960**

i. *Hernandez v. FCA US* (2020) 50 Cal.App.5th 329 Los Angeles
County, Case No. BC668240; Second Appellate District, Case
No. B296516*

j. *Reck v. FCA US* (2021) 64 Cal.App.5th 682, Alameda County,
Case No. RG16836069; First Appellate District, Case No.
A157966*

k. *Covert v. FCA US,* (2022) 73 Cal.App.5th 821, Los Angeles
County, Case No.  BC629240, Second Appellate District, Case
No. B293960**

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES,
COSTS AND EXPENSES

Unpublished Opinions / Pending Appeals

l.   *Palombi v. FCA, US*, Solano County, Case No. FCS043387; First Appellate District, Case No. A156166*

m.  *Margeson v. Ford Motor Company*, Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776**

n.   *Cofield v. Kia Motors America*, Kern County, Case No. S-1500-CV283504; Fifth Appellate District, Case No. F074977**

o.   *Myers v. Ford Motor Company*, Los Angeles County, Case No. BC638302; Second Appellate District, Case No. B297244**

p.   *Cieslikowski v. FCA US* (2020) 809 Fed.Appx. 386; USDC Central Dist., Case No. 5:17-cv-00562; Ninth Circuit, Case No. 21-55874*

q.   *Bowser v. Ford Motor Company*, Riverside County, Case No. MCC1301631; Fourth Appellate District, Case No. E073609**

r.   *Nolan v. Ford Motor Company*, Riverside County, Case No. RIC1307491; Fourth Appellate District, Case No. E073850**

s.   *Brown v. Ford Motor Company,* Butte County, Case No. 160060; Third Appellate District, Case No. C088419**

t.   *Coon v. Ford Motor Company*, Riverside County, Case No. MCC1300767; Fourth Appellate District, Case No. E073138**

u.   *Rodriguez v. FCA US*, Riverside County, Case No. RIC1807727; Fourth Appellate District, Case No. E73766*

v.   *Madrigal v. Hyundai Motor America*, Placer County, Case No. CV00338395; Third Appellate District, Case No. C090463**

w.  *Figueroa v. FCA US*, Ventura County, Case No. 56-2018-00507038; Second Appellate District, Case No. B306275*

x.   *Quintero v. Ford Motor Company*, USDC Central District, Case No. 2:18-cv-01912-AB-FFM; Ninth Circuit, Case No. 20-5583*

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

21.    In addition to the above published and unpublished opinions, my firm was also involved in numerous other notable unpublished appellate decisions such as:

Notable Favorable Unpublished Opinions

    a.    *Smart v. Ford Motor Company*, Butte County, Case No. 159509; Third Appellate District, Case No. C087422*

    b.    *Noflin v. Volkswagen Group of America*, Los Angeles County, Case No. BC575800; Second Appellate District, Case No. B275638*

    c.    *McCullough v. FCA US* San Diego County, Case No. 37-2015-00013501-CU-BC-CTL; Fourth Appellate District, Case No. D073330*

Published opinions:

    d.    *Etcheson v. FCA US* (2018) 30 Cal.App.5th 831*

    e.    *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24*

    f.    *Montoya v. Ford Motor Company* (2020) 46 Cal.App.5th 493**

    g.    *Santana v. FCA US* (2020) 56 Cal.App.5th 334*

22.    I am a member of, and have been a presenter at conferences, for the National Association of Consumer Affairs discussing topics including automotive fraud generally and best practices for pursuing and calculating damages to maximize consumers' recoveries.  I have also presented a Continuing Legal Education course addressing recent and upcoming changes in the area of the Song-Beverly Act and other consumers statutes such as the Consumer Legal Remedies Act by educating attorneys about recent appellate decisions and upcoming appellate issues to be decided.  I am also actively involved with non-profit groups such as Consumers for Auto Reliability and Safety and professional organizations such as Consumer Attorneys of California where I sit on the organization's PAC Board.  I have also been voted by my peers as a Super Lawyer Rising Star each year since

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

2018 to present. I am a member of the Los Angeles County Bar Association and Beverly Hills Bar Association.  My current billing rate is $500 and my initials are indicated in the billing as "RK".

23.    Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013.  Prior to her admission, she was a law clerk with my office since 2012.  Ms. Morse graduated from Loyola Law School.  Ms. Morse's hourly rate in this matter was $350/hour for 2013-2020, $400/hour for 2021, $425/hour for 2022 and $450/hour for 2023.  Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

24.    Elvira Kamosko is an Associate Attorney at Knight Law Group. She graduated from Southwestern Law School and was admitted to practice in 2021. Ms. Kamosko's hourly rate in this matter is $295/hour. Ms. Kamosko's billing entries are indicated by the initials "EK" in the billing statement exhibited to this declaration.

25.    Jacob Cutler, a Senior Attorney at Knight Law, graduated from the University of Miami School of Law and was admitted to practice in California in 2009.  Prior to his employment at Knight Law, he worked for over five years at a different lemon law firm gaining valuable experience in this area of law.  At Knight, Mr. Cutler focuses on trial practice, and post-trial/settlement motions. Mr. Cutler's hourly rate in this matter is $425/hour for 2020-2021, $450/hour for 2022, and $495/hour for 2023.  Mr. Cutler's billing entries are indicated by the initials "JWC" in the billing statement exhibited to this declaration.

26.    Lauren Ungs is a Partner at Knight Law Group, LLP.  Ms. Ungs has been an attorney at Knight Law Group, LLP since July 12, 2012.  She graduated magna cum laude from Southwestern Law School's two-year SCALE program in 2010 and has been a member of the California bar, actively practicing law for over twelve years.   She currently specializes in representing California consumers in lemon law and automotive fraud cases. Ms. Ungs also previously served as a

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

judicial extern for Honorable Patrick J. Walsh in the United States District Court, Central District of California. In addition to being a member of the State Bar of California, Ms. Ungs is on the Board of Directors of the Consumer Attorneys of California ("CAOC") and a member of the San Francisco Trial Attorneys Association ("SFTLA"). Ms. Ungs has been selected as a Rising Star by Super Lawyers from 2018 through 2023. Ms. Ungs frequently leads presentations on strategies relating to novel legal issues and statutory interpretation in the consumer-protection context. Ms. Ungs has participated in more than twenty-four (24) lemon law and/or auto-fraud trials, with over 80% resulting in verdicts for consumer-plaintiffs. Included in the cases in which Ms. Ungs participated in are *Brown v. Ford Motor Company* (Butte County Case No. 160060; Jury Verdict: $1,958,836.68), *Anderson v. Ford Motor Company* (San Joaquin County Case No. STK-CV-UBC-2013-0007198; Jury Verdict: $227,715.60), *Nolan v. Ford Motor Company* (Riverside County Case No. RIC1307491; Jury Verdict: $8,244,269.82), *Coon v. Ford Motor Company* (Riverside County Case No. MCC1300767; Jury Verdict: $1,599,525.02), and *Margeson v. Ford Motor Company* (Los Angeles County Case No. BC549430; Verdict: $940,177.74). Ms. Ungs was also part of the team of trial attorneys from my office that completed the only Volkswagen diesel emissions scandal trial to verdict in the United States, resulting in a verdict in favor of over half of the plaintiffs and coordinated the subsequent successful appeal in the Ninth Circuit. In addition, Ms. Ungs has been appointed liaison counsel for consumer-plaintiffs in statewide coordinated lemon law and auto fraud litigation. Ms. Ungs' hourly rate in this matter is $425/hour for 2012-2020, $450/hour for 2021, $475/hour for 2022, and $525/hour for 2023. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

27.    Maite Colón is a Senior Associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011 and was admitted to

practice law in California in 2018.  Mrs. Colón has been employed at my law firm since 2017. Mrs. Colón is also admitted to the practice of law in the State of Florida (2012), the District of Columbia (2013) as well as the United States District Court for the Central, Southern and Northern Districts of California, the Southern District of Florida and the District Court of Puerto Rico. In addition, Mrs. Colón is a member of the Consumer Attorneys of California ("CAOC") and holds a Certificate in Mediation and International Commercial Arbitration from the Humboldt-Universität zu Berlin (2010).  Prior to joining my firm, Mrs. Colón worked at an international law firm advising clients in the energy sector and gaining valuable experience in the areas of project finance, commercial transactional work and international law representing international clientele.  Mrs. Colón also served as legislative advisor to the Government of the Commonwealth of Puerto Rico in 2013. Mrs. Colón's hourly rate in this matter is $300/hour for 2017-2020, $345/hour for 2021, $395/hour for 2022 and $425/hour for 2023, and her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

28.     Marisa Melero is a senior associate at my firm. Ms. Melero has been employed by the firm since March of 2017. Ms. Melero graduated from University of California Los Angeles, Southwestern Law School, and was admitted to practice law in 2015. Her prior professional experience includes employment and entertainment law where she also gained valuable experience in the area of copyright, contracts and negotiations. Ms. Melero's hourly rate in this matter is $225/hour for 2017-2020, $295/hour for 2021, $345/hour for 2022 and $395/hour for 2023. Ms. Melero's billing entries are indicated by the initials "MM" in the billing statement exhibited to this declaration.

29.     Sundeep Samra is an associate at my firm.  Mr. Samra was admitted to the Bar in 2018 and has been working at the firm since then.  He is a graduate of the two-year accelerated program at Southwestern Law School and received his undergraduate degree from the University of California, Los Angeles (UCLA).  Mr.

Samra specializes in handling discovery matters, opposing motions for summary judgment or adjudication, arbitrations, and second-chairing trials. His hourly rate in this matter is $225/hour for 2018-2020, $270/hour for 2021, $325/hour for 2022 and $375/hour for 2023. His billing entries are indicated by the initials "SS" in the billing statement exhibited to this declaration.

30.    Scot Wilson is a Partner in my office. Mr. Wilson has been with my firm since 2020. Prior to joining my firm, Mr. Wilson was a partner at the law firm of Robinson Calcagnie, Inc., where he exclusively represented plaintiffs. Before joining Robinson Calcagnie in 2010, Mr. Wilson was also previously a shareholder at a business litigation firm in Newport Beach for six (6) years where he represented clients in business, employment, and class action litigation. Before that, Mr. Wilson was an associate at an international law firm in Irvine for two (2) years. Mr. Wilson also served as a pro bono Deputy District Attorney with the Orange County District Attorney's Office Trial Attorney Partnership Program. Mr. Wilson also previously served as a judicial extern for Judge William J. Rea in the United States District Court for the Central District of California. After receiving his undergraduate degree from the University of California, San Diego (UCSD) in 1999, Mr. Wilson graduated cum laude from Pepperdine University School of Law in 2002. While at Pepperdine, Mr. Wilson served as Note & Comment Editor for the Pepperdine Law Review and won the Dalsimer Moot Court Competition. In addition to cases in California, Mr. Wilson has been admitted pro hac vice and handled cases in state and federal courts throughout the country, including the C.D. Cal., N.D. Cal., S.D. Cal., E.D. Cal., 9th Cir., E.D. Pa., N.D. Ill., S.D.N.Y., S.D. Ohio, and D. N.J., and Arizona, New Jersey, Florida, New York, Illinois, and Michigan. In addition to being a member of the State Bar of California, Mr. Wilson is a member of the Western Trial Lawyers Association ("WTLA"), Consumer Attorneys of California ("CAOC"), Orange County Bar Association ("OCBA"), Association of Business Trial Lawyers ("ABTL"), and Orange County Trial Lawyers Association

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

("OCTLA"), Consumer Attorneys Association of Los Angeles ("CAALA), and the Orange County Chapter of the Federal Bar Association ("FBA/OC"). In 2015 and 2016, Mr. Wilson was on the Board of Directors for the OCTLA. Mr. Wilson is the author of the Recent Cases column in the CAOC's Forum Magazine and is a member of the OCBA's Administration of Justice committee. Mr. Wilson has been named a Super Lawyer by Los Angeles Magazine for his work. In 2018, Mr. Wilson was a recipient of the California Lawyer Attorney of the Year ("CLAY") Award. Mr. Wilson frequently gives presentations to other lawyers regarding trial advocacy, deposition techniques, and emerging issues in personal injury, consumer protection, and class action lawsuits. Mr. Wilson's hourly rate in this matter is $595/hour for 2020-2022 and $645/hour for 2023. Mr. Wilson's billing entries are indicated by the initials "SW" in the billing statement exhibited to this declaration.

31. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

32. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm does not bill clients for secretarial support staff time other than for senior trial paralegals.

33. On May 23, 2023, Judge Colin Leis awarded 96% of the attorney's fees requested in the amount of $81,755.50 out of $85,280.50, a ***1.5 multiplier*** of $40,877.75 (based on contingent risk), and approved rates as reasonable ranging from $595/hr-$200/hr in the matter of *Ivonne Torres v. Ford Motor Company* (Los Angeles Superior Court, Case No. 19STCV14751). A true and correct copy of the Order is attached hereto as **Exhibit D.**

///

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

34.     On January 19, 2023, Judge Malcolm Mackey awarded 100% of the attorney's fees requested in the amount of $54,338.00, and approved rates as reasonable ranging from $595/hr-$200/hr in the matter of *Victor Lozano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. 19STCV43316). A true and correct copy of the Order is attached hereto as **Exhibit E.**

35.     On June 28, 2022, Judge Monica Bachner awarded attorney's fees in the amount of $333,801.50 out of $373,801.50 requested, and approved rates as reasonable ranging from $595/hr-$200/hr in the matter of *Sonia De Leon v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. 19STCV11353). A true and correct copy of the Order is attached hereto as **Exhibit F.**

36.     On March 8, 2022, Judge Maurice Leiter awarded 100% of the attorney's fees requested in the amount of $130,161.50, all of the costs and expenses requested in the amount of $20,236.89, and awarded rates as reasonable ranging from $650/hr-$200/hr in the matter of *Lino Bolvito v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. BC640055). A true and correct copy of the Order is attached hereto as **Exhibit G.**

37.     On October 15, 2021, Judge Gregory Alarcon awarded 94% of the attorney's fees requested in the amount of $42,135.00 out of $44,935.00, 100% of the costs and expenses requested in the amount of $2,782.77, and awarded rates as reasonable ranging from $750/hr-$200/hr in the matter of *Ana Del Carmen Locayo v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 18STCV05153). A true and correct copy of the Court's minute order is attached hereto as **Exhibit H.**

38.     On June 28, 2021 Judge Armen Tamzarian awarded 99% of the attorney's fees requested in the amount of $25,229.50 out of $25,554.50 and awarded rates as reasonable ranging from $800/hr-$200/hr including $800/hr for Mr. Bryan Altman, $595/hr for Mr. Scot Wilson, and $550/hr for Mr. Steve Mikhov in the matter of *Hector Lara Mejia v. Ford Motor Company LLC* (Los Angeles

Superior Court, Case No. 19STCV21898). A true and correct copy of the Court's minute order is attached hereto as **Exhibit I**.

39.    On November 23, 2020 Judge Anthony J. Battaglia awarded attorney's fees in the amount of $47,030.00 out of $54,732.50 requested and approved all requested rates as reasonable including my rate of $550/hr, Mr. Wirtz's rate of $650/hr, Ms. Barns rate of $450/hr, Ms. Rotman's rate of $450/hr, Mr. Higgins' rate of $450/hr, and Ms. Morse's rate of $350/hr in the matter of *Juan Herrera and Elizabeth Herrera v. FCA US LLC* (United States District Court Southern District, Case No.: 3:17-cv-00579-AJB-BGS). A true and correct copy of the Court's minute order is attached hereto as **Exhibit J.**

40.    On September 8, 2020 Judge Virginia A. Phillips awarded attorney's fees in the amount of $39,003.85 out of $48,778.75 requested and approved the following rates as reasonable; Mr. Mikhov's rate of $550/hr, Mr. Lear's rate of $595/hr, Ms. Morse's rate of $350/hr, Ms. Morrison's rate of $375/hr, Ms. Stevenson-Cheang's rate of $350/hr, Mr. Devabose's rate of $275/hr, Ms. Colon's rate of $275/hr and Mr. Kalinowski's rate of $275/hr in the matter of *Caleb Lin v. BMW of North America, LLC et al* (United States District Court Central District of California, Case No. 2:18-cv-08297-VAP-PLA). A true and correct copy of the Court's minute order is attached hereto as **Exhibit K.**

41.    On August 21, 2020 Judge Barbara Meiers awarded 100% of the attorney's fees requested and awarded a ***multiplier of .5*** (based on the excellent result achieved for Plaintiffs) for a total of $30,377.25 in the matter of *Jose Luis Chavez Ramirez et al v. General Motors LLC* (Los Angeles Superior Court, Case No. 19STCV08317). The Court approved all requested rates as reasonable ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit L**.

42.    On August 13, 2020 Judge Michelle Williams Court awarded 100% of the attorney's fees requested in the amount of $71,937.50 which included approving

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

all rates sought as reasonable including Mr. Mikhov's rate of $550/hr, co-counsel Mr. Wirtz's rate of $650/hr, Russell Higgins' rate of $450/hr, Amy Morse's rate of $350/hr, and younger attorney's rates ranging from $275/hr-$225/hr in the matter of *Misty Miranda et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC625980). A true and correct copy of the signed judgment is attached hereto as **Exhibit M**.

43.    On July 24, 2020 Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. FMC of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the Court's minute order is attached hereto as **Exhibit N**.

44.    On June 23, 2020, Judge Teresa Beuadet awarded 100% of Plaintiffs' attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the Court's minute order is attached hereto as **Exhibit O**.

45.    On March 23, 2020, Judge Barbara Scheper awarded $27,470 in attorney's fees out of $24,877.50 requested, a ***1.5 multiplier*** of $13,735, as well as full costs and expenses in the amount of $6,850.73 in the matter of *Eluterio Murillo v. FCA US LLC* (Los Angeles Superior Court, Case No. 18STCV06504). The Court approved all of Plaintiffs' rates as reasonable which ranged from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit P**.

46.    On February 5, 2020, Judge Robert B. Broadbelt III awarded Knight Law Group 100% of its requested fees and costs which amounted to $16,737.50 in fees and $28,439.91 in costs in *Roman Salcedo & Tania Ortega v. FCA* (Los Angeles Superior Court, Case No. BC655659). In addition, the court approved all requested rates from $550/hr to $200/hr. A true and correct copy of the signed order is attached

hereto as **Exhibit Q**.

47.    On January 16, 2020, Judge Yolanda Orozco granted lodestar attorney fees in the amount of $44,063.75, which represented 96% of the requested lodestar fee amount of $45,801.25, and full costs in the amount of $5,752.87 in the matter of *Shahriar Yazdanniaz v. FCA US LLC et al.* (Los Angeles Superior Court, Case No. BC686906). In particular, the hourly rates awarded as reasonable ranged from $550 to $595 per hour for senior-level attorneys such as Mr. Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Kirk Donnelly, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit R.**

48.    On January 15, 2020, Judge Mel Red Recana granted lodestar attorney fees in the amount of $86,866.25 (which represented over 87% of the requested lodestar of $99,290.00) and in addition, awarded a ***1.2 multiplier*** of $17,377.25 stating "Plaintiffs' counsel accepted this case on contingency, advanced costs, and was required to secure a settlement greater than Defendant's Section 998 offer in order to get any attorney's fees. Thus Plaintiffs' counsel took on financial risk in accepting this case and litigating it for three years up to the date of trial in the matter of *Claudia Ewing et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC638178). In particular, the hourly rates awarded ranged from $550 to $595 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

49.    On August 26, 2019, Judge Gregory W. Alarcon awarded 100% of the requested lodestar attorney's fees in the amount of $51,143.50 and $14,916.21 in costs and expenses in the matter of *Tanisha Pitts vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC690577). The hourly rates awarded ranged from

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

Steve Mikhov's rate at the time of $550 for senior-level attorneys; $350 per hour for partner Amy Morse; and $375 to $300 per hour for attorneys and senior associate Kristina Stephenson-Cheang; and $200 for younger attorneys. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit T.**

50.    On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $250 per hour for attorney Lauren C. Martin to $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for Steve Mikhov's and $550 per hour for trial counsel, Michael Rosenstein.  A true and correct copy of the Court's minute order is attached hereto as **Exhibit U.**

51.    On June 25, 2019, Judge Holly J. Fujie in the matter of *Anthony S. Carruthers v. FCA US LLC* (Los Angeles Superior Court, Case No. BC639911) awarded attorney's fees in the amount of $65,045, 100% of the amount of the lodestar fees requested, which included approving hourly rates for attorneys at my firm ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit V**.

52.    On June 5, 2019, Judge Dennis Landin awarded attorney's fees in the amount of $63,039.25, 99% of the lodestar fees requested of $63,364.25, in the matter of *Janiece Garza v. FCA US LLC, et al* (Los Angeles Superior Court, Case No. BC635166. The Court, other than reducing Steve Mikhov's hourly rate of $550/hr to $500/hr, approved our rates ranging from $375/hr-$200/hr also awarded costs and expenses in the amount of $7,249.12. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit W**.

53.    On April 9, 2019, Judge Teresa A. Beaudet awarded 100% of the total requested lodestar fees in the amount of $57,910 in the matter of *Chiara Di Martino*

*vs. Hyundai Motor America* (Los Angeles County Superior Court, Case No. BC631896). The hourly rates approved ranged from $550 for managing partners of law firms such as Steve Mikhov; $350 for partner Amy Morse; $350 for senior attorney Christopher Thoms; $375 for senior associates Kristina Stephenson-Cheang and Alastair Hamblin; and $275 to $250 for associates Deepak Devabose and Daniel Kalinowski. A true and correct copy of the Court's minute order is attached hereto as **Exhibit X**.

54.    On February 20, 2019, Judge Anthony Mohr awarded 100% of the total requested lodestar fees and cost as well as ***a .2 multiplier***, totaling in the amount of $88,470.80 in the matter of *Antonio Martinez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC624319). The range of hourly rates confirmed included $550 for managing partners of law firms such as Steve Mikhov; $350 for partner Amy Morse; and $350 for senior attorney Christopher Thoms; and $200 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

55.    On January 25, 2019, Judge Maureen Duffy-Lewis awarded 100% of requested lodestar fees and costs in the amount of $41,992.62 in the matter of *Antonious Nieuwenhuis vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC671090). The hourly rates confirmed ranged from $550 for managing partners such as Steve Mikhov; $450 to $350 for partners Russel Higgins and Amy Morse; $375 for senior attorneys Constance Morrison and Christopher Thoms; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit Z**.

56.    On September 17, 2018, Judge Elizabeth Feffer awarded $33,896.17 which was 100% of the attorney's fees, costs and expenses requested in the matter of *Avilio Siciliano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. BC620966). The Court approved all requested rates as reasonable ranging from

$500/hr-$250/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit AA.**

57.    On January 5, 2018, Judge Mel Red Recana granted 100% of the requested lodestar attorney fees in the amount of **$529,885.50 and $96,840.81** in costs and expenses in the matter of *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430). Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a ***1.8 multiplier of $423,908.40*** to be added to the fee award.  In addition, the hourly rates awarded as reasonable ranged from $500 to $650 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, myself, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit BB.**

58.    In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report ("the Report") published in 2019 reflecting rates for 2017 to 2018.  Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law.  On Pages 1– 20, the purpose and methodology of the Report is described.  On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience.  The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California.  On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards.  The entire report is 598 pages so I have attached only the

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

relevant pages dealing with California attorneys and California law. A true and correct copy of the report is attached hereto as **Exhibit CC**.

59.    I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendants' attorneys who get paid monthly regardless of the outcome.  Moreover, Defendants' attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

60.    It is not uncommon for attorney's fees and costs to exceed the client's damages.  The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, FMC could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on and honored Plaintiff's prelitigation request for a buyback. Instead, FMC engaged in expensive litigation, and drove up fees and costs by, among other things, denying liability, removing the case to federal court, and litigating the case for about six months causing Plaintiff to attend multiple court hearings.

61.    Lemon law cases are not simple actions.  They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced.  The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate

these matters.  They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

62.    Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law.  In effect, FMC also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of September 2023, at Los Angeles, California.


*/s/ Roger Kirnos*
ROGER KIRNOS

DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

# EXHIBIT A

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| 2/1/2023 | LAU | $525.00 | Review repair records; review documents provided by client; analyze case; determine which causes of action to include in the complaint | 0.4 | $210.00 |
| 2/7/2023 | MC | $425.00 | Review/edit draft complaint | 0.8 | $340.00 |
| 2/10/2023 | MC | $425.00 | Review and sign finalized Complaint | 0.1 | $42.50 |
| 2/10/2023 | MC | $425.00 | Review and sign Demand for Jury Trial | 0.1 | $42.50 |
| 2/21/2023 | AL | $375.00 | Review Court Notice of CMC | 0.1 | N/C |
| 2/21/2023 | AL | $375.00 | Review Court Notice of OSC re Proof of Service | 0.1 | N/C |
| 3/27/2023 | RK | $550.00 | Review Def's Answer to Complaint | 0.2 | $110.00 |
| 5/3/2023 | MC | $425.00 | Prepare Plaintiffs' Form ROGs to Defendant | 0.3 | $127.50 |
| 5/3/2023 | MC | $425.00 | Prepare Plaintiffs' Special ROGs to Defendant and Declaration | 1.1 | $467.50 |
| 5/3/2023 | MC | $425.00 | Prepare Plaintiffs' RFA to Defendant and Declaration | 0.5 | $212.50 |
| 5/3/2023 | MC | $425.00 | Prepare Plaintiffs' RFP to Defendant | 0.4 | $170.00 |
| 5/9/2023 | MC | $425.00 | Review Defendant's Notice of Removal; update file | 0.2 | $85.00 |
| 5/30/2023 | ALM | $450.00 | Review and sign meet and confer letter to Defense re initial CMC | 0.1 | $45.00 |
| 6/5/2023 | MC | $425.00 | Prepare for 26f conference | 0.4 | $170.00 |
| 6/5/2023 | MC | $425.00 | Confer with opposing counsel re Rule 26f conference | 0.3 | $127.50 |
| 6/5/2023 | MC | $425.00 | Confer with S. Wilson re scheduling conference | 0.2 | $85.00 |
| 6/9/2023 | MC | $425.00 | Review/edit and finalize draft 26f report | 0.8 | $340.00 |
| 6/11/2023 | SW | $645.00 | Review complaint and court orders, Rule 26(f) report; Review repair orders and case documents; Prepare for Scheduling Conference | 1.7 | $1,096.50 |
| 6/12/2023 | SW | $645.00 | Travel to LA for scheduling conference; Attend scheduling conference; Travel back to OC from LA; Prepare memo re scheduling conference and next steps | 6.0 | $3,870.00 |
| 6/14/2023 | AL | $375.00 | Prepare CMS | 0.2 | N/C |
| 6/14/2023 | ALM | $450.00 | Review and sign Case Management Statement and Notice of Jury Fees | 0.1 | $45.00 |
| 6/14/2023 | MM | $395.00 | Compute damages and review file | 0.3 | $118.50 |
| 6/26/2023 | MC | $425.00 | Prepare for meet and confer call with opposing counsel re settlement demand, review file and documents for demand calculation | 0.6 | $255.00 |
| 6/26/2023 | MC | $425.00 | Meet and confer with opposing counsel re Plaintiff's settlement demand | 0.4 | $170.00 |

**Gomez, Frank v. FMC**

Knight Law Group, LLP
Invoice

2:23-cv-03454-SVW-JC

| | | | | | |
|---|---|---|---|---|---|
| 6/29/2023 | EK | $295.00 | Prepare for and attend case management conference | 0.9 | $265.50 |
| 6/30/2023 | MC | $425.00 | Email correspondence with opposing counsel re settlement demand | 0.2 | $85.00 |
| 6/30/2023 | MC | $425.00 | Review file and confer internally re counter demand | 0.3 | $127.50 |
| 7/5/2023 | SW | $645.00 | Multiple correspondence re settlement | 0.2 | $129.00 |
| 7/12/2023 | MC | $425.00 | Review and analyze repair orders for incidental/consequential damages re negotiations with opposing counsel and confer with opposing counsel re settlement and confer internally re Defendant's offer | 0.3 | $127.50 |
| 7/12/2023 | MC | $425.00 | Review/edit and finalize initial disclosures and document production | 0.8 | $340.00 |
| 7/13/2023 | SW | $645.00 | Review order re scheduling conference and review correspondence re settlement discussions | 0.3 | $193.50 |
| 7/17/2023 | SW | $645.00 | Multiple correspondence re settlement; Prepare for status conference re settlement and scheduling conference; Travel to LA for same; Appear at hearing; Travel back to OC from court in LA; Prepare memo re hearing | 5.5 | $3,547.50 |
| 7/17/2023 | RK | $550.00 | Review internal emails re settlement discussions, review and assess case file, respond to emails | 0.3 | $165.00 |
| 7/18/2023 | ALM | $450.00 | Review summary re results of settlement conference hearing | 0.1 | $45.00 |
| 7/19/2023 | SW | $645.00 | Review order re status conference; Discuss settlement with R. Kirnos | 0.5 | $322.50 |
| 8/7/2023 | MC | $425.00 | Review and analyze file and Defendant's notice for removal and determine whether a Motion for Remand is proper | 0.5 | $212.50 |
| 8/8/2023 | RK | $550.00 | Receive email from S. Wilson re offer from Ford, review offer | 0.1 | $55.00 |
| 8/11/2023 | MC | $425.00 | Review and analyze file re status of discovery and advise litigation assistant re next steps | 0.3 | $127.50 |
| 8/14/2023 | SW | $645.00 | Review Ford's Rule 68 offer and correspondence re same and multiple correspondence re status of settlement | 0.5 | $322.50 |
| 8/31/2023 | RK | $550.00 | Meeting with S. Samra re review of Def's statutory offer, review case file (time split with other cases discussed) | 0.2 | $110.00 |
| 8/31/2023 | SS | $375.00 | Review and analyze Defendant's Rule 68 offer | 0.6 | $225.00 |
| 9/5/2023 | SS | $375.00 | Communication with client re Def's Rule 68 offer | 0.7 | $262.50 |

Case 2:23-cv-03454-SVW-JC   Document 23-2   Filed 09/22/23   Page 27 of 233   Page
Gomez, Frank v. FMC                    Knight Law Group, LLP                   2:23-cv-03454-SVW-JC
                                             ID #:692

**Invoice**

| | | | | | |
|---|---|---|---|---|---|
| 9/5/2023 | SS | $375.00 | Draft correspondence to client memorializing agreement to accept Def's Rule 68 offer | 0.1 | $37.50 |
| 9/5/2023 | ALM | $450.00 | Review file re status of upcoming federal hearing an discuss with staff | 0.2 | $90.00 |
| 9/14/2023 | JWC | $495.00 | Meet and confer on attorney's fees, costs and expenses | 0.2 | $99.00 |
| 9/21/2023 | JWC | $495.00 | Meet and confer on attorney's fees, costs and expenses telephonically and via email | 0.5 | $247.50 |
| 9/21/2023 | JWC | $495.00 | Draft motion for costs and supporting declaration | 2.4 | $1,188.00 |
| 9/22/2023 | JWC | $495.00 | Draft motion for attorney's fees, costs and expenses and supporting declaration | 4.3 | $2,128.50 |
| TBD | JWC | $495.00 | Review and analyze Defendant's Opposition to Motion for Attorney's Fees and Motion Costs and Expenses (Anticipated) | 2.0 | $990.00 |
| TBD | JWC | $495.00 | Draft Reply to Opposition to Motion for Attorney's Fees and Motion for Costs and Expenses (Anticipated) | 4.0 | $1,980.00 |
| TBD | JWC | $495.00 | Prepare for and appear at hearing on Motion for Attorney's Fees and Motion for Costs and Expenses (Telephonically) (Anticipated) | 1.0 | $495.00 |
| | | | Total Attorney Fees | 42.0 | $22,048.50 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $450.00 | Amy Morse | 0.5 | $225.00 |
| EK | $295.00 | Elvira Kamosko | 0.9 | $265.50 |
| JWC | $495.00 | Jacob Cutler | 14.4 | $7,128.00 |
| LAU | $525.00 | Lauren Ungs | 0.4 | $210.00 |
| MC | $425.00 | Maite Colon | 8.6 | $3,655.00 |
| MM | $395.00 | Marisa Melero | 0.3 | $118.50 |
| RK | $550.00 | Roger Kirnos | 0.8 | $440.00 |
| SS | $375.00 | Sundeep Samra | 1.4 | $525.00 |
| SW | $645.00 | Scot Wilson | 14.7 | $9,481.50 |

# EXHIBIT B

# RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

Dealer Number: _____ Contract Number: 107772 R.O.S. Number: 38871721 Stock Number: 471291

| Buyer Name and Address (Including County and Zip Code)<br>FRANK A GOMEZ<br>16320 THICKET DR<br>LA PUENTE CA 91744<br>LOS ANGELES | Co-Buyer Name and Address (Including County and Zip Code)<br>N/A | Seller-Creditor (Name and Address)<br>FORD OF MONTEBELLO<br>2747 VIA CAMPO<br>MONTEBELLO CA 90640<br>LOS ANGELES |
|---|---|---|

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller – Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2017 | FORD TRUCK F-150 SERIES | 3 | 1FTEW1EG1HKE19250 | Personal, family or household unless otherwise indicated below.<br>☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $10000.00 |
|---|---|---|---|---|
| 3.29 % | $ 6639.44 (e) | $ 54215.20 (e) | $ 60854.6 (e) | $ 70854.64 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of N/A | N/A | N/A |
| One Payment of N/A | N/A | N/A |
| One Payment of N/A | N/A | N/A |
| 83 | 724.46 | Monthly beginning 08/15/2017 |
| N/A | N/A | N/A |
| One final payment | 724.46 | DUE ON 07/15/2024 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

## STATEMENT OF INSURANCE

NOTICE: No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. No insurance is required to buy or not buy any other insurance will not be a factor in the credit approval process.

### Vehicle Insurance

| | | Term | | Premium |
|---|---|---|---|---|
| N/A | Ded. Comp. Fire & Theft | N/A | Mos. | $ N/A |
| N/A | Ded. Collision | N/A | Mos. | $ N/A |
| Bodily Injury | N/A Limits | N/A | Mos. | $ N/A |
| Property Damage | N/A Limits | N/A | Mos. | $ N/A |
| Medical | N/A | N/A | Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | | $ |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____
Co-Buyer X _____
Seller X _____

**OPTIONAL DEBT CANCELLATION AGREEMENT.** A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1K of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term **84** Mos. **PORTFOLIO GAP**
Debt Cancellation Agreement
I want to buy a debt cancellation agreement.
Buyer Signs X _____

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 11.

| | | |
|---|---|---|
| 11 Company PORTFOLIO | | |
| Term 72 Mos. or 75000 Miles | | |
| 12 Company FORD ESP | | |
| Term 36 Mos. or 36000 Miles | | |
| 13 Company N/A | | |
| Term N/A Mos. or N/A Miles | | |
| 14 Company N/A | | |
| Term N/A Mos. or N/A Miles | | |
| 15 Company N/A | | |
| Term N/A Mos. or N/A Miles | | |
| Buyer X _____ | | |

## ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

| 1. Total Cash Price | | |
|---|---|---|
| A. Cash Price of Motor Vehicle and Accessories | $ 52265.00 | (A) |
| 1. Cash Price Vehicle | $ 51770.00 | |
| 2. Cash Price Accessories | $ 495.00 | |
| 3. Other (Nontaxable) | $ N/A | |
| Describe N/A | $ N/A | |
| Describe N/A | | |
| B. Document Processing Charge (not a governmental fee) | $ 80.00 | (B) |
| C. Emissions Testing Charge (not a governmental fee) | $ N/A | (C) |
| D. (Optional) Theft Deterrent Device(s) | $ 695.00 | (D1) |
| 1. (paid to) ALARM | $ N/A | (D2) |
| 2. (paid to) N/A | $ N/A | (D3) |
| 3. (paid to) N/A | | |
| E. (Optional) Surface Protection Product(s) | $ N/A | (E1) |
| 1. (paid to) N/A | $ N/A | (E2) |
| 2. (paid to) N/A | $ N/A | (F) |
| F. EV Charging Station (paid to) N/A | $ 4906.20 | (G) |
| G. Sales Tax (on taxable items in A through F) | | |
| H. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (paid to) MVSC | $ 29.00 | (H) |
| I. (Optional) Service Contract(s) | $ 3600.00 | |
| 1. (paid to) PORTFOLIO | $ 1350.00 | (I2) |
| 2. (paid to) FORD ESP | $ N/A | (I3) |
| 3. (paid to) N/A | $ N/A | (I4) |
| 4. (paid to) N/A | $ N/A | (I5) |
| 5. (paid to) N/A | | |
| J. Prior Credit or Lease Balance (e) paid by Seller to Vehicle 1 N/A Vehicle 2 N/A (see downpayment and trade-in calculation) | $ N/A | (J) |
| K. (Optional) Debt Cancellation Agreement PORTFOLIO GAP | $ 850.00 | (K) |
| L. (Optional) Used Vehicle Contract Cancellation Option Agreement | $ N/A | (L) |
| M. Other (paid to) N/A | $ N/A | (M) |
| For N/A | | |
| N. Other (paid to) N/A | $ N/A | (N) |
| For N/A | | |
| Total Cash Price (A through N) | $ 63675.20 | |

| 2. Amounts Paid to Public Officials | | |
|---|---|---|
| A. Vehicle License Fees ESTIMATED | $ 344.00 | (A) |
| B. Registration/Transfer/Titling Fees ESTIMATED | $ 192.00 | (B) |

### Trade-In Vehicle(s)

| 1. Vehicle 1 | | |
|---|---|---|
| Year 2007 Make N/A | | |
| Model MAZDA3 Odometer 139979 | | |
| VIN JM1BK344871699061 | | |
| a. Agreed Value of Property | $ 1000.00 | |
| b. Buyer/Co-Buyer Retained Trade Equity | $ N/A | |
| c. Agreed Value of Property Being Traded-In (a−b) | $ 1000.00 | |
| d. Prior Credit or Lease Balance | $ N/A | |
| e. Net Trade-In (c−d) (must be ≥ 0 for buyer/co-buyer to retain equity) | $ 1000.00 | |
| 2. Vehicle 2 | | |
| Year N/A Make N/A | | |
| Model N/A Odometer N/A | | |
| VIN N/A | | |
| a. Agreed Value of Property | $ N/A | |
| b. Buyer/Co-Buyer Retained Trade Equity | $ N/A | |
| c. Agreed Value of Property Being Traded-In (a−b) | $ N/A | |

FILE COPY

| | | | | e. Net Trade-in (c-d) (must be ≥ 0 | |
|---|---|---|---|---|---|
| Fees (A through I) | $ | N/A (D) | | for buyer/co-buyer to retain equity) $ | N/A |
| Paid to Insurance Companies | $ | 539.00 (2) | | | |
| (premiums from Statement of Insurance) | | | | Total Agreed Value of Property | |
| 4. State Emissions Certification Fee or | | N/A (3) | | Being Traded-In (1c+2c) $ | 1000.00 |
| State Emissions Exemption Fee | $ | 2.00 (4) | | Total Prior Credit or Lease | |
| 5. Subtotal (1 through 4) | $ | 54215.20 (5) | | Balance (1d+2d) $ | N/A |
| 6. Total Downpayment | | | | Total Net Trade-In (1e+2e) $ | 1000.00 |
| A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)) $ | | 1000.00 (A) | | (*See item 6A-6C, in the Itemization of Amount Financed) | |
| B. Total Less Prior Credit or Lease Balance (e.g.) | | | | | |
| Vehicle 1 $ 1000.00 Vehicle 2 $ N/A | $ | 1000.00 (B) | | **OPTION:** ☐ You pay no finance charge if the | |
| C. Total Net Trade-In (A-B) (indicate if negative number) | | | | Amount Financed, item 7, is paid in full on or | |
| Vehicle 1 $ 1000.00 Vehicle 2 $ N/A | $ | 1000.00 (C) | | before N/A Year N/A | |
| D. Deferred Downpayment Payable to Seller | $ | N/A (D) | | SELLER'S INITIALS N/A | |
| E. Manufacturer's Rebate | $ | N/A (E) | | | |
| F. Other N/A | $ | 40000.00 (F) | | **Agreement to Arbitrate:** By signing below, you agree that, pursuant | |
| G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card | $ | N/A (F) | | to the Arbitration Provision on the reverse side of this contract, you | |
| Total Downpayment (C through G) | $ | 5000.00 (6) | | or we may elect to resolve any dispute by neutral, binding arbitration | |
| (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J above) | | | | and not by a court action. See the Arbitration Provision for additional | |
| 7. Amount Financed (5 less 6) | $ | 54215.20 (6) | | information concerning the agreement to arbitrate. | |
| | | | | Buyer Signs X | |
| | | | | Co-Buyer Signs X | |

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) as to the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate. Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder, or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X _____  Co-Buyer Signature X _____

**AUTO BROKER FEE DISCLOSURE**

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: N/A

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _____  Co-Buyer Signs X N/A

**SELLER'S RIGHT TO CANCEL.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X _____  Co-Buyer X N/A

**WARNING:** THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT. YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD. FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT. THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

X N/A _____  X N/A _____

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____  Co-Buyer Signature X N/A

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date 07/01/17  Co-Buyer Signature X N/A _____ Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____  Address _____

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing. Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____  Date _____  Guarantor X _____  Date _____
Address _____  Address _____

Seller Signs FORD OF MONTEBELLO _____ Date 07/01/17 By X _____ Title F&I MGR

LAW FORM NO. 553-CA-ARB (REV. 3/16)
©2016 The Reynolds and Reynolds Company. TO ORDER: www.reysource.com; 1-800-344-0996; fax: 1-800-631-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

FILE COPY

# EXHIBIT C

1

**SHOOK, HARDY & BACON L.L.P.**
AMY MACLEAR (SBN 215638)

2

amaclear@shb.com

3

555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

4

5

YOSEPH RIXIT (SBN 333263)
yrixit@shb.com

6

2049 Century Park East, Suite 3000
Los Angeles, CA 90617

7

Telephone: (424) 324-3467
Facsimile: (424) 204-9093

8

Attorneys for Defendant

9

FORD MOTOR COMPANY

10

11

UNITED STATES DISTRICT COURT

12

CENTRAL DISTRICT OF CALIFORNIA

13

14

FRANK GOMEZ, an individual,

15

Plaintiff,

16

vs.

17

FORD MOTOR COMPANY, a
Delaware Corporation, and DOES 1

18

through 10, inclusive,

19

20

Defendant.

| | |
|---|---|
| | Case No.:  2:23-cv-03454-SVW-JC |
| | **DEFENDANT FORD MOTOR COMPANY'S RULE 68 OFFER OF JUDGMENT** |

21

22

23

**TO PLAINTIFF AND PLAINTIFF'S COUNSEL OF RECORD:**

24

PLEASE TAKE NOTICE, pursuant to the provision of Federal Rules of Civil

25

Procedure Rule 68, Defendant Ford Motor Company hereby offers to allow judge to be

26

taken against it as follows:

27

28

1

1.     Plaintiff Frank Gomez will surrender the 2017 Ford F150 bearing VIN 1FTEW1EG1HKE19250 (the "Subject Vehicle") with clear title, free and clear of all liens and encumbrances, other than any outstanding installment loan amounts on the Subject Vehicle. Plaintiff will deliver the Subject Vehicle to Ford on a date, time, and place mutually agreeable to the parties and no later than 60 days after the Plaintiff's counsel has accepted Ford's offer.

2.     Ford will pay Plaintiff ONE HUNDRED THOUSAND DOLLARS AND ZERO CENT ($100,000.00) which represents the fully financed purchase price of the Subject Vehicle, including incidental and consequential damages. Plaintiff will provide Ford with current payoff information on any active installment loan on the Subject Vehicle and, deducting from the amount above, Ford will pay the remaining balance directly to the lender, discharging the installment loan on the Subject Vehicle.

3.     In addition to the amount to be paid under Paragraph 2, Ford agrees to pay the fees and costs incurred in this suit up to an amount of $12,500.00. Alternatively, Ford agrees that Plaintiff shall retain the right to petition the Court for an award of costs and reasonably incurred fees recoverable pursuant to Section 1794(d) of the California Civil Code.  Ford will pay the attorneys' fees and cost amounts determined by the Court within 30 days' notice of the Court's ruling on same.

4.     Plaintiff will dismiss this action with prejudice within 14 days after Plaintiff's counsel has received all funds owed pursuant to this offer.

5.     This offer can be accepted by signing a statement that the offer is accepted and returning this statement to Ford's counsel. A statement indicating acceptance of this offer which may be signed by counsel for Plaintiff is set forth below. If this offer of judgment is not accepted and notice given by Plaintiff within the time provided, then it shall be deemed withdrawn. Pursuant to FRCP Rule 68(d), if this offer is not accepted and Plaintiff fails to obtain judgment for damages that is more favorable than the amount set forth in paragraph 2 above, Plaintiff shall not recover Plaintiff's statutory costs, including

OFFER OF JUDGMENT
2:23-cv-03454-SVW-JC

attorney fees, incurred after the date of this offer, and shall be required to pay Ford's costs incurred from the time of this offer.

Dated:  August 23, 2023                    Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: _____

AMY MACLEAR
YOSEPH RIXIT

Attorneys for Defendant
FORD MOTOR COMPANY

I hereby accept the above offer on the terms stated on behalf of Plaintiff.

Dated:  September 5, 2023                    By: _____

ROGER KIRNOS
MAITE C. COLON

KNIGHT LAW GROUP

Attorneys for Plaintiff

3

OFFER OF JUDGMENT
2:23-cv-03454-SVW-JC

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 10250 Constellation Blvd, Suite 2500, Los Angeles, CA 90067.

On Tuesday, September 5, 2023, I served electronic copies of the following document:

**NOTICE OF ENTRY OF JUDGMENT OR ORDER**

On the intended parties in this action as follows:

Amy Maclear, Esq.
**Shook, Hardy & Bacon L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
amaclear@shb.com
**Counsel for Defendant,**
**FORD MOTOR COMPANY**

Yoseph Rixit, Esq.
yrixit@shb.com
2049 Century Park East, Suite 3000
Los Angeles, CA 90617
**Counsel for Defendant,**
**FORD MOTOR COMPANY**

XX    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 5, 2023 at Los Angeles, California.

VERA CORNEJO

-1-
PROOF OF SERVICE

# EXHIBIT D

**FILED**
Superior Court of California
County of Los Angeles

**MAY 23 2023**

David W. Slayton, Executive Officer/Clerk of Court

By: L. Meguerian, Deputy

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES – CENTRAL DISTRICT
### DEPARTMENT 74

| | |
|---|---|
| IVONNE TORRES, | Case No.: 19STCV14751 |
| Plaintiff, | Hearing Date: May 23, 2023 |
| vs. | Time: 8:30 a.m. |
| FORD MOTOR COMPANY; et al., | **ORDER RE:** |
| Defendants. | Plaintiffs' Motion for Attorney Fees, Costs, and Expenses |

MOVING PARTY:          Plaintiff Ivonne Torres

RESPONDING PARTIES:   Defendants Ford Motor Company, Ted Jones Ford, Inc., Ken

                      Grody Ford.

**Motion for Attorney Fees and Costs.**

The court considered the moving papers, opposition, and reply.

**DEFENDANT'S EVIDENTIARY OBJECTIONS**

Overruled: 1, 2, 3, 4, 5, 6, 9, 10, 11.

Sustained: 7, 8, 12.

**BACKGROUND**

This action arises from a dispute over a defective 2016 Ford Edge.

On April 29, 2019, Plaintiff Ivonne Torres (Plaintiff) filed a complaint against

Defendants Ford Motor Company, Ted Jones Ford, Inc., and Ken Grody Ford (Defendants). In

the complaint, Plaintiff alleged the following causes of action: (1) Violation of Song-Beverly

1

Act- Breach of Express Warranty, (2) Violation of Song-Beverly Act-Breach of Implied

Warranty, (3) Violation of Song-Beverly Act Section 1793.2, and (4) Negligent Repair.

On August 12, 2022, Plaintiff accepted Defendants' offer to compromise under Code of

Civil Procedure section 998, and the parties settled.

On April 26, 2023, Plaintiff filed this motion for attorney fees and costs.

**LEGAL STANDARD**

Under Civil Code § 1794, subdivision (d), a buyer who prevails in an action under the

Song-Beverly Act can recover costs and expenses, including attorney fees. The attorney fees

requested should be based on actual time expended, determined by the court to have been

reasonably incurred by the buyer in connection with the action's commencement and

prosecution. (Civ. Code § 1794.)

"The determination of what constitutes a reasonable fee generally "begins with the

'lodestar,' i.e., the number of hours reasonably expended multiplied by the hourly rate."

(*Graciano v. Robinson Ford Sales, Inc.* 144 Cal.App.4th 140, 154.) The lodestar is the basic fee

for comparable legal services in the community; it may be adjusted by the court based on factors

including, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in

presenting them, (3) the extent to which the nature of the litigation precluded other employment

by the attorneys, and (4) the contingent nature of the fee award. (*Ibid.*)

**DISCUSSION**

**Plaintiff's Counsel's Hourly Rate.**

"The reasonable hourly rate is that prevailing in the community for similar work."

(*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "The experienced trial judge is the best

judge of value of professional services rendered in his court." (*Ibid.*) An award of attorney fees

may also be based on counsel's declarations. (*Raining v. Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.) Here, Plaintiff's counsel requests attorney fees at hourly rates ranging from $200 to $595 and provides a declaration in support. (Kirnos Decl., ¶¶ 33-48; Ex. A.) The court finds these rates reasonable.

### Hours Expended by Plaintiff's Counsel.

The attorney bears the burden of proof as to reasonableness of any fee claim. (Code Civ. Proc., § 1033.5(c)(5).) This burden requires competent evidence as to the nature and value of the services rendered. (*Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559.) A plaintiff's verified billing invoices are prima facie evidence that the costs, expenses, and services listed were necessarily incurred. (See *Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.)

"In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488, quoting *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

Plaintiff's counsel has substantiated their request for attorney fees with billing entries. (Kirnos Decl., ¶ 2; Ex. A.) Defendants' counsel, for their part, argue that many of the billed tasks were duplicative or unnecessary. The court finds that Plaintiff's request for attorney fees based on work performed by a paralegal are not warranted. Thus, the court will deduct $3,525.00 from the attorney fees requested. Additionally, Defendants' counsel argue that Plaintiff's counsel "may be attempting to obtain a double fee recovery by failing to reimburse their own client." (Opposition, at p. 17.) However, Defendants' counsel base their contention on a contingency fee

agreement from 2019, not the agreement between Plaintiff's counsel and Plaintiff. The court will not deduct from the requested attorney fees on these grounds.

### Lodestar Multiplier

"[T] the statutory language of [Civil Code] section 1794, subdivision (d), is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers. (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 818.) "The . . . figure may be augmented or diminished by taking various relevant factors into account, including . . . the contingent nature of the fee award, based on the uncertainty of prevailing on the merits of establishing eligibility for the award. (*Id.* at p. 819.) Plaintiff's counsel requests a 1.5 multiplier in light of their risk of not prevailing and Defendants' counsel's delay in providing the 998 offer. (Motion, at p. 12.) Defendants' counsel argues that Plaintiff's counsel has not demonstrated "[…] what percentage of cases the firm undertakes results in no recovery" and " […] knew from its experience in litigating these cases that there was little, if any, risk of recovering less than the amount of Plaintiff's purchase price for their vehicle." (Opposition, at pp. 18-19.) Even so, Plaintiff's counsel took on the risk of representing Plaintiff on a contingency basis, which warrants the attorney fee multiplier of 1.5.

### Costs.

Under Civil Code § 1794, subdivision (d), a buyer who prevails in an action under the Song-Beverly Act can recover costs and expenses. Plaintiff is entitled to costs and has substantiated her request with a memorandum. The court notes, however, that Defendants have filed a motion to tax costs.

///

///

**CONCLUSION**

Based on the foregoing, the court grants Plaintiff's motion for attorney fees of

$122,633.25 (($85,280.50 - $3,525) x 1.5). The court defers ruling on Plaintiff's motion for costs

until the September 29, 2023 hearing on Defendant's motion to tax costs.

Plaintiff is ordered to give notice.

IT IS SO ORDERED.

DATED:  May 23, 2023

Colin Leis
Judge of the Superior Court

# EXHIBIT E

Electronically Received 02/01/2023 10:26 AM

**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
Deepak Devabose (SBN 298890)
*deepakd@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
VICTOR D. LOZANO

**FILED**
Superior Court of California
County of Los Angeles

**02/24/2023**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ S. Ontiveros _____ Deputy

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF LOS ANGELES

| | |
|---|---|
| **VICTOR D. LOZANO,**<br><br>Plaintiff,<br><br>vs.<br><br>**KIA MOTORS AMERICA, INC., a California Corporation, and DOES 1 through 10, inclusive,**<br><br>Defendants. | Case No: 19STCV43316<br><br>~~[PROPOSED]~~ JUDGMENT ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES<br><br>*Assigned for All Purposes to the Honorable Malcolm H. Mackey*<br><br>Date:     January 19, 2023<br>Time:    8:30 a.m.<br>Dept.:    55 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff's Motion for Attorneys' Fees, Costs and Expenses came on regularly for hearing on January 19, 2023, at 8:30 a.m., in Department 55, of the above-entitled court, located at 111 N. Hill St., Los Angeles, California 90012, the Honorable Malcolm H. Mackey, presiding.  Plaintiff moved the Court for an award of $54,338.00 in lodestar attorney fees plus a .5 lodestar multiplier, and $18,228.23 in costs and expenses.

///

Marisa Melero of Knight Law Group, LLP appeared on behalf of Plaintiff Victor Lozano and Robert Phillipson of Lehrman, Villegas, Chinery & Douglas, LLP appeared on behalf of Defendant KIA Motors America, Inc. Having read the motion, the memoranda and the declarations filed by the parties, and having heard oral argument of counsel, the Court adopted its tentative ruling.

NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, as follows:

1. Plaintiff's Motion for Attorney's Fees, Costs and Expenses is GRANTED;

2. The Court finds that the following hourly rates requested by counsel are reasonable based upon the attorney's expertise, experience and the results achieved:

- Scot Wilson $595/hr
- Greg Mohrman $450/hr and $425/hr
- Thomas Van $450/hr
- Amy Morse $425/hr, $400/hr and $350/hr
- Maite Colon $395/hr and $345/hr
- Heidi Alexander $350/hr and $325/hr
- Daniel Kalinowski $350/hr and $295/hr
- Marisa Melero $345/hr, $295/hr and $225/hr
- Maxwell Kreymer $295/hr and $250/hr
- Katherine Smith $295/hr
- Andrew Jang $250/hr
- Natalee Fisher $250/hr
- Woody Jones $250/hr and $225/hr
- Gregory A. Lehrmann $250/hr and $200/hr
- Armando Lopez $200/hr

3. Plaintiff is awarded full lodestar attorney's fees in the amount of $54,338.00;

4. The Court declines to award a lodestar multiplier;

5. Plaintiff's costs and expenses will be determined during Defendant's Motion to Strike/Tax Costs on April 13, 2023.

[PROPOSED] JUDGMENT

1       JUDGMENT is, therefore, hereby entered in favor of Plaintiff Victor D. Lozano and

2 against Defendant KIA Motors America, Inc. in the amount of $54,338.00.

3

4     **IT IS HEREBY ORDERED.**

5                                       **IT IS SO ORDERED**

6

7 Dated:    02/24/2023                             Judge of the Superior Court

8 Prepared by:                               Malcolm Mackey / Judge
   **KNIGHT LAW GROUP, LLP**

9 Roger Kirnos (SBN 283163)
   *rogerk@knightlaw.com*

10 Deepak Devabose (SBN 298890)
   *deepakd@knightlaw.com*

11 10250 Constellation Blvd., Suite 2500

12 Los Angeles, California 90067
   Telephone: (310) 552-2250

13 Fax: (310) 552-7973

14 Attorneys for Plaintiff,
   VICTOR D. LOZANO

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JUDGMENT

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the action.  My business address is 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] JUDGMENT ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Kate S. Lehrman, Esq.
LEHRMAN, VILLEGAS, CHINERY & DOUGLAS, LLP
eservice@lvcdlaw.com
ddahlen@lvcdlaw.com
jchinery@lvcdlaw.com
bentzminger@lvcdlaw.com
12121 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90025
**Counsel for Defendants,**
**KIA AMERICA, INC. (formerly known as**
**KIA MOTORS AMERICA, INC.)**

XX    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 26, 2023 at Los Angeles, California.

WAYNE PAGDILAO

-1-

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the action.  My business address is 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] JUDGMENT ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Kate S. Lehrman, Esq.
LEHRMAN, VILLEGAS, CHINERY & DOUGLAS, LLP
eservice@lvcdlaw.com
ddahlen@lvcdlaw.com
jchinery@lvcdlaw.com
bentzminger@lvcdlaw.com
12121 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90025
**Counsel for Defendants,**
**KIA AMERICA, INC. (formerly known as**
**KIA MOTORS AMERICA, INC.)**

XX    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 1, 2023 at Los Angeles, California.

_____
WAYNE PAGDILAO

-1-

PROOF OF SERVICE

# EXHIBIT F

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 71

**19STCV11353**                                                  June 28, 2022
**SONIA DE LEON vs KIA MOTORS AMERICA, INC., A**                 2:23 PM
**CALIFORNIA CORPORATION**

Judge: Honorable Monica Bachner                CSR: None
Judicial Assistant: A. Barton                  ERM: None
Courtroom Assistant: None                      Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:**
Ruling on Submitted Matter

The Court, having taken the matter under submission on 06/28/2022 for Hearing on Motion for Attorney Fees, now rules as follows:

Plaintiff's motion for attorneys' fees is granted in the reduced total amount of $333,801.50.

Plaintiff Sonia De Leon ("Plaintiff") moves for an order awarding her attorney fees pursuant to Civil Code §1794(d) against Defendant Kia America, Inc., formerly known as Kia Motors America, Inc., ("Defendant") in the total amount of $560,702.25 reflecting $373,801.50 of fees incurred plus a lodestar enhancement multiplier of 0.5, equaling $186,900.75 (Notice of Motion, pg. i.) The Court notes the Notice of Motion also refers to Plaintiff's costs request; however, costs were addressed and awarded in the reduced total amount of $73,312.06 in the Court's June 22, 2022 Ruling on Defendant's Motion to Tax Costs. (6/22/22 Ruling on Submitted Matter.) As such, costs are not at issue in the instant motion.

The Court held a hearing on June 28, 2022. The Court has considered the papers and the arguments at the hearing and rules as follows:

Evidentiary Objections

Defendant's 6/15/22 evidentiary objections to the Declaration of Kirnos are overruled as to Nos. 1, 2, 5, 6, and 9, and sustained as to Nos. 3, 4 (as to the first sentence only, otherwise overruled), 7 and 8. [The Court notes that certain objections were improper, as they identified multiple paragraphs, without specifically setting forth the objectionable material.]

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 71

**19STCV11353**                                                          June 28, 2022
**SONIA DE LEON vs KIA MOTORS AMERICA, INC., A**          2:23 PM
**CALIFORNIA CORPORATION**

Judge: Honorable Monica Bachner          CSR: None
Judicial Assistant: A. Barton            ERM: None
Courtroom Assistant: None                Deputy Sheriff: None

Plaintiff's 6/21/22 evidentiary objections to the Declaration of Tallent are overruled as to Nos. 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35 and sustained as to No. 8 (only as to "This work was not… deducted…" otherwise overruled). [The Court notes the objections jump from No. 3 to No. 5 and as such there is no objection No. 4.]

Background

On January 18, 2022, the Court entered Judgment in favor of Plaintiff and against Defendant. Entry of Judgment followed a jury trial on Plaintiff's remaining cause of action for breach of express warranty under Song-Beverly against Defendant in which the jury returned a verdict in Plaintiff's favor, awarding damages. On March 29, 2022, the Court issued its ruling on Defendant's motion for new trial and motion for judgment notwithstanding the verdict ("JNOV"), conditionally granting the motions in part and denying the motions in part. On April 18, 2022, the Court entered an Amended Judgment consistent with these rulings, which awarded Plaintiff damages in the total amount of $119,728.67. On May 6, 2022, Plaintiff filed the instant motion for attorneys' fees.

Attorneys' Fees Motion

Civil Code §1794(d) provides that a buyer who prevails in an action under that section, "shall be allowed by the court to recover as a part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and the prosecution of such action."

The calculation of attorneys' fees under the Song-Beverly Act is based on the lodestar method, which multiplies the number of hours reasonably expended by a reasonable hourly rate. (Graciano v. Robinson Ford Sales (2006) 144 Cal.App.4th 140, 154; Robertson v. Fleetwood Travel Trailers of California, Inc. (2006) 144 Cal.App.4th 785, 817-819

In support of her fee request, Plaintiff submitted the Declaration of Roger Kirnos ("Kirnos") of Plaintiff's counsel Knight Law Group, LLP ("Knight Law"), in which he attaches a copy of his firm's billing in this matter as Exhibit A and sets forth the experience and hourly rates of the 21 attorneys and one paralegal who purportedly performed work in this action. (Decl. of Kirnos ¶¶2, 46-73, Exh. A.) Specifically, Kirnos sets forth the background and hourly rates of himself and

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 71

19STCV11353                                                      June 28, 2022
**SONIA DE LEON vs KIA MOTORS AMERICA, INC., A**              2:23 PM
**CALIFORNIA CORPORATION**

Judge: Honorable Monica Bachner              CSR: None
Judicial Assistant: A. Barton                ERM: None
Courtroom Assistant: None                    Deputy Sheriff: None

Steve Mikhov ("Mikhov"), Amy Morse ("Morse"), Marisa Melero ("Melero"), Jacob Cutler
("Cutler"), Conor M. Kelly ("Kelly"), Diba Alemi ("Alemi"), Deepak Devabose ("Devabose"),
Daniel Kalinowski ("Kalinowski"), Daniel Macioce ("Macioce"), Erick Victor Muñoz
("Muñoz"), Erum Siddiqui ("Siddiqui"), Gregory Lehrmann ("Lehrmann"), Greg Mohrman
("Mohrman"), Kamau Edwards ("Edwards"), Thomas Dreblow ("Dreblow"), Scot Wilson
("Wilson"), Kristina Stephenson-Cheang ("Stephenson-Cheang"), Summer Benson ("Benson"),
Woody Jones ("Jones"), and Thomas S. Van ("Van"), as well as paralegal Diana Folia ("Folia").
(Decl. of Kirnos ¶46, 49 [Kirnos's $500 hourly rate], 50-51 [Mikhov's $550 hourly rate], 52
[Morse's $350-$400 hourly rate], 53 [Melero's $225-$345 hourly rate], 54 [Cutler's $425-$450
hourly rate], 55 [Kelly's $415 hourly rate], 56 [Alemi's $325 hourly rate], 57 [Devabose's $275-
$375 hourly rate], 58 [Kalinowski's $295-$350 hourly rate], 59 [Macioce's $200 hourly rate], 60
[Muñoz's $400 hourly rate], 61 [Siddiqui's $200 hourly rate], 63 [Lehrmann's $200-$250 hourly
rate], 63 [Mohrman's $425 hourly rate], 64 [Edwards' $450 hourly rate], 65 [Dreblow's $350
hourly rate], 66 [Wilson's $595 hourly rate], 67 [Stephenson-Cheang's $375 hourly rate], 68
[Benson's $200 hourly rate], 69 [Jones's $250 hourly rate], 70-72 [Van's $450 hourly rate], 73
[Folia's $250 hourly rate as a paralegal].) The Court notes the declaration suggests ten of the
billing attorneys, namely, Mikhov, Kelly, Macioce, Muñoz, Siddiqui, Lehrmann, Mohrman,
Stephenson-Cheang, Benson, and Jones, do not currently work for Knight Law.

In opposition, Defendant argues the attorneys' fees award should be reduced to at least
$153,718.95, or some lower amount, for the following reasons: (1) the hours for work performed
are unreasonable, excessive, and/or not recoverable for the specific reasons set forth below; (2)
Plaintiff's counsel's hourly rates are unreasonable; and (3) Plaintiff's request for a lodestar
multiplier is unwarranted.

Reasonableness of Hours for Work Performed

Although detailed time records are not required, California Courts have expressed a preference
for contemporaneous billing and an explanation of work. (Raining Data Corp. v. Barrenechea
(2009) 175 Cal.App.4th 1363, 1375.) "Of course, the attorney's testimony must be based on the
attorney's personal knowledge of the time spent and fees incurred. (Evid. Code, § 702, subd. (a)
['the testimony of a witness concerning a particular matter is inadmissible unless he has personal
knowledge of the matter'].) Still, precise calculations are not required; fair approximations based
on personal knowledge will suffice." (Mardirossian & Associates, Inc. v. Ersoff (2007) 153
Cal.App.4th 257, 269.)

Here, Plaintiff has submitted documentation supporting 829.2 hours of work performed by

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 71

19STCV11353                                                        June 28, 2022
SONIA DE LEON vs KIA MOTORS AMERICA, INC., A                        2:23 PM
CALIFORNIA CORPORATION

| | |
|---|---|
| Judge: Honorable Monica Bachner | CSR: None |
| Judicial Assistant: A. Barton | ERM: None |
| Courtroom Assistant: None | Deputy Sheriff: None |

Knight Law's 21 attorneys, with 7 hours anticipated to be performed in connection with reviewing the opposition, drafting a reply, and appearing at the hearing for instant fee motion, for a total of 836.2 hours. (Decl. of Kirnos, Exh. A, pg. 29.)

In opposition, Defendant argues the fee request is unreasonable, excessive, and not properly supported, and the Court should apply reductions to fees incurred in connection with the following: (1) prosecuting dismissed fraud claims [22.6 hours]; (2) drafting form documents [33 hours]; (3) opposing Defendant's vehicle inspection [14 hours]; (4) "reviewing results" [2.2 hours]; (5) undated/pre-representation events [2 hours]; (6) paralegal time at trial and trial travel [63.5 hours], and (7) opposing the JNOV and Motion for New Trial [25.5 hours]. (Opposition, pgs. 3, 6-9.) Defendant also argues the Court should apply a 30% reduction to the fees based on counsel's use of block billing and an excessive number of attorneys which improperly inflated fees. (Opposition, pgs. 3, 9-13.)

A. Defending Against Defendant's Attack on Dismissed Fraud Claims

Defendant argues Plaintiff is not entitled to recover fees incurred in connection with prosecuting the fraud causes of action, which were dismissed by demurrer and as to which, Plaintiff was not successful. (Motion, pgs. 6-7.) Specifically, Defendant argues Plaintiff should not recover fees incurred in connection with opposing Defendant's demurrer to the fraud causes of action, filing a first amended complaint ("FAC"), and opposing Defendant's subsequent demurrer to the FAC, which was sustained. Defendant requests reduction of 22.6 hours reflecting $4,670 in attorney work in connection with defending the demurrers to the fraud claim. (Decl. of Tallent ¶16.)

In reply, Plaintiff asserts apportionment of fees incurred in the fraud claims is not warranted given the statutory claims involved a common core of facts and legal theories, and as such, "there was no work on the fraud claims that was not equally relevant to Plaintiff's Song-Beverly claims." (Reply, pg. 5, citing Jose Santana v. FCA US LLC (2020) 56 Cal.App.5th 334, 347-348.) However, Plaintiff does not address how fees incurred with defending against demurrers that were brought against the fraud claims alone, as opposed to fees for discovery or other gathering of evidence for fraud-based and statutory causes of action, "involved a common core of facts and legal theories" as the Song-Beverly claims, as to which Defendant did not demur.

The Court finds a reduction of 22.6 hours reflecting $4,670 in attorney work is warranted. The final award reflects this reduction.

B. Drafting Form Documents

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 71

**19STCV11353**                                                    June 28, 2022
**SONIA DE LEON vs KIA MOTORS AMERICA, INC., A**                    2:23 PM
**CALIFORNIA CORPORATION**

Judge: Honorable Monica Bachner          CSR: None
Judicial Assistant: A. Barton            ERM: None
Courtroom Assistant: None                Deputy Sheriff: None

Defendant argues the hours billed for certain filings in this action are unreasonably high given these documents are substantively identical to documents filed in other actions. Specifically, Defendant objects to the fees incurred in connection with: (1) oppositions to demurrers and motions to strike [hours not stated, but moot in light of the Court reducing these fees above]; (2) written discovery [4.4 hours]; (3) 1/9/20 Meet and Confer Letter [0.9 hours]; (4) discovery motion [4.4 hours]; (5) review and prepare for motion to compel [2.2 hours]; (6) opposition to motion for protective order [4.7 hours]; (7) opposition to motion to compel PMK depo [4.5 hours]; (8) motions in limine [11 hours]; and (9) mediation/MSC statement [0.9 hours]. (Decl. of Tallent ¶¶18-33 Exhs. J, K, N, O, P, Q, R, S, T, U.) The Court notes Defendant's opposition does not address how the Court should reduce these fees and appears to argue the requested hours should be reduced in their entirety. As a threshold matter, even for identical filings updated to Plaintiff's action would involve some attorney time incurred, and as such a request to reduce all these fees is denied.

The Court agrees a number of the fees appear excessive in light of the similarities of the filings in this action with the same filings in other actions. For example, a reduction is warranted for fees incurred in connection with the opposition to the protective order, the motions in limine, and the MSC statement. The final award reflects this reduction.

C. Opposing Vehicle Inspection

Defendant asserts fees incurred with opposing Defendant's efforts to inspect the subject vehicle were unreasonable and not recoverable. (Opposition, pgs. 8-9.) The Court agrees that certain of the fees were unreasonable. The final award reflects this reduction.

D. Fees for "Reviewing Results"

Defendant argues 2.2 hours incurred for "reviewing results" are unreasonable given such time is duplicative. (Opposition, pg. 10; Decl. of Tallent ¶42.) However, the Court finds these fees, which individually ranged between 0.1 and 0.2 hours, were not excessive and/or duplicative so as to warrant the reduction requested.

E. Undated and Pre-Representation Events

The Court notes Defendant objects to billing for undated/pre-representation events in the amount of 2 hours reflecting $1,100 in fees in its summary chart, but no argument is submitted in support

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Stanley Mosk Courthouse, Department 71

19STCV11353                                                              June 28, 2022
**SONIA DE LEON vs KIA MOTORS AMERICA, INC., A**                          2:23 PM
**CALIFORNIA CORPORATION**

Judge: Honorable Monica Bachner            CSR: None
Judicial Assistant: A. Barton              ERM: None
Courtroom Assistant: None                  Deputy Sheriff: None

of this objection. (Opposition, pg. 3.) Accordingly, this objection is not supported, and a reduction is not warranted.

F. Paralegal Time at Trial and Trial Travel

Defendant argues billing 76.3 hours at $250 per hour for a paralegal to attend trial is unreasonable and asserts that 53.5 hours should be deducted based on the assumption that attending trial takes 7 hours per day as well as estimated travel to trial. (Opposition, pg. 9; Decl. of Tallent ¶¶37-38.) In reply, Plaintiff argues, "it does not matter than [sic] Mr. Wilson and his trial paralegal travelled from Orange County to trial as they were the amazing team that achieved an amazing verdict." (Reply, pg. 6.) However, this does not address Defendant's argument that the trial was overstaffed given Plaintiff billed for three trial attorneys and a paralegal. The final award reflects this reduction.

Defendant also argues Wilson's billing of 10 hours for travel is unreasonable given Knight Law is a Los Angeles based firm and, as such, it was unreasonable to have an attorney based in Orange County travel to trial. However, the Court finds these fees were not unreasonable and declines to reduce Wilson's travel fees.

G. Opposing the JNOV and Motion for New Trial

Defendant argues billing a collective 51.2 hours in connection with opposing its JNOV and Motion for New Trial is excessive and argues each attorney's and/or paralegal's time should be reduced by at least 50%. (Opposition, pg. 9.) In reply, Plaintiff argues the time spent was reasonably incurred given Defendant's motions sought to eradicate the verdict and call for another trial, and the time spent was reasonable given the result achieved. (Reply, pg. 7.) The Court notes the JNOV and Motion for New Trial were substantively similar and involved similar underlying issues and requests by Defendant, and a similar review of the record, and were not granted in Plaintiff's favor in their entirety, given the Court granted the motions in part. While these motions were involved, over 50 hours of fees to oppose them is unreasonable, and the Court finds a reduction is warranted. The final award reflects this reduction.

H. Overstaffing

Defendant argues the fact the case was staffed by 21 attorneys warrants a reduction of fees because this overstaffing resulted in duplicative case review, duplicative deposition transcript review, and duplicative trial review. (Opposition, pgs. 10-11; Decl. of Tallent ¶¶43-46.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 71

**19STCV11353**                                                June 28, 2022
**SONIA DE LEON vs KIA MOTORS AMERICA, INC., A**                2:23 PM
**CALIFORNIA CORPORATION**

Judge: Honorable Monica Bachner          CSR: None
Judicial Assistant: A. Barton            ERM: None
Courtroom Assistant: None                Deputy Sheriff: None

However, the Court finds the number of attorneys assigned to this action did not result in the fees being excessive or unreasonably incurred given the action was filed nearly three years ago and 11 of the attorneys assigned to the action are no longer employed by Knight Law, consistent with turnover of attorneys in this area of law. However, there does appear to be some duplicative work, for example multiple attorneys reviewed the case file, multiple attorneys reviewed Defendant's Motion in Limine No. 13 and multiple attorneys reviewed the same deposition transcripts. The final award reflects this reduction.

I. Block Billing

Defendant argues Plaintiff's counsel engaged in improper block billing in which certain attorneys have numerous entries that are block-billed, making it impossible for the trial court to differentiate between compensable and non-compensable tasks. (Opposition, pgs. 12-13; Decl. of Tallent ¶¶46-51.) Defendant requests a 30% reduction for block billing. While certain billing entries set forth a number of tasks for a total amount of hours billed, the Court finds these entries are not so vague or indecipherable to warrant a 30% reduction. However, Defendant does identify certain entries that include fees incurred that are not recoverable, for which the Court finds a reduction is warranted. Specifically, the Court finds Plaintiff is not entitled to fees incurred in connection with reviewing the deposition of Alan Dow ("Dow") and/or the exhibits thereto given Dow was not designated in this matter, and his deposition was in a different matter. (Decl. of Tallent ¶¶48-50.) However, billings for these fees are included with time entries for recoverable fees totaling 33.6 hours and $15,205 in fees. The final award reflects this reduction.

Total Reduction

The Court finds a lodestar reduction of $40,000 in attorneys' fees is warranted based on the reasoning discussed above.

Reasonableness of Hourly Rates

Defendant argues the hourly rates of Plaintiff's counsel are unreasonable, and as such requests that any attorneys billing more than $350 per hour have their rates reduced to $350 per hour and that counsel's paralegal rate be reduced to $140 per hour. However, based on the Court's experience, the hourly rates of Plaintiff's counsel are reasonable.

Lodestar Multiplier

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 71

**19STCV11353**                                                    June 28, 2022
**SONIA DE LEON vs KIA MOTORS AMERICA, INC., A**                    2:23 PM
**CALIFORNIA CORPORATION**

Judge: Honorable Monica Bachner          CSR: None
Judicial Assistant: A. Barton            ERM: None
Courtroom Assistant: None                Deputy Sheriff: None

The Court denies Plaintiff's request for a 0.5 lodestar multiplier. Given the routine work done in this case and the results obtained in this lemon law area, a multiplier is not appropriate. Any contingency risk factor is already accounted for in the hourly rates, which the Court has found to be reasonable. There is no shortage of experienced counsel litigating in this area of the law at these hourly rates. Accordingly, a 0.5 multiplier is not warranted.

Final Lodestar Determination

Based on the foregoing, the Court imposes some reduction to the number of attorney hours requested. In addition, Plaintiff is not entitled to a multiplier enhancement. The Court apportion fees for the fraud cause of action, but only for fees incurred in opposing Defendant's demurrers thereto and drafting an amended pleading as a result of the demurrer.

Accordingly, Plaintiff's motion for attorneys' fees is granted in the reduced total amount of $333,801.50.

The Clerk to give notice.

The Court's written Ruling is signed and filed this date.

By order of the Court, attorneys' fees in the amount of $333,801.50 is interlineated on the April 18, 2022 Amended Judgment.

Certificate of Mailing is attached.

# EXHIBIT G

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**

Central District, Stanley Mosk Courthouse, Department 54

BC640055                                                                                   March 8, 2022
**LINO I BOLVITO VS FORD MOTOR COMPANY**                                                    9:00 AM

Judge: Honorable Maurice A. Leiter            CSR: Linda Lee, CSR #13568 (via
                                              LACourtConnect)
Judicial Assistant: N.Marshalian              ERM: None
Courtroom Assistant: R.Manzo                  Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Erin K. Barns (via LACourtConnect) and Jacob Cutler (via LACourtConnect)

for Richard Michael Wirtz, Esq.

For Defendant(s): Marcia M. LaCour (via LACourtConnect) for Matthew M Proudfoot

**NATURE OF PROCEEDINGS:** Hearing on Motion for Attorney Fees; Hearing on Motion for Attorney Fees

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956, Linda Lee, CSR # 13568, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

The Court's tentative ruling is posted for parties to review.

The matters are called for hearing and argued.

After hearing oral argument, the Court adopts its tentative ruling as the Order of the Court.

The Motion re: FOR ATTORNEYS FEES, COSTS AND EXPENSES filed by Oscar Mayen, Lino I. Bolvito on 12/20/2021 is Granted.

The Motion for Attorney Fees filed by Lino I. Bolvito, Oscar Mayen on 02/08/2022 is Granted.

(2) Motions for Attorney's Fees
Moving Party: Plaintiffs Lino Bolvito and Oscar Mayen
Responding Party: Defendant Ford Motor Company

KNIGHT LAW GROUP'S MOTION FOR ATTORNEY'S FEES AND COSTS IS GRANTED IN THE AMOUNT OF $77,986.50 IN FEES AND $16,465.15 IN COSTS.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 54

BC640055                                                          March 8, 2022
**LINO I BOLVITO VS FORD MOTOR COMPANY**                          9:00 AM

| | |
|---|---|
| Judge: Honorable Maurice A. Leiter | CSR: Linda Lee, CSR #13568 (via LACourtConnect) |
| Judicial Assistant: N.Marshalian | ERM: None |
| Courtroom Assistant: R.Manzo | Deputy Sheriff: None |

WIRTZ'S MOTION IS FOR ATTORNEY'S FEES AND COSTS IS GRANTED IN THE AMOUNT OF $52,175.00 IN FEES AND $3,771.74.

PLAINITFFS TO NOTICE.

If the parties wish to submit on the tentative, please email the courtroom at SMCdept54@lacourt.org with notice to opposing counsel (or self-represented party) before 8:30 am on the day of the hearing.

The Court considers the moving papers, opposition and reply

BACKGROUND

This is a lemon law action. On November 7, 2016, Plaintiff Lino Bolvito filed a complaint against Defendant Ford Motor Company asserting one cause of action for violations of the Song-Beverly Act arising from Bolvito's purchase of a 2012 F-150.

ANALYSIS

The Song-Beverly Act provides, "[i]f the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Civ. Code § 1794(d).)

Plaintiffs' counsel move for attorneys' fees and costs. Defendant does not dispute that Plaintiffs are the "prevailing party."

A. Knight Law Group's Motion for Attorney Fees

Plaintiffs assert that the Knight Law Group incurred fees in the amount of $77,986.50 and $16,465.15 in costs to prosecute this action. Plaintiffs request that the Court apply a 1.5 multiplier, resulting in a total fee award of $116,979.75.

1. Multiplier

Plaintiffs request the Court apply a 1.5 multiplier to counsel's fees due to the novelty, difficulty

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 54

**BC640055**                                                        March 8, 2022
**LINO I BOLVITO VS FORD MOTOR COMPANY**                            9:00 AM

Judge: Honorable Maurice A. Leiter        CSR: Linda Lee, CSR #13568 (via
                                          LACourtConnect)
Judicial Assistant: N.Marshalian          ERM: None
Courtroom Assistant: R.Manzo              Deputy Sheriff: None

and skill displayed in the case and the contingent nature of the case. The Court is permitted, but not required, to apply a multiplier to an award for attorney's if, inter alia, there was contingent risk or exceptional skill displayed by the attorneys. (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1138.) In applying a multiplier for contingent risk, "the trial court should consider whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment…" (Id.)

There is no evidence that this case involved anything novel, nor did it require particular skill. This is a standard lemon law action and nothing about this litigation warrants a multiplier.

2. Lodestar

Plaintiffs seek $77,986.50 in fees to prosecute this case. Plaintiffs' counsel charges between $200.00 and $550.00 per hour and spent 229 hours on this case over approximately four years. Defendant argues that Plaintiff's counsel's fees are unreasonable as counsel's hourly rates are excessive and improperly include inflated hours related to travel and the instant motion. The Court finds that counsel's hourly rates are reasonable. The Court also find that counsel's billing entries are not excessive. This action lasted four years, involved significant motion work and resulted in a favorable settlement for Plaintiffs. The Court finds counsel's fees reasonable.

Knight Law Group's motion for attorney's fees and costs is GRANTED in the amount of $77,986.50 in fees and $16,465.15 in costs.

B. Wirtz Law APC's Motion for Attorney's Fees

Plaintiffs assert that Wirtz Law APC incurred fees in the amount of $52,175.00 and costs in the amount of $3,771.74 preparing this case for trial. Plaintiffs request the Court apply a 1.5 multiplier, resulting in a total fee award of $82,034.24.

1. Multiplier

Plaintiffs request the Court apply a "nominal" 1.5 multiplier to counsel's fees due to the novelty, difficulty and skill displayed in the case and the contingent nature of the case. As with Knight's motion, there is no evidence that this case involved anything novel, nor did it require particular skill. The Court will not apply a multiplier.

2. Lodestar

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 54

**BC640055**                                                            March 8, 2022
**LINO I BOLVITO VS FORD MOTOR COMPANY**                                 9:00 AM

Judge: Honorable Maurice A. Leiter              CSR: Linda Lee, CSR #13568 (via
                                                LACourtConnect)
Judicial Assistant: N.Marshalian                ERM: None
Courtroom Assistant: R.Manzo                    Deputy Sheriff: None

Plaintiffs seek $69,462.50 in fees to prosecute this case and prepare for trial. Plaintiffs' counsel charges between $200.00 and $650.00 per hour. Defendant argues that Plaintiff's counsel's fees are unreasonable as counsel's hourly rates are excessive and improperly include inflated hours related to travel and the instant motion. The Court finds that counsel's hourly rates are reasonable. The Court also find that counsel's billing entries are not excessive. This action lasted four years, involved significant motion work and resulted in a favorable settlement for Plaintiffs. The Court finds counsel's fees reasonable.

Wirtz's motion is for attorney's fees and costs is GRANTED in the amount of $52,175.00 in fees and $3,771.74.

Counsel represent intention to dismiss the case after fees and costs have been paid.

Order to Show Cause Re: Dismissal (Settlement) is scheduled for 04/27/2022 at 08:30 AM in Department 54 at Stanley Mosk Courthouse.

Plaintiff's counsel from Wirtz Law APC is to give notice.

---

EXHIBIT H

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 36

**18STCV05153**                                                    October 18, 2021
**ANA DEL CARMEN LACAYO vs FORD MOTOR**                              8:30 AM
**COMPANY, A, et al.**

Judge: Honorable Gregory W. Alarcon          CSR: Linda Lee, #13568, Pro Tem
Judicial Assistant: C. Mason                 ERM: None
Courtroom Assistant: A. Aguilar              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Deepak Devabose (Telephonic)

For Defendant(s): Desiree Marie Cox (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Attorney Fees

Matter is called for hearing.

Motion for attorneys' fees is granted in part. The Court's tentative ruling is to be the order of the Court and is filed this date.

Plaintiff to give notice.

Minute Order                                              Page 1 of 1

# EXHIBIT I

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 52

19STCV21898                                                              June 28, 2021
HECTOR LARA MEJIA vs FORD MOTOR COMPANY, A                                    9:00 AM
DELAWARE CORPORATION, et al.

Judge: Honorable Armen Tamzarian        CSR: Kevin Roldan #13463 Pro Tempore
Judicial Assistant: M. De Luna          ERM: None
Courtroom Assistant: T. Isunza          Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Bryan Altman by Jacob Cutler (Telephonic)

For Defendant(s): Desiree Marie Cox (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Attorney Fees

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956, Kevin Roldan #13463, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

Matter is called for hearing.

The court's tentative ruling is published to all parties via posting on the court's website.

Plaintiff Hector Lara Mejia's Motion for Attorney Fees, Costs, and Expenses

The court having read the papers and heard the arguments rules as follows:

Evidentiary Objections

Plaintiff makes 10 objections to the Declaration of Michael D. Mortensen. For objection number 1, Mortensen has foundation because he is counsel for Ford Motor Company and Puente Hills Ford in this case. (Mortensen Decl., ¶ 1.)

Objections 2 through 10 concern statements about fee motions by plaintiff's counsel in other cases. Courts may consider rates awarded in other matters to determine the reasonableness of counsel's hourly rates. (Davis v City of San Diego (2003) 106 Cal.App.4th 893, 904; Margolin v Regional Planning Comm'n (1982) 134 Cal.App.3d 999, 1005.)

All 10 objections are OVERRULED.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 52

**19STCV21898**
**HECTOR LARA MEJIA vs FORD MOTOR COMPANY, A DELAWARE CORPORATION, et al.**

June 28, 2021
9:00 AM

Judge: Honorable Armen Tamzarian            CSR: Kevin Roldan #13463 Pro Tempore
Judicial Assistant: M. De Luna              ERM: None
Courtroom Assistant: T. Isunza              Deputy Sheriff: None

Rates

For hourly rates, "the trial court is in the best position to value the services rendered by the attorneys." (569 East County Boulevard LLC v. Backcountry Against the Dump, Inc. (2016) 6 Cal.App.5th 426, 436.) Courts may rely on their "own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." (Id. at p. 437, citations omitted.)

Based on its knowledge of the legal market and the difficulty of the litigation, the court reduces the rates for one of the attorneys who worked on the case. Attorney Bryan Charles Altman seeks an hourly rate of $950. (Altman Decl., ¶¶ 6-7.) He spent: 0.8 hours reviewing the "case file, documents, repair orders, [and] repair order summary" on December 8, 2020; 0.7 hours reviewing and revising the motions in limine on December 11, 2020; and 0.6 hours reviewing "documents, discovery, FMC's Expert Designation and discuss[ing] Expert De-Designation and Expert Withdrawal with D. Alemi" on January 7, 2021. (Altman Decl., Ex. C.)

Those tasks were not difficult or complex enough to justify an attorney's rate of $950 for doing them. They were routine tasks. The court finds that a rate of $800 is the reasonable market rate. For 2.1 hours, that amounts to a reduction of $315 (from $1,995 to $1,680).

Hours

Plaintiff was represented by 10 attorneys working in two different law firms. This is not a model of efficiency for a relatively routine case. Nonetheless, after reviewing the timesheets, the court finds the hours spent by plaintiff's counsel were reasonable and supported by sufficient evidence. "[V]erified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." (Horsford v. Board of Trustees of California State University (2005) 132 Cal.App.4th 359, 396 (Horsford).) The moving party may recover fees spent litigating a fee motion itself. (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1141 (Ketchum).)

Although plaintiff seeks fees for an unsuccessful discovery motions, "[c]ompensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim." (Akins v. Enterprise Rent-A-Car Co. of San Francisco (2000) 79 Cal.App.4th 1127, 1133.)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 52

**19STCV21898**                                                          June 28, 2021
**HECTOR LARA MEJIA vs FORD MOTOR COMPANY, A**                    9:00 AM
**DELAWARE CORPORATION, et al.**

Judge: Honorable Armen Tamzarian              CSR: Kevin Roldan #13463 Pro Tempore
Judicial Assistant: M. De Luna                ERM: None
Courtroom Assistant: T. Isunza                Deputy Sheriff: None

Multiplier

The court declines to apply a multiplier to the lodestar. Fee multipliers are available for Song-Beverly Act cases. (Robertson v. Fleetwood Travel Trailers of California, Inc. (2006) 144 Cal.App.4th 785, 822.) Multipliers may be awarded based on numerous factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." (Ketchum, supra, 24 Cal.4th at p. 1132.)

This case did not involve novel or difficult questions. Plaintiff's counsel achieved a good result but did not demonstrate exceptional skill in litigating the case. The lodestar attorney fees adequately address the contingent nature of counsel's representation. (See Horsford, supra, 132 Cal.App.4th at p. 395.)

Expenses

Civil Code § 1794(d) provides that a prevailing buyer can recover "costs and expenses… determined by the court to have been reasonably incurred." "Expenses" are broader than "costs" under the Code of Civil Procedure. (Jensen v. BMW of North America, Inc. (1995) 35 Cal.App.4th 112, 138.) "If the items on a verified cost bill appear proper charges, they are prima facie evidence that the costs, expenses and services therein listed were necessarily incurred." (Seever v. Copley Press, Inc. (2006) 141 Cal.App.4th 1550, 1557.)

Plaintiff submitted a verified memorandum of costs on form MC-010. Upon defendants challenging the expenses, plaintiff submitted the Supplemental Declaration of Steve Mikhov, which includes summaries and invoices for those expenses. (¶¶ 3-4, Ex. A.) The court finds no basis to reduce plaintiff's claimed expenses of $4,457.75.

Disposition

The motion is GRANTED IN PART. The court awards $25,229.50 (the lodestar minus $310 for Altman's reduced rate) in attorney fees and $4,457.75 in costs and expenses for a total of $29,687.25.

Defendants are ordered to pay plaintiff and his lawyers $29,687.25 within 30 days.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 52

**19STCV21898**                                                        June 28, 2021
**HECTOR LARA MEJIA vs FORD MOTOR COMPANY, A**                              9:00 AM
**DELAWARE CORPORATION, et al.**

Judge: Honorable Armen Tamzarian           CSR: Kevin Roldan #13463 Pro Tempore
Judicial Assistant: M. De Luna             ERM: None
Courtroom Assistant: T. Isunza             Deputy Sheriff: None

After argument of counsel, the court rules in accordance with its tentative ruling which is adopted as the final ruling of the court.

Order to Show Cause Re: entry of Judgment/Dismissal is scheduled for 11/02/21 at 08:30 AM in Department 52 at Stanley Mosk Courthouse.

On the Court's own motion, the Jury Trial (8 days - Lemon Law) scheduled for 12/01/2021 is advanced to this date and vacated .

Plaintiff is to give notice.


The Motion for Attorney Fees filed by HECTOR LARA MEJIA on 05/28/2021 is Granted in Part.

# EXHIBIT J

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN HERRERA and ELIZABETH HERRERA,<br><br>                                    Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>                                    Defendant. | Case No.:  3:17-cv-00579-AJB-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>**(Doc. No. 90)** |

Before the Court is Plaintiffs' motion for attorneys' fees, costs, and expenses. (Doc. No. 90.) Defendant FCA US LLC ("FCA") opposed the motion. (Doc. No. 96.) For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion, with a reduction of fees as set forth in detail below.

## I.      BACKGROUND

This case arises out of the purchase of a new 2011 Jeep Grand Cherokee ("the Vehicle") for a sales price of $45,706.32. The Vehicle was manufactured and distributed by Defendant FCA US LLC, which provided a written warranty with the Vehicle. Within the applicable warranty period, the Vehicle exhibited repeated engine and electrical issues. Despite numerous attempts by FCA to fix Plaintiffs' Vehicle, the problems persisted. Plaintiffs eventually contacted FCA customer service in November 2015, and requested

FCA repurchase the Vehicle. FCA rejected Plaintiffs' request. Plaintiffs filed their Complaint in San Diego Superior Court on June 17, 2016, alleging violations of the Song-Beverly Act and fraudulent concealment. The action was removed to this Court on March 23, 2017. On May 29, 2019, the parties filed a joint settlement. On November 15, 2019, Plaintiffs filed their motion for attorneys' fees, costs, and expenses, and FCA opposed the motion. (Doc. Nos. 90, 96.) This order follows.

## II.  LEGAL STANDARD

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). However, a statute allocating fees to a prevailing party can overcome this general rule. *See id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended, and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 99,

2

104 (1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited, and the results achieved." *Id.* If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America*, LLC, 4 Cal. App. 5th 462, 470 (2016) (same). If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

## III.  DISCUSSION

As prevailing buyers, Plaintiffs are entitled to an award of fees and costs under the Song-Beverly Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin*, 4 Cal. App. 5th at 470. Here, Plaintiffs move the Court: (1) for an award of attorneys' fees pursuant to California Civil Code § 1794(d) under the "lodestar" method in the amount of $54,732.50, (2) for a "lodestar" modifier of 0.5 under California law, in the amount of $27,366.25, and (3) to award actual costs and expenses incurred in the amount of $14,711.06. Plaintiffs request a total of $96,809.81 in attorneys' fees, costs, and expenses. (Doc. No. 90-1 at 7.) FCA acknowledges Plaintiffs are entitled to recover attorneys' fees and costs, but argues the amount requested is unreasonable and should be reduced. (Doc. No. 96 at 6.)

### A.  Plaintiffs' Motion for Attorneys' Fees

First, Plaintiffs seek $32,410.00 for work completed by the Knight Law Group ("KLG") and $22,322.50 for work completed by KLG's co-counsel, Wirtz Law. (Doc. No. 90-1 at 13.) This totals $54,732.50 in attorneys' fees for both law firms.

3

### 1.    Hours Worked By Counsel

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *See Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *See Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006); *see also Ketchum*, 24 Cal. 4th at 1132 (stating "inefficient or duplicative efforts [are] not subject to compensation").

The billing records submitted by KLG indicate that its attorneys expended 91.6 billable hours on this case, while Wirtz Law billed 61.70 hours to the matter. (*See* Doc. No. 90-2 at 38; Doc. No. 90-3 at 15.) FCA objects to the reported hours, arguing there was duplication, as well as other excessive rates or time billed. (Doc. No. 96 at 7.) In particular, FCA lists numerous objections where billing entries were either excessive, duplicative, or included clerical work. The Court will address each objection below:

- FCA objects to the 2.4 hours, totaling $1,560.00, billed by partner Richard M. Wirtz of Wirtz Law to get up to speed, and "[r]eview and analyze client file." (Doc. No. 90-3 at 8.) The Court finds that this entry is mostly reasonable to ensure that counsel is updated in the matter, but will in its discretion, reduce the fees by $300.00 to ensure a reasonable time was spent on this activity.

- FCA also disputes three entries totaling $1,265.00 billed by KLG for what Plaintiffs' counsel offers to the public as a "free evaluation." (Doc. No. 96 at 8.) FCA maintains these entries are undated, and there is no evidence that a fee agreement was even in place when these tasks occurred. (*Id.*) The Court

4

agrees with FCA and in its discretion, will exclude $700.00 from KLG's recoverable fees.

- FCA next takes issue with the $180.00 billed by KLG for work related to Defendant La Mesa Chrysler Jeep. (Doc. No. 96 at 8.) FCA argues there is no reasonable basis for FCA to reimburse Plaintiffs' counsel for work related to a different defendant who was eventually dismissed. The Court agrees with FCA's position and will accordingly reduce KLG's fees by $180.00.

- FCA seeks for the Court to exclude $937.50 from KLG's fees. (Doc. No. 96 at 8–9.) FCA explains attorney Constance Morrison of KLG billed $4,425.00 for 11.8 hours to attend Plaintiffs' depositions, including travel. (*Id.*) Because KLG block-billed, it is unclear how much of the time was spent on travel versus conducting the deposition. The deposition transcripts, however, indicate that the total combined deposition time for both Plaintiffs was four hours and eleven minutes. (*Id.*) Thus, FCA speculates that five hours was spent traveling to and from the deposition. FCA argues that courts routinely reduce the amount recoverable for travel by half, and thus, the Court should reduce the fees by $937.50. This amount represents 2.5 hours of travel time at $375/hr. The Court mostly agrees with FCA, but in its discretion, will reduce KLG's fees by $700.00 to ensure a reasonable rate for travel time. *See In re Washington Public Power Supply Sys. Dec. Lit.*, 19 F.3d 1291, 1298–99 (9th Cir. 1994).

- Similarly, attorney Raymond Arashenko of KLG billed $3,690.00 for 12.3 hours to attend the vehicle inspection, including travel. (Doc. No. 96 at 9.) Because KLG block-billed this time, it is unclear much how of the time was spent on travel versus on the inspection. FCA estimates that eight hours was spent traveling and requests a $1,200.00 reduction. In its discretion, the Court will instead reduce KLG's fees by $900.00 to ensure a reasonable rate for

5

travel time.

- Attorney Russell Higgins of KLG billed $2,925.00 for 6.5 hours to attend the deposition of Jeff Richards. (Doc. No. 96 at 9.) Because KLG block-billed this time, it is unclear much how of the time was spent on travel. FCA requests a $450.00 reduction. The Court will instead reduce KLG's fees by $300.00 to ensure a reasonable rate for travel time.

- Attorney Raymond Arashenko of KLG billed $2,460.00 for 8.2 hours to attend the deposition of Gregory Barnett. (Doc. No. 96 at 9.) Because KLG block-billed this time, it is unclear much how of the time was spent on travel. FCA requests a $450.00 reduction. The Court will reduce KLG's fees by $300.00 to ensure a reasonable rate for travel time.

- Attorney Mitchell Rosensweig of KLG billed $3,120.00 for 9.6 hours to attend the Mandatory Settlement Conference. (Doc. No. 96 at 10.) Because KLG block-billed this time, it is unclear much how of the time was spent on travel. FCA requests a $975.00 reduction. The Court will reduce KLG's fees by $700.00 to ensure a reasonable rate for travel time.

- Next, FCA disputes the $275.00 billed by partner Steve Mikhov of KLG for "reviewing and auditing and billing," and the $297.50 billed by paralegal Rebecca Evans of Wirtz Law for bates-stamping. (Doc. No. 96 at 10.) The Court agrees that Plaintiffs' counsel may not be compensated for purely clerical and administrative tasks. *See Castillo-Antionio v. Iqbal*, 2017 WL 1113300, at *7 (N.D. Cal. Mar. 24, 2017). Thus, these amounts will be excluded from KLG and Wirtz Law's fees.

- FCA also seeks for the Court to exclude the $225.00 billed by partner Amy Rotman of Wirtz Law for attending a pretrial conference for which Richard Wirtz was already in attendance. (Doc. No. 96 at 10.) The Court finds that this rather small amount is not entirely unreasonable, and two attorneys in

6

attendance is not necessarily excessive to keep track of the numerous cases being handled by Plaintiffs' counsel in the litigation against FCA. Therefore, this amount may be recovered.

- FCA protests the $1,295.00 billed by attorney Lauren Veggian of Wirtz Law for 3.7 hours spent attending Dr. Barbara Luna's deposition. (Doc. No. 96 at 10.) FCA argues Dr. Luna's sole purpose was to testify about the alleged fraudulent concealment claim, but Plaintiffs did not recover on this claim in the settlement. Notwithstanding FCA's arguments, the Court deems this amount reasonably incurred in the litigation of this case from its inception to settlement. FCA additionally seeks a 20% reduction for all time spent on the fraud claim. (*Id.* at 11.) But FCA cites no authority allowing the Court to reduce counsel's fees simply because a certain claim was not factored into a settlement. As such, the Court declines to reduce counsel's fees.

- Lastly, FCA takes issue with the $2,835.00 billed by Wirtz Law for preparing this instant motion for attorneys' fees, the $2,250.00 billed by Wirtz Law for the "anticipated" time spent drafting the reply, and the $1,350.00 billed by Wirtz Law in "anticipated" time attending the hearing. (Doc. No. 90-3 at 15.) Because Wirtz Law does not dispute that the instant motion is largely a template-driven activity, the Court will reduce Wirtz Law's fees by $700.00 for the work completed on the motion for attorneys' fees. As to the reply brief, because Wirtz Law has not supplemented its bills with actual time spent on the reply, the Court will reduce the amount recoverable for the reply brief by $1,000.00. Finally, Wirtz Law may not be compensated $1,350.00 for the "anticipated" time for traveling to and appearing for the hearing on instant fee motion. The hearing on this motion for attorneys' fees was vacated by the Court in its determination that the matter was suitable for determination on the papers. (Doc. No. 99.)

7

In summation, KLG's total recoverable fee amount is reduced by $4,055.00. This brings KLG's recoverable fees down to a total of $28,355.00. Wirtz Law's fees are reduced by $3,647.50. This places Wirtz Law's fees to a total of $18,675.00.

### 2.   Hourly Rates

FCA next argues Plaintiffs fail to offer any admissible evidence to support the hourly rates of their counsel for lemon law work. (Doc. No. 96 at 11.) However, the Court is satisfied with the bases for Plaintiffs' counsels' hourly rates. Particularly, Plaintiffs provide ample evidence, including surveys of the hourly rates of similar attorneys with similar experience and qualifications. (Doc. No. 90-3 at 17.) Thus, the Court finds the rates cited for all attorneys supported by evidence and are reasonable.

### 3.   Lodestar Calculation

The lodestar method calculates attorneys' fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *State of Fla. v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016).

| LAW FIRM | LEGAL PROFRESSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group** | Alastair Hamblin | 3.0 | $325 | $975.00 |
| | Amy Morse | 9.8 | $350 | $3,430.00 |
| | Constance Morrison | 11.8 | $375 | $4,425.00 |
| | Kristina Stephenson-Cheang | 9.3 | $375 | $3,487.50 |
| | Mitchell Rosensweig | 11.5 | $325 | $3,737.50 |
| | Michelle Lumasag | 6.7 | $200 | $1,340.00 |
| | Marisa Melero | 1.8 | $225 | $405.00 |
| | Raymond Areshenko | 20.5 | $300 | $6,150.00 |
| | Russell Higgins | 10.0 | $450 | $4,500.00 |
| | Steve Mikhov | 7.2 | $550 | $3,960.00 |
| **Knight Law Group Total** | | | | $32,410.00 |
| | | | | |
| **Wirtz Law** | Richard M. Wirtz | 3.0 | $650 | $1,950.00 |
| | Lauren B. Veggian | 3.7 | $350 | $1,295.00 |

| | Andrea Munoz | 4.5 | $200 | $900.00 |
|---|---|---|---|---|
| | Rebecca Evans | 15.6 | $200 | $3,120.00 |
| | Amy R. Rotman | 18.5 | $450 | $8,325.00 |
| | Erin K. Barns | 14.3 | $450 | $6,435.00 |
| **Wirtz Law Total** | | | | $22,322.50 |
| **TOTAL** | | | | **$54,732.50** |

Here, with no adjustments to the reasonable hourly rates and time, the total amount of fees for both KLG and Wirtz Law is $54,732.50. Taking into account the previously noted reductions, the total lodestar amount is $28,355.00 for KLG's fees and $18,675.00 for Wirtz Law's fees. Therefore, Plaintiffs' counsels' total lodestar amounts is **$47,030.00.**

### 4. Application of a Multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal. 5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.").

Here, Plaintiffs seek a 0.5 multiplier based on the risk of taking this case on a contingent fee basis, the substantial costs advanced, the result achieved, and the delay in payment. (Doc. No. 90-1 at 20.) Significantly, however, this case did not present particularly novel or difficult questions of law or fact. Indeed, the issues related to the alleged defect in FCA's vehicles were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13–cv–08080–DDP–VBK and *Hall v. FCA US LLC*, Case No. 1:16-cv-0684-JLT. Thus, the issues presented in this action were not uniquely complex. *See Steel v. GMC,* 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not

complex and do not require a significant amount of legal analysis or novel pleading"). Additionally, it is highly unlikely that the litigation of this specific case precluded counsel, as lemon law attorneys, from taking on other matters. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, especially in this action where the disputed facts and issues to be resolved were minimal. Indeed, there was nothing unusual about this case that would put counsel at great risk for accepting the matter on a contingent basis. Accordingly, the Court declines to award a multiplier and finds the lodestar amount of $47,030.00 as reasonable.

### B. Plaintiffs' Request for Costs

Plaintiffs request costs in the amount of $14,711.06 in this instant motion for attorneys' fees. (Doc. No. 90-1 at 22.) FCA states it will contest Plaintiffs' purported costs and expenses of $14,711.06 after Plaintiffs properly refile their Bill of Costs in compliance with the Local Rules. (Doc. No. 96 at 6.) The Clerk of Court had directed that Plaintiffs' "Bill of Costs must be filed within fourteen days after entry of judgment." (Doc. No. 92.) As such, the Court will defer ruling on Plaintiffs' cost at this time. Plaintiffs are to refile their Bill of Costs after entry of judgment.

## IV.  CONCLUSION

Based upon the foregoing, the Court **ORDERS** as follows:

1. Plaintiffs' motion for fees is **GRANTED** in the modified amount of **$47,030.00**; and

2. Plaintiffs must **REFILE** their Bill of Costs in accordance with Local Rule 54.1.


**IT IS SO ORDERED.**

Dated:  November 23, 2020

Hon. Anthony J. Battaglia
United States District Judge

10

# EXHIBIT K

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| Case No. | **LACV 18-08297-VAP (PLAx)** | Date | September 8, 2020 |
| --- | --- | --- | --- |
| Title | *Caleb Lin v. BMW of North America, LLC, et al.* | | |

Present: The Honorable    VIRGINIA A. PHILLIPS, UNITED STATES DISTRICT JUDGE

| Christine Chung | Not Reported |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| --- | --- |
| None Present | None Present |

Proceedings:    **MINUTE ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES (IN CHAMBERS)**

Before the Court is Plaintiff Caleb Lin's ("Plaintiff") "Motion for Attorney's Fees, Costs and Expenses" ("Motion"), filed on August 11, 2020. Having considered the papers filed in support of, and in opposition to, the Motion, the Court finds this matter appropriate for resolution without oral argument pursuant to Local Rule 7-15 and VACATES the hearing set on September 14, 2020 at 2:00 p.m. For the following reasons, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.    Background

Plaintiff initiated this case under the Song-Beverly Consumer Warranty Act ("Song-Beverly") in Los Angeles Superior Court on January 19, 2018, alleging he made repeated repairs to fix his leased 2014 BMW i3/Rex vehicle. After Plaintiff dismissed Defendant New Century BMW from the lawsuit, Defendant BMW of North America, LLC removed the action to federal court on September 25, 2018, invoking this Court's diversity jurisdiction, 28 U.S.C. § 1332.

Following removal, the parties engaged in written discovery and took the depositions of New Century BMW's dealership personnel, Plaintiff, and Defendant's "person most knowledgeable." (See Mot. at 4-7.) The parties attended a mediation on March 15, 2019, which was unsuccessful; a joint status conference on July 10, 2019; and the Rule 16 conference on August 27, 2019. (Id.) The parties then prepared for trial, including filing motions in limine, memoranda of contentions of law and fact, witness lists, a joint trial exhibit list, and jury instructions. (Id.; see also Dkt. Nos. 34-44, 46-53.) Specifically, Plaintiff filed three motions in

limine, two of which Defendant did not oppose. Defendant filed two motions in limine and
Plaintiff did not file a response to either.

The Court ruled on the motions in limine in an order entered September 20, 2019. (See
Dkt. No. 54.) In that Order, the Court pointed out Plaintiff's peculiar labeling of its motions and
how Plaintiff exclusively cited to the California Evidence Code throughout its motions, whereas
the Federal Rules of Evidence apply to actions pending in federal courts. (Id. at 1.) The Court
granted Plaintiff's two unopposed motions and denied the third, as it found permissible
Defendant's proposed use of evidence relating to prior settlement negotiations. (Id. at 2.) The
Court granted both of Defendant's unopposed motions. (Id.) In that Order, the Court also
pointed out that counsel for both parties failed to comply with the Local Rules on several
occasions and their pretrial documents, including the final pretrial conference order, the exhibit
lists, and jury instructions, were "woefully inadequate." (Id. at 3.) The Court sua sponte vacated
the pretrial conference date and reset the matter for trial on June 16, 2020. The Court also
ordered the parties to "resubmit a proposed Pretrial Conference Order, jury instructions, and
evidentiary objections to Exhibits, by September 26, in the format prescribed in the Court's Civil
Trial Scheduling Order." (Id.)

The parties filed proposed jury instructions, a joint exhibit list, and a proposed pretrial
conference order on September 26, 2019. (See Dkt. Nos. 55-59.) In an Order entered on
October 2, 2019, the Court explained the parties had failed, yet again, to comply with the Civil
Trial Scheduling Order, "which specifically states that parties may submit, at most, two sets of
instructions – one joint and one disputed." (Dkt. No. 60.) The Court struck both Plaintiff's and
Defendant's disputed jury instructions and ordered them to resubmit the instructions "in the
prescribed format" by October 8, 2019. (Id.) Defendant filed the disputed jury instructions on
October 8, 2019. (Dkt. No. 61.)

On June 5, 2020, the Court continued the pretrial conference to August 17, 2020 and the
trial date to August 25, 2020. (Dkt. No. 66.)

Plaintiff accepted Defendant's settlement offer on July 14, 2020. Plaintiff agreed to settle
his claims in exchange for $49,000. (See Mot. at 1, 12.) The parties filed a joint notice of
settlement on July 15, 2019 and the Court ordered the action dismissed on July 28, 2020.

Plaintiff filed the instant Motion on August 11, 2020. Defendant filed Opposition to the
Motion on August 24, 2020. Plaintiff filed a Reply thereto on August 31, 2020.

## II.    Legal Standard

Fees in Song-Beverly cases are governed by California Civil Code § 1794(d), which
provides: "If the buyer prevails in an action under this section, the buyer shall be allowed by the
court to recover as part of the judgment a sum equal to the aggregate amount of costs and
expenses, including attorney's fees based on actual time expended, determined by the court to
have been reasonably incurred by the buyer in connection with the commencement and
prosecution of such action." "The plain wording of the statute requires the trial court to base the
fee award upon actual time expended on the case, as long as such fees are reasonably incurred –

Case 2:23-cv-02454-SPW-JC   Document 23-2   Filed 09/22/23   Page 83 of 233   Page
ID #:239
Case 2:18-cv-02457-APM-JC   Document 53   Filed 09/08/20   Page 3 of 11   Page ID #:1965

both from the standpoint of time spent and the amount charged." <u>Robertson v. Fleetwood Travel
Trailers of Cal., Inc.</u>, 144 Cal. App. 4th 785, 817-18 (2006) (emphasis in original).

Courts use a two-step lodestar approach to calculate attorneys' fees. <u>Id.</u> (citing <u>Serrano v.
Prices</u>, 20 Cal. 3d 25, 48-49 (1977)); <u>see</u> <u>also</u> <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 945
(9th Cir. 2007). The first step is to calculate a "lodestar" by "multiplying the number of hours
[the Court] finds the prevailing party reasonably expended on the litigation by a reasonable
hourly rate." <u>McGrath v. Cnty. of Nev.</u>, 67 F.3d 248, 252 (9th Cir. 1995) (citation omitted). "In
determining the appropriate lodestar amount, the district court may exclude from the fee request
any hours that are excessive, redundant, or otherwise unnecessary." <u>Welch</u>, 480 F.3d at 946
(internal quotations omitted).

"The [fee] applicant has an initial burden of production, under which it must 'produce
satisfactory evidence' establishing the reasonableness of the requested fee." <u>United States v.
$28,000 in U.S. Currency</u>, 802 F.3d 1100, 1105 (9th Cir. 2015). "This evidence must include
proof of market rates in the relevant community (often in the form of affidavits from
practitioners) . . . and detailed documentation of the hours worked." <u>Id.</u> (citations omitted).

The second step is to determine whether the lodestar amount is reasonable or needs to be
augmented. <u>Id.</u>; <u>see</u> <u>also</u> <u>Robertson</u>, 144 Cal. App. 4th at 817-18 (citing <u>Levy v. Toyota Motor
Sales, U.S.A., Inc.</u>, 4 Cal. App. 4th 807, 816 (1992)). The Ninth Circuit has adopted the
following factors to determine whether the fees requested by the prevailing party are reasonable:
time and labor required; the novelty and difficulty of the questions involved; the skill needed to
perform the legal service properly; the preclusion of other employment by the attorney due to
acceptance of the case; the customary fee, whether the fee is fixed or contingent; time limitations
imposed by the client or the circumstances; the amount involved and the results obtained; the
experience, reputation, and ability of the attorney; the "undesirability" of the case; the nature and
length of the professional relationship with the client; and awards in similar cases. <u>Kerr v.
Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975), <u>abrogated on other grounds by</u> <u>City
of Burlington v. Dague</u>, 505 U.S. 557 (1992).

The Ninth Circuit has noted that many of the <u>Kerr</u> factors are subsumed within the
lodestar calculation. <u>Jordan v. Multnomah Cnty.</u>, 815 F.2d 1258, 1262 (9th Cir. 1987). While the
court must consider the <u>Kerr</u> factors, it need not discuss all of them "because most are not
matters on which anything is at issue or needs to be said." <u>McGinnis v. Ky. Fried Chicken of
Cal.</u>, 51 F.3d 805, 809 (9th Cir. 1994). Typically, the reasonableness determination "will involve
considering both the proponent's evidence and evidence submitted by the fee opponent
'challenging the accuracy and reasonableness of the facts asserted by the prevailing party.'"
<u>$28,000 in U.S. Currency</u>, 802 F.3d at 1105 (quoting <u>Camacho</u>, 523 F.3d at 980). There is a
strong presumption, however, that the lodestar figure represents a reasonable fee. <u>Jordan</u>, 815
F.2d at 1262 (citing <u>Pa. v. Del. Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986)).

## III.  Discussion

In the Motion, Plaintiff argues, as the prevailing party in this litigation, he is entitled to an
award of his attorneys' fees, costs, and expenses. Plaintiff explains his attorneys from Knight
Law Group, LLP incurred $28,212.50 and his attorneys at Century Law Group LLP incurred

$20,566.25 to prosecute this action.  He asks for "a modest 0.5 enhancement in the amount of $24,389.38, to account for the delay in payment and contingent risk posed by this case, as well as the excellent result achieved." (Mot. at 8.)  Plaintiff's costs and expenses total $9,804.25.  In total, Plaintiff seeks $82,972.38 in fees, costs, and expenses.  (Id.)  In support of the Motion, Plaintiff submits the hourly rates of his counsel, a survey of rates charged by other consumer law attorneys, several court orders confirming the reasonableness of counsel's fees in other Song-Beverly Act cases, and a national survey of hourly rates charged by other counsel in similar cases.

In Opposition, Defendant does not dispute that for the purposes of the Motion, Plaintiff is deemed the prevailing party.  Defendant agrees Plaintiff is entitled to reasonable attorneys' fees, but objects to the amount sought as unreasonable.  Specifically, Defendant argues Plaintiff was represented by too many attorneys who duplicated work, warranting a reduction in the fee award sought.  In addition, Defendant contends a multiplier adjustment is not warranted.  Lastly, Defendant argues Plaintiff's bill of costs has not yet been determined by the Clerk of Court, so the Court should not reach this issue.

Plaintiff was represented in this litigation by two law firms, comprising a team of thirteen attorneys.  (See Declaration of Edward O. Lear ("Lear Decl.") ¶¶ 3-9, Exh. A; Declaration of Steve Mikhov ("Mikhov Decl.") ¶¶ 2, 22-36, Exh. A.)  Plaintiff seeks:

- $9,966.25 for the fees of Edward O. Lear of Century Law Group LLP, based on an hourly rate of $595 per hour and a total of 16.75 hours;

- $6,560 for the fees of Rizza Gonzales of Century Law Group LLP, based on an hourly rate of $400 per hour and a total of 16.4 hours;

- $4,040 for the fees of Saba Zafar of Century Law Group, LLP, based on an hourly rate of $400 per hour and a total of 10.1 hours;

- $2,365 for the fees of Steve Mikhov of Knight Law Group, LLC, based on an hourly rate of $550 per hour and a total of 4.3 hours;

- $3,115 for the fees of Amy Morse of Knight Law Group, LLC, based on an hourly rate of $350 per hour and a total of 8.9 hours;

- $6,150 for the fees of Kristina Stephenson-Cheang of Knight Law Group, LLC, based on an hourly rate of $350 per hour and a total of 16.4 hours;

- $6,600 for the fees of Deepak Devabose of Knight Law Group, LLC, based on an hourly rate of $275 per hour and a total of 24 hours;

- $275 for the fees of Daniel Kalinowski of Knight Law Group, LLC, based on an hourly rate of $250 per hour and a total of 1.1 hours;

- $3,715.50 for the fees of Constance Morrison of Knight Law Group, LLC, based on an hourly rate of $375 per hour and a total of 9.9 hours;

- $1,200 for the fees of Daniel Macioce of Knight Law Group, LLC, based on an hourly rate of $200 per hour and a total of 6 hours;

- $742.50 for the fees of George Semaan of Knight Law Group, LLC, based on an hourly rate of $225 per hour and a total of 3.3 hours;

- $1,680 for the fees of Maite Colon of Knight Law Group, LLC, based on an hourly rate of $275 per hour and a total of 5.6 hours; and

- $2,372.50 for the fees of Mitchell Rosensweig of Knight Law Group, LLC, based on an hourly rate of $325 per hour and a total of 7.3 hours.

(Id.)  Plaintiff also seeks a 0.5 multiplier on the lodestar due to "the delay in payment and contingent risk of the case."  (Mot. at 8).

A.    **Lodestar Calculation**
1.    **Reasonable Hourly Rates**

The Ninth Circuit has explained "determining a reasonable or prevailing rate of compensation is inherently difficult."  Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986) reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (quotations and citation omitted).  "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'"  Camacho, 523 F.3d at 979 (quoting Barjon v. Dalton, 132 F.3d 496, 502 (9th Cir. 1997)).

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Camacho, 523 F.3d at 980 (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)).  "Generally, the relevant community is the forum in which the district court sits." Barjon, 132 F.3d at 500.  In the event that the moving party fails to provide affidavits from local attorneys or from a fee expert to show that the requested rates match the prevailing market rates, the district court may rely on its own knowledge of customary rates and its familiarity with the legal market.  See Ingram v. Oroudijian, 647 F.3d 925, 928 (9th Cir. 2011).

In support of Plaintiff's counsel's hourly billing rates, Plaintiff has submitted declarations from his attorneys Edward O. Lear and Steve Mikhov.  These declarations provide the year each attorney listed supra was licensed, their requested billing rates, and, in some instances, relevant experience, as follows:

- Edward O. Lear: founder and co-managing partner of Century Law Group LLP; licensed to practice law since 1987; "over 30 years of litigation experience" and has tried over 250 cases; requested rate of $595 per hour.  (Lear Decl. ¶¶ 2-5.)

- Rizza Gonzales: partner at Century Law Group LLP; licensed to practice law since 2009; practice has been in "civil litigation involving real estate law, eminent domain, business disputes, and professional licensing defense;" requested rate of $400 per hour. (Lear Decl. ¶ 6.)

- Saba Zafar: no information provided regarding law practice or experience; requested rate of $400 per hour. (Lear Decl., Exh. A.)

- Steve Mikhov: managing partner at Knight Law Group, LLP; licensed to practice law since 2003; specialist in consumer law and "extensive experience prosecuting and resolving consumer protection matters;" requested rate of $550 per hour.[1] (Mikhov Decl. ¶¶ 22-25.)

- Amy Morse: partner at Knight Law Group, LLP; licensed to practice law since 2013; no discussion of relevant legal experience; requested rate of $350 per hour. (Mikhov Decl. ¶ 26.)

- Kristina Stevenson-Cheang: attorney at Knight Law Group, LLP from 2013 through March 2020; licensed to practice law since 2008; has worked on lemon law cases for several years; requested rate of $350 per hour. (Mikhov Decl. ¶ 27.)

- Deepak Devabose: associate at Knight Law Group, LLP; licensed to practice law since 2014; no discussion of relevant legal experience; requested rate of $275 per hour. (Mikhov Decl. ¶ 28.)

- Daniel Kalinowski: associate at Knight Law Group, LLP; licensed to practice law since 2015; "prior professional experience includes business litigation, real estate litigation, and employment litigation;" requested rate of $275 per hour. (Mikhov Decl. ¶ 29.)

- Constance Morrison: of counsel at Knight Law Group, LLP; licensed to practice law since 1996; "over 20 years of litigation experience;" requested rate of $375 per hour. (Mikhov Decl. ¶ 30.)

- Daniel Macioce: associate at Knight Law Group, LLP; licensed to practice law since 2018; no discussion of relevant legal experience; requested rate of $200 per hour. (Mikhov Decl. ¶ 31.)

- George Semaan: associate at Knight Law Group, LLP; licensed to practice law since 2016; "spent his first year practicing intellectual property, business, and

---

[1] Curiously, Mikhov states his hourly billing rate is $550 in paragraph 25 of his Declaration, but then he states his rate is $500 per hour in paragraph 37. In any event, the billing records attached to the Mikhov Declaration demonstrate his billing rate is $550 per hour.

employment law" and joined Knight Law Group, LLP in 2017; requested rate of $225 per hour.  (Mikhov Decl. ¶ 32.)

- Maite Colon: associate at Knight Law Group, LLP; licensed to practice law in Florida since 2012 and in California in 2018, she is also admitted to practice law in the District of Columbia and the District Court of Puerto Rico; joined Knight Light Group LLP in 2017 and before that "she worked at an international law firm gaining valuable experience in commercial transactional work and international law;" requested rate of $275 per hour.  (Mikhov Decl. ¶ 33.)

- Mitchell Rosensweig: associate at Knight Law Group, LLP; licensed to practice law in Maryland in 2012, in Washington, D.C. in 2014, and in California in 2018; before joining Knight Law Group, LLP, he "practiced primarily in the area of medical malpractice;" requested rate of $325 per hour.  (Mikhov Decl. ¶ 34.)

Lear includes the following statement in his declaration: "In my billing statement submitted along with this motion, I reduced our billing for several of the inter-office conferences, non-substantive email exchanges (most of which are not even including in our bills) and other administrative tasks, which occurred throughout this litigation.  My firm's billing practice is to reduce such items in our bills as a courtesy to our clients.  I offer the Defendants that same courtesy in my firm's billing statement in this case."  (Lear Decl. ¶ 4.)  Similarly, Mikhov explains he reviewed his firm's billing entries and "removed or reduced any time [he] felt was excessive, duplicative, or otherwise unreasonable, or [he] [] labeled the entry "no charge", as identified by "N/C" in the invoice."  (Mikhov Decl. ¶ 36.)  Having reviewed all of the billing entries by both firms, the Court notes Knight Law Group, LLP did not charge for 4.1 hours of time spent by its attorneys prosecuting this action.

In support of the proposed hourly billing rates of Plaintiff's counsel, Mikhov includes a survey of seven California consumer litigators and their hourly rates, as surveyed between 2007 and 2017.  (See Mikhov Decl. ¶ 37.)  He also describes and attaches orders granting motions for attorneys' fees in Knight Law Group, LLP's cases between January 14, 2008 and December 12, 2018 to show the hourly billing rates that have been approved by other courts.  (Id. ¶¶ 38-81, Exh. E-VV.)  Mikhov also attaches the United States Consumer Law Attorney Fee Survey Report published in 2019, which reflects hourly billing rates from 2017 to 2018.  (Id. ¶ 82, Exh. WW.)

In Opposition, Defendant argues Plaintiff's counsel's rates are unreasonable because these are not rates actually charged to Plaintiff as counsel were engaged on a contingency fee basis.  (See Opp'n at 7-8.)  This argument lacks merit.  See Robertson, 144 Cal. App. 4th at 818 ("In attacking the attorney fee award in the instant case, Fleetwood first contends that the award is improper because the Robertsons did not 'incur' any attorney's fees.  The argument is apparently based on the fact that there was a contingent fee arrangement.  We reject Fleetwood's contention.  Under the fee-shifting provisions contained in the remedial statutes, courts have routinely allowed fees to be recovered to compensate for legal services performed for a client even though the client did not have a personal obligation to pay for such services out of his or her own assets.") (citing Lolly v. Campbell, 28 Cal. 4th 367, 373 (2002) and Hayward v. Ventura Volvo, 108 Cal. App. 4th 509, 510-13 (2003))).  Although Plaintiff's counsel was retained on a

contingency fee basis, Plaintiff is entitled to recovery of his attorneys' fees pursuant to the relevant fee-shifting provisions of Song-Beverly.  Id.

The Court has reviewed Plaintiff's counsel's submissions and finds the Consumer Law Attorney Fee Survey Report inadequate to establish Plaintiff's requested rates are reasonably calculated in context of the relevant community, the Central District of California.  The survey does not indicate, among other things, (1) the specific kinds of cases included under the "Consumer Law" umbrella; (2) whether the attorneys' cases are class or individual actions; (3) the experience or skill of the attorneys surveyed, other than the number of years the attorney has practiced; or (4) the courts in which the survey population practices.  Moreover, there is also no indication that the surveyor tried to validate the results from his survey in any way.  This is particularly problematic where the population of attorneys surveyed may be motivated by their own personal professional interests for the rates to increase.  See Sam K. ex rel. Diane C. v. Hawaii Dept. of Educ., 788 F.3d 1033, 1041 (9th Cir. 2015) (recognizing that it is appropriate for a district court to deem attorneys' declarations regarding whether a rate is reasonable as unreliable where the attorneys' "own professional interests might motivate them to favor higher rates.").

The Court is also not persuaded by the "survey" of seven practitioners included in Mikhov's Declaration to establish counsel's hourly billing rates are reasonable.  Some of the rates surveyed are a decade old and this survey may suffer from the same motivation bias as the Consumer Law Attorney Fee Survey Report.  Sam K. ex rel. Diane C. v. Hawaii Dept. of Educ., 788 F.3d at 1041.

Other than the surveys, Plaintiff provides his own counsel's declarations, as well as several orders granting counsel's motions for attorneys' fees for over a decade.  Although the orders themselves are somewhat useful in the Court's analysis here, they do not establish "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Camacho, 523 F.3d at 979, mostly because the orders award attorneys' fees sought in other cases with these same Plaintiff's counsel, not other comparable lawyers in the Central District of California.  Plaintiff does not submit affidavits from local attorneys or from a fee expert to establish the reasonableness of the requested rates.  Hence,  Plaintiff has failed to satisfy his burden of showing that his attorneys' rates are reasonable in the prevailing market.

Accordingly, the Court relies on its own knowledge of customary rates in this legal market.  See Ingram, 647 F.3d at 928.  Based on its own knowledge of customary attorney's fees in the Central District of California's legal market, the Court finds the requested rates of the following attorneys reasonable: $595 per hour for Edward O. Lear; $550 per hour for Steve Mikhov; $350 per hour for Amy Morse; $350 per hour for Kristina Stevenson-Cheang; $275 per hour for Deepak Devabose; $275 per hour for Daniel Kalinowski; $375 per hour for Constance Morrison; $200 per hour for Daniel Macioce; $225 per hour for George Semaan; and $275 per hour for Maite Colon.

The Court reduces the hourly rates requested for the following counsel, to bring them in line with the customary rates in the Central District of California's legal market and so the rates

are consistent among the attorneys with similar levels of legal experience: the hourly rate for Rizza Gonzales is reduced to $350 per hour to bring her rate in line with that of Kristina Stevenson-Cheang, who has a similar level of legal experience; the hourly rate for Saba Zafar is reduced to $200 because no information is provided regarding counsel's bar admission date or legal experience; and the hourly rate for Mitchell Rosensweig is reduced to $275 to bring his rate in line with that of Maite Colon, who has also been a practicing attorney since 2012.

### 2.    Reasonable Hours

In determining the reasonableness of the number of hours expended, the Court must examine detailed time records to determine whether the hours claimed are adequately documented and whether any of them are unnecessary, duplicative, or excessive.  Chalmers, 796 F.2d at 1210 (citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)).  The trial court, due to its familiarity with the case, is in the best position to evaluate the reasonableness of the hours requested.  Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (9th Cir. 2008).

In Opposition, Defendant argues "the fee award should be reduced due to egregious overstaffing" and contends this "simple" lemon law case did not require the services of thirteen attorneys from two different law firms.  (See Opp'n at 8-12.)  Defendant moves the Court to award Plaintiff fees for the work of only five attorneys pursuant to Morris v. Hyundai Motor Am., 41 Cal. App. 5th 24 (2019) or exercise its discretion and reduce the requested fees by 33% pursuant to Warren v. Kia Motors Am., Inc., 30 Cal. App. 5th 24 (2018).  (Opp'n at 8-10.)  In the alternative, Defendant objects to specific billing entries on various grounds.  (Opp'n at 11-13.)

Although the Court shares Defendant's surprise that thirteen attorneys worked on this matter for Plaintiff, the Court declines to impose the more draconian fee reductions set forth in Morris and Warren.  In this case, although thirteen is a large number of attorneys and likely caused some inefficiencies in Plaintiff's representation, having reviewed the detailed billing records submitted by Plaintiff's counsel, the Court concludes counsel did not engage in much duplication of efforts and most worked on discrete tasks associated with an aspect of Plaintiff's representation.  Where the Court has found unnecessary duplication or excessive billing, for example, the Court has reduced the fees requested, as discussed below.

The Court has reviewed each and every billing entry in Plaintiff's fee request and has reduced or eliminated the hours of Plaintiff's counsel where the hours were excessive, duplicative or unnecessary, or charged for clerical or secretarial tasks.  For example, the Court deducted time from: (1) Saba Zafar's fees for attending the Rule 16-2 conference, as Edward Lear also attended; (2) Saba Zafar and Edward Lear's fees for excessive and duplicative time preparing pretrial documents and for block billing for their work on the pretrial documents, see Welch, 480 F.3d at 948 (explaining block billing presents difficulty in determining reasonableness of the time expended on litigation tasks); (3) Maite Colon's fees for excessive time spent drafting, editing, and finalizing the Rule 26(f) report; (4) Steve Mikhov's fees for reviewing and auditing billing, as this is a routine clerical task; and (5) Deepak Devabose's anticipated fees for preparing for and attending the hearing on this Motion, as the Court vacated the hearing.

In total, the Court reduces Saba Zafar's hours by 6.7 hours, Edward O. Lear's hours by 5 hours, Maite Colon's hours by 1 hour, Steve Mikhov's hours by 0.4 hours, and Deepak Devabose's hours by 4.5 hours.

The "presumptively reasonable" lodestar amounts for Plaintiff's counsel are as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|----------|-------------|-------|----------|
| Edward O. Lear | $595 | 11.75 | $6,991.25 |
| Rizza Gonzales | $350 | 16.4 | $5,740.00 |
| Saba Zafar | $200 | 3.4 | $680.00 |
| Steve Mikhov | $550 | 3.9 | $2,145.00 |
| Amy Morse | $350 | 8.9 | $3,115.00 |
| Kristina Stevenson-Cheang | $350 | 16.4 | $5,740.00 |
| Deepak Devabose | $275 | 19.5 | $5,362.50 |
| Daniel Kalinowski | $275 | 1.1 | $302.50 |
| Constance Morrison | $375 | 9.9 | $3,712.50 |
| Daniel Macioce | $200 | 6 | $1,200.00 |
| George Semaan | $225 | 3.3 | $742.50 |
| Maite Colon | $275 | 4.6 | $1,265.00 |
| Mitchell Rosensweig | $275 | 7.3 | $2,007.50 |
| **Total** | | **112.45** | **$39,003.75** |

### 3. Fee Multiplier of the Lodestar Amount

Plaintiff argues that his attorneys are entitled to a 0.5 fee multiplier on the lodestar amount due to the contingent nature of their work, the delay in payment, and the public service of representing consumers.  (See Mot. at 14-16.)  In Opposition, Defendant argues a multiplier is not justified in light of the routine nature of this lemon law case and the narrow issues presented. (Opp'n at 16-19.)

The Court sees no reason to depart from the lodestar amount.  "A trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation.  Otherwise, the fee award will result in unfair double counting and be unreasonable . . . ."  Ketchum v. Moses, 24 Cal. 4th 1122, 1139 (2001).  Plaintiff's counsel's performance here was not exceptional.  The attorney time reasonably dedicated to this case was moderate, i.e., under 113 hours spent by thirteen attorneys over two years, and the legal issues presented were neither complex nor novel. Counsel spent time mostly in discovery and did not engage in motion practice before the Court,

Case 2:23-cv-03454-SVW-AC    Document 23-2    Filed 09/22/23    Page 91 of 233   Page
Case 2:18-cv-08297-VAP-LAC   Document 75   Filed 09/08/20   Page 11 of 11   Page ID #:1573
ID #:247

except with respect to the motions in limine, discussed <u>supra</u>.  Further, the skill and ability of Plaintiff's counsel exhibited in the pretrial documents was far from exceptional: they failed to follow multiple Local Rules, as well as the Court's Orders, and they cited exclusively to the California Evidence Code, when the Federal Rules of Evidence control.  The Court therefore concludes that a fee multiplier is not appropriate here, as the facts and circumstances of this case do not justify enhancement.

In sum, the Court awards attorneys' fees to Plaintiff in the total amount of $39,003.75.

### B.    Costs

Plaintiff's application to tax costs is pending before the Clerk of Court.  The matter of Plaintiff's costs will only come before the Court if Plaintiff moves to retax costs.  The request to award his costs is denied as premature.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Attorney's Fees, Costs and Expenses, and awards Plaintiff a total sum of $39,003.85 for his reasonable attorneys' fees.  Plaintiff's request for an award of his costs is DENIED as premature, as the Clerk has not yet taxed his costs.

**IT IS SO ORDERED.**

# EXHIBIT L

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 15 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By: Julian Araujo, Deputy

Electronically Received 09/08/2020 05:02 PM

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| **JOSE LUIS CHAVEZ RAMIREZ aka JOSE LUIS CHAVEZ and ISMAEL ALVAREZ,** | Case No.: 19STCV08317 |
| | *Unlimited Jurisdiction* |
| Plaintiffs, | [PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES |
| vs. | |
| | *Assigned for all purposes to the Honorable Barbara Meiers* |
| **GENERAL MOTORS LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,** | Date:       August 21, 2020 |
| | Time:       9:30 a.m. |
| Defendants. | Department:  12 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiffs' Motion for Attorney's Fees, Costs and Expenses came on regularly for hearing on August 21, 2020, at 9:30 a.m., in Department 12, of the above-entitled court located at 111 North Hill Street, Los Angeles, California 90067, the Honorable Barbara Meiers, presiding.  Plaintiffs

1

[PROPOSED] ORDER

1    moved the Court for an award of $18,822.50 in lodestar attorney fees plus a .5 lodestar multiplier,

2    and $2,143.50 in costs and expenses.

3         Jacob Cutler of Knight Law Group, LLP appeared telephonically on behalf of Plaintiffs Jose

4    Luis Chavez Ramirez aka Jose Luis Chavez and Ismael Alvarez.  Cameron Major of The Erkine

5    Law Group, PC appeared telephonically on behalf of Defendant GENERAL MOTORS LLC.

6    Having read the motions, the memoranda and the declarations filed by the parties, and having heard

7    oral argument of counsel, the Court makes its ruling as follows:

8        1.  Plaintiffs' Motion for Attorney's Fees, Costs and Expenses is GRANTED, ~~in part;~~

9        2.  ~~Plaintiffs are awarded lodestar attorney's fees in the amount of~~ $18,822.50;

10       3.  ~~The Court awards a 0.5 lodestar multiplier in the amount of $9,411.25;~~ *30,377.25*

11       4.  Plaintiffs are awarded a total amount of attorney's fees in the amount of $~~28,233.75;~~

12       5.  Plaintiffs are awarded costs and expenses in the amount of $1,725.60;

13       ~~6.  Plaintiffs are awarded a total amount of attorney's fees, costs and expenses in the amount~~

14       ~~of $29,959.35.~~

15       **IT IS HEREBY ORDERED.**

16                                   **IT IS SO ORDERED**

17

18   Dated: 9/15/20

19   Prepared by:                                                      Judge of the Superior Court
     **KNIGHT LAW GROUP, LLP**
20   Steve Mikhov (SBN 224676)                              **Hon. Barbara A. Meiers**
     stevem@knightlaw.com
21   Deepak Devabose (SBN 298890)
     deepakd@knightlaw.com
22   10250 Constellation Blvd., Suite 2500
     Los Angeles, CA 90067
23   Telephone: (310) 552-2250
     Fax: (310) 552-7973
24   Attorneys for Plaintiffs,
     JOSE LUIS CHAVEZ RAMIREZ aka
25   JOSE LUIS CHAVEZ and
     ISMAEL ALVAREZ
26

27

28

[PROPOSED] ORDER

# EXHIBIT M

Electronically Received 09/01/2020 02:36 PM

Electronically Received 09/01/2020 02:36 PM

**FILED**
Superior Court of California
County of Los Angeles

**09/15/2020**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ C. Guerrero _____ Deputy

1

2

3

4

5

6

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9                    **COUNTY OF LOS ANGELES**

10

11

12  **MISTY A. MIRANDA and**                    Case No.: BC625980
    **JACOB STONE,**
13                                              [~~PROPOSED~~] **JUDGMENT ON**
                  Plaintiffs,                   **PLAINTIFFS' MOTION FOR**
14                                              **ATTORNEYS' FEES**

15          vs.

16  **FCA US LLC, a Delaware Limited Liability**  Date: August 13, 2020
    **Company, JRDTSP LLC, a California**         Time: 10:30 a.m.
17  **Limited Liability Company dba SCOTT**       Dept.: 74
    **ROBINSON CHRYSLER DODGE, and**
18  **DOES 1 through 10, inclusive,**

19               Defendants.

20

21

22

23

24

25  **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

26          Plaintiffs' Motion for Attorneys' Fees came on regularly for hearing on August 13, 2020,

27  at 10:30 a.m., in Department 74, of the above-entitled court located at 111 North Hill Street, Los

28  Angeles, California 90067, the Honorable Michelle Williams Court, presiding.  Plaintiff moved

-1-
[PROPOSED] JUDGMENT

the Court for an award of $73,512.50 in lodestar attorney fees plus a .5 lodestar multiplier.

Erin K. Barns of Wirtz Law APC appeared via LA Court Video on behalf of Plaintiffs Misty A. Miranda and Jacob Stone. Samantha Hughes of Lewis Brisbois Bisgaard & Smith LLP appeared via LA Court Video on behalf of Defendants FCA US LLC and JRDTSP LLC. Having read the motions, the memoranda and the declarations filed by the parties, and having heard oral argument of counsel, the Court modified its tentative ruling.

NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, as follows:

1. Plaintiffs' Motion for Attorney's Fees is GRANTED, in part;

2. The Court finds that the following hourly rates requested by counsel are reasonable:

Knight Law Group, LLP

- Steve Mikhov $550.00/hr
- Russell Higgins $450.00/hr
- Kristina Stephenson-Cheang $375.00/hr
- Amy Morse $350.00/hr
- Brian Murray $350.00/hr
- Raymond Areshenko $350.00/hr
- George Aguilar $275.00/hr
- Daniel Kalinowski $250.00/hr
- Jennifer Reiz $225.00/hr
- Thomas Burns $225.00/hr

Wirtz Law APC

- Richard M. Wirtz $650.00/hr
- Amy R. Rotman $450.00/hr
- Erin K. Barns $450.00/hr
- Jessica R. Underwood $400.00/hr
- Lauren B. Veggian $350.00/hr
- Andrea Munoz $200.00/hr
- Rebecca Evans $200.00/hr

3. Plaintiffs are awarded lodestar attorney's fees in the amount of $71,937.50;

4. The Court declines to award a lodestar multiplier;

5. Payment of Plaintiffs' attorneys' fees is due within 60 days of this hearing.

JUDGMENT is hereby entered in favor of Plaintiffs Misty A. Miranda and Jacob Stone and against Defendants FCA US LLC and JRDTSP LLC in the amount of $71,937.50.

**IT IS HEREBY ORDERED.**

**IT IS SO ORDERED**

Dated: ____09/15/2020____

_____
Judge of the Superior Court

Prepared by:

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
*stevem@knightlaw.com*
Deepak Devabose (SBN 298890)
*deepakd@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Attorneys for Plaintiffs,
MISTY A. MIRANDA and
JACOB STONE

[PROPOSED] JUDGMENT

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the action.  My business address is 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] JUDGMENT ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Said document was served on the interested party in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Eric Y. Kizirian, Esq.
Samantha J. Hughes, Esq.
Steven E. Meyer, Esq.
LEWIS BRISBOIS BISGAARD
& SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Email: Eric.Kizirian@lewisbrisbois.com
        Samantha.Hughes@lewisbrisbois.com
        Steven.Meyer@lewisbrisbois.com
**Counsel for Defendants,**
**FCA US LLC and**
**JRDTSP LLC**

Richard Wirtz, Esq.
WIRTZ LAW APC
4370 La Jolla Village Drive, Suite 800
San Diego, CA 92122
Email: Rwirtz@wirtzlaw.com
**Associated Counsel for Plaintiffs,**
**MISTY A. MIRANDA and**
**JACOB STONE**

<u>XX</u>    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 26, 2020 at Los Angeles, California.

_____
*Kenny Rivas*
KENNY RIVAS

-1-

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the action.  My business address is 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] JUDGMENT ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Said document was served on the interested party in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

| | |
|---|---|
| Eric Y. Kizirian, Esq. | Richard Wirtz, Esq. |
| Samantha J. Hughes, Esq. | WIRTZ LAW APC |
| Steven E. Meyer, Esq. | 4370 La Jolla Village Drive, Suite 800 |
| LEWIS BRISBOIS BISGAARD | San Diego, CA 92122 |
| & SMITH LLP | Email: Rwirtz@wirtzlaw.com |
| 633 West 5th Street, Suite 4000 | **Associated Counsel for Plaintiffs,** |
| Los Angeles, CA 90071 | **MISTY A. MIRANDA and** |
| Email: Eric.Kizirian@lewisbrisbois.com | **JACOB STONE** |
| Samantha.Hughes@lewisbrisbois.com | |
| Steven.Meyer@lewisbrisbois.com | |
| **Counsel for Defendants,** | |
| **FCA US LLC and** | |
| **JRDTSP LLC** | |

__XX__    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 1, 2020 at Los Angeles, California.

_____
*Kenny Rivas*
KENNY RIVAS

-1-

# EXHIBIT N

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Stanley Mosk Courthouse, Department 74

BC666145                                                    July 24, 2020
**JULIO HERNANDEZ VS BMW OF NORTH AMERICA LLC**          3:06 PM
**ET AL**

Judge: Honorable Michelle Williams Court        CSR: None
Judicial Assistant: C. Guerrero                 ERM: None
Courtroom Assistant: R. Cruz                    Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 07/13/2020, now rules as follows:

The (Knight Law Group) Motion for Attorney Fees filed by Julio Hernandez on 12/13/2019 is
Granted. Plaintiff is awarded fees in the amount of $211,080.00. Plaintiff to give notice.

The Court, having taken the matter under submission on 07/13/2020, now rules as follows:

Plaintiff's Motion for Attorney's Fees (Law Offices of Michael H. Rosenstein) is GRANTED.
Plaintiff is awarded fees in the amount of $43,297.50. Plaintiff to give notice.

The Court, having taken the matter under submission on 07/13/2020, now rules as follows:

The Motion to Tax Costs filed by BMW of North America, LLC, Nick Alexander Imports on
12/10/2019 is Granted. Costs are taxed in the amount of $40,265.61 Plaintiff is awarded costs in
the amount of $32,110.61. Plaintiff to give notice.

Motion for Attorney's Fees (Knight Law Group)

Plaintiff seeks a total of $388,996.22 in attorney's fees, costs and expenses consisting of (1)
attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount
of $211,080.00, (2) a "lodestar" multiplier of 1.5 in the amount of $105,540.00, and (3) an award
of actual costs and expenses incurred in the amount of $72,376.22. (Civ. Code § 1794(d);
Declaration of Steve Mikhov ¶ 2, Exs. A-B; Declaration of Richard Wirtz ¶ 9, Ex. A.
The court has reviewed all of the pleadings and evidence submitted in support of and in
opposition to this motion and finds plaintiff's counsel's hourly rates are reasonable. The court
further finds the number of hours claimed in this motion are reasonable. A multiplier is not

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 74

| | |
|---|---|
| BC666145 | July 24, 2020 |
| JULIO HERNANDEZ VS BMW OF NORTH AMERICA LLC | 3:06 PM |
| ET AL | |

| | |
|---|---|
| Judge: Honorable Michelle Williams Court | CSR: None |
| Judicial Assistant: C. Guerrero | ERM: None |
| Courtroom Assistant: R. Cruz | Deputy Sheriff: None |

warranted here because the issues raised were not novel or difficult, this litigation did not preclude other employment by counsel, and counsel displayed an average amount of skill in presenting the case.

Therefore, the court awards attorney's fees in the amount of $211,080.00. Costs will be discussed separately in conjunction with defendant's motion to tax costs.

Motion for Attorney's Fees (Law Offices of Michael H. Rosenstein)

Plaintiff seeks a total of $64,946.25 in attorney's fees consisting of (1) attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $43,297.50 and (2) a "lodestar" multiplier of 1.5 in the amount of $21,648.75.

The court has reviewed all of the pleadings and evidence submitted in support of and in opposition to this motion and finds plaintiff's counsel's hourly rates are reasonable. The court further finds the number of hours claimed in this motion are reasonable. A multiplier is not warranted here because the issues raised were not novel or difficult, this litigation did not preclude other employment by counsel, and counsel displayed an average amount of skill in presenting the case.

Therefore, the court awards attorney's fees in the amount of $43,297.50.

Motion to Tax Costs

Plaintiff requests $72,376.22 in costs for filing and motion fees, jury fees, deposition costs, service of process, witness fees, and models, blowups, and photocopies of exhibits.

Defendant's motion to strike all costs for lack of substantiation is DENIED.

Deposition costs. Defendant has not met its burden to show the deposition fees are unnecessary or unreasonable. The motion to tax these costs is DENIED.
Service of process. Defendant has not met its burden to show service of process costs are unnecessary or unreasonable. The motion to tax these costs is DENIED.

Expert fees. These fees were not incurred to compensate a court ordered expert. The motion to tax $28,869.84 in costs is GRANTED.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 74

**BC666145**                                                            July 24, 2020
**JULIO HERNANDEZ VS BMW OF NORTH AMERICA LLC**            3:06 PM
**ET AL**

Judge: Honorable Michelle Williams Court          CSR: None
Judicial Assistant: C. Guerrero                   ERM: None
Courtroom Assistant: R. Cruz                      Deputy Sheriff: None

Models, blowups and photocopies. Defendant has not met its burden to show the models,
blowups and photocopies were not helpful to the trier of fact. The motion to tax these costs is
DENIED.

Court reporter fees. Court reporter fees are a recoverable cost. Gov. Code, § 68086(c). The
motion to tax these costs is DENIED.

Other costs. Costs for postage and photocopying of items other than exhibits is not recoverable.
C.C.P. §1033.5. The court finds travel is not necessary to the conduct of litigation and legal
research should be billed in the attorneys' fees portion. The motion to tax $11,395.77 for travel
costs, postage, legal research, copies and overnight delivery is GRANTED.

Plaintiff is directed to give notice.

Certificate of Mailing is attached.

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>07/24/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ C. Guerrero _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Julio Hernandez | |
| DEFENDANT/RESPONDENT:<br>BMW of North America, LLC et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>BC666145 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Ruling on Submitted Matter) of 07/24/2020 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Steve Borislav Mikhov
Knight Law Group, LLP
10250 Constellation Blvd
Ste 2500
Los Angeles, CA  90067-

Michael Harris Rosenstein
Law Offices of Michael H. Rosenstein, LC
1800 Century Park East
Ste 600
Los Angeles, CA  90067-

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>07/24/2020</u>

By:  <u>C. Guerrero</u>
Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT O

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 50

**BC623621**
June 23, 2020
**DONALD L HARBERT ET AL VS FCA US LLC ET AL**
3:30 PM

Judge: Honorable Teresa A. Beaudet        CSR: Pam Myers
Judicial Assistant: S. Fletcher           ERM: None
Courtroom Assistant: G. Mack              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Amy Rebecca Smith (Telephonic) by Erin Barns

For Defendant(s): Brian Takeya Yasuzawa (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Attorney Fees; Order to Show Cause Re: Dismissal after Settlement

Order appointing Court Approved Reporter as Official Report Pro Tempore appointing Pam Myers, CRS# 12940, is signed and filed.

Matter is called for hearing.

Motion for Attorney Fees is argued and the Court rules as follows:

Plaintiffs' motion is granted. Plaintiffs are entitled to recover $87,577.50 in attorney fees and $38,950.38 in costs from Defendants. The attorney fees and costs are to be paid within thirty days of the date of this order. If payment is not received by that date, Plaintiffs are to file and serve a proposed judgment within ten days thereafter.

Plaintiffs are ordered to give notice of this order.

Order is signed and filed and incorporated herein by reference.

Order to Show Cause Re: Dismissal after Settlement is continued to 08/21/2020 at 08:30 AM in Department 50 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.

# EXHIBIT P

Electronically Received 07/23/2020 12:06 PM

**FILED**
Superior Court of California
County of Los Angeles

**07/24/2020**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ C. Wilson _____ Deputy

1

2

3

4

5

6

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9                    **COUNTY OF LOS ANGELES**

10

11    **ELUTERIO MURILLO**,                          Case No: 18STCV06504

12                                                   ~~[PROPOSED]~~ ORDER ON
                         Plaintiff,                  **PLAINTIFF'S MOTION FOR**
13                                                   **ATTORNEY'S FEES, COSTS AND**
                     vs.                             **EXPENSES**
14

15    **FCA US LLC, a Delaware Limited Liabili**     *Honorable Barbara M. Scheper*
16    **Company; JRDTSP LLC, a California Limite**
      **Liability Company, dba SCOTT ROBINSO**
17    **CHRYSLER JEEP DODGE RAM; and DOE**           Date:      June 29, 2020
      **1 through 10, inclusive,**                   Time:      8:30 a.m.
18                                                   Dept.:     30

19

20                       Defendants.

21

22

23    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

24            Plaintiff's Motion for Attorney's Fees, Costs and Expenses came on regularly for hearing

25    on June 29, 2020, at 8:30 a.m., in Department 30, of the above-entitled court, located at 111 North

26    Hill Street, Los Angeles, California 90012, the Honorable Barbara M. Scheper, presiding.  Plaintiff

27    moved the Court for an award of $34,877.50 in lodestar attorney fees plus a .5 lodestar multiplier,

28    and $6,850.73 in costs and expenses.

1    Deepak Devabose of Knight Law Group, LLP appeared via CourtCall on behalf of Plaintiff

2    Eluterio Murillo and Douglas Proudfoot of Gates, Gonter, Guy, Proudfoot & Muench LLP

3    appeared via CourtCall on behalf of Defendants FCA US LLC and JRDTSP LLC.  Having read

4    the motion, the memoranda and the declarations filed by the parties, and having heard oral

5    argument of counsel, the Court adopted its tentative ruling, as follows:

6         1.  Plaintiff's Motion for Attorney's Fees, Costs and Expenses is GRANTED, in part:

7         2.  Plaintiff is awarded lodestar attorney's fees in the amount of $27,470.00;

8         3.  The Court finds that Plaintiff is entitled to a multiplier of 0.5 in the amount of

9             $13,735.00;

10        4.  Plaintiff is awarded full costs and expenses in the amount of $6,850.73;

11        5.  Plaintiff is awarded a total amount of attorney's fees, costs and expenses in the amount

12            of $48,055.73.

13        **IT IS HEREBY ORDERED.**

14    Ủ|æậj̈ã-€Ắ{˘}•^|Á{Á ầ̧^Á|̧[ầX^È                **IT IS SO ORDERED**

15

16
     Dated: ___Ï ĐĐĐ€Đ€€_____

17                                                     _____
                                                       Judge of the Superior Court
18    Prepared by:                                      Barbara M. Scheper / Judge
     **KNIGHT LAW GROUP, LLP**
19    Steve Mikhov (SBN 224676)
     Deepak Devabose (SBN 298890)
20    10250 Constellation Blvd., Suite 2500
     Los Angeles, CA 90067
21    Telephone: (310) 552-2250
     Fax: (310) 552-7973
22    Email: stevem@knightlaw.com
            deepakd@knightlaw.com
23
24    Attorneys for Plaintiff,
     **ELUTERIO MURILLO**
25

26

27

28

[PROPOSED] ORDER

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the action.  My business address is 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Matthew M. Proudfoot, Esq.
GATES, GONTER, GUY, PROUDFOOT & MUENCH, LLP
38 Discovery, Suite 200
Irvine, CA 92618
**Counsel for Defendants,**
**FCA US LLC and**
**JRDTSP LLC**

<u>XX</u>    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 17, 2020 at Los Angeles, California.


_____*Kenny Rivas*_____
KENNY RIVAS

-1-

1

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

2

3
       I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the action.  My business address is 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067.

4

5
       I served the foregoing document described as:

6
**[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

7

8
       Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

9

10
Matthew M. Proudfoot, Esq.
GATES, GONTER, GUY, PROUDFOOT & MUENCH, LLP

11
38 Discovery, Suite 200
Irvine, CA 92618

12
**Counsel for Defendants,
FCA US LLC and**

13
**JRDTSP LLC**

14

15
<u>XX</u>   BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

16

17

18
       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

19

20
       Executed on July 23, 2020 at Los Angeles, California.

21

22

23
                _Kenny Rivas_
                KENNY RIVAS

24

25

26

27

28

PROOF OF SERVICE

# EXHIBIT Q

FILED
Superior Court of California
County of Los Angeles

FEB 0 5 2020

Sherri R. Carter, Executive Officer/Clerk

By _____ Deputy
K. Mason

1    **SUPERIOR COURT OF CALIFORNIA**

2    **COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

3    DEPARTMENT 53

4

5

6

7    ROMAN SALCEDO, et al.;                    | Case No.:        BC655659

8        Plaintiffs,                            | Hearing Date:    February 5, 2020

9    vs.                                        | Time:            8:30 a.m.

10

11   FCA US LLC, et al.,                        | ~~[TENTATIVE]~~ ORDER RE:

12       Defendants.                            | MOTION FOR ATTORNEY'S FEES,
    COSTS AND EXPENSES

13

14

15   MOVING PARTIES:       Plaintiffs Roman Salcedo and Tania Ortega

16   RESPONDING PARTIES:   Defendants FCA US LLC and San Fernando Motor Company

17   **Motion for Attorney's Fees, Costs and Expenses**

18

19       The court considered the moving, opposition, and reply papers.  The court disregards

20   Plaintiffs' surreply, filed January 29, 2020, because it is not authorized by Code of Civil

21   Procedure section 1005, subdivision (b).

22

23   **BACKGROUND**

24       On March 28, 2017, plaintiffs Roman Salcedo and Tania Ortega ("Plaintiffs") filed this

25   "Lemon Law" action against defendants FCA US LLC and San Fernando Motor Company dba

26   Rydell Chrysler Dodge Jeep Ram (collectively, "Defendants").

27       On April 8, 2019, Defendants served an offer to compromise pursuant to Code of Civil

28   Procedure section 998, which provides that Defendants shall pay to Plaintiffs $100,000 in

1

1  restitution and other damages, and for Plaintiffs to surrender the subject vehicle to Defendants.

2  (Mikhov Decl., ¶ 16, Exh. D.)  Plaintiffs accepted the offer to compromise by signing it on April

3  11, 2019.  (Mikhov Decl., ¶ 16, Exh. D.)  The offer to compromise also provides that Defendants

4  will pay reasonable costs, expenses and attorney's fees pursuant to Civil Code section 1794,

5  subdivision (d), and, if the parties are unable to agree on the amount of Plaintiffs' reasonable

6  costs, expenses and attorney's fees, Plaintiffs' fees would instead be determined by the court

7  upon motion, and fees by motion will not incorporate fees incurred after the execution of the

8  section 998 offer.  (Mikhov Decl., ¶ 16, Exh. D, pp. 1:27-2:3.)

9       Plaintiffs now move for an award of attorney's fees, costs, and expenses in the total

10  amount of $202,704.29 pursuant to Civil Code section 1794, subdivision (d).  Defendants oppose

11  the motion.

12  **EVIDENCE**

13       The court rules on Plaintiffs' evidentiary objections to the Declaration of Paloma

14  Moreno-Acosta as follows:

15       Objection Nos. 1-5:  Overruled.

16  **LEGAL STANDARD**

17       Civil Code section 1794, subdivision (d), provides:  "If the buyer prevails in an action

18  under this section, the buyer shall be allowed by the court to recover as part of the judgment a

19  sum equal to the aggregate amount of costs and expenses, including attorney's fees based on

20  actual time expended, determined by the court to have been reasonably incurred by the buyer in

21  connection with the commencement and prosecution of such action."

22       "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the

23  number of hours reasonably expended multiplied by the reasonable hourly rate. . . . . The

24  reasonable hourly rate is that prevailing in the community for similar work. The lodestar figure

25  may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee

26  at the fair market value for the legal services provided." (*PLCM Group v. Drexler* (2000) 22

27  Cal.4th 1084, 1095 (internal citations omitted).)  "[T]he verified time statements of the attorneys,

28  as officers of the court, are entitled to credence in the absence of a clear indication the records

1  are erroneous." (*Horsford v. Board of Trustees of California State Univ.* (2005) 132 Cal.App.4th

2  359, 396.)

3  **DISCUSSION**

4      In this action, Plaintiffs have been represented by two law firms, Knight Law Group LLP

5  ("Knight Law") and Hackler Daghighian Martino & Novak P.C. ("HDMN"). HDMN was

6  associated in as lead trial counsel on or about February 20, 2018. (Daghighian Decl., ¶ 12.) The

7  attorney billing rates for the seven attorneys who performed work on this case at Knight Law

8  ranged from $200 to $550 per hour. (Mikhov Decl., ¶¶ 23-29.) The attorney billing rates for the

9  five attorneys who performed work on this case at HDMN ranged from $225 to $550 per hour,

10  and HDMN's paralegal's hourly rate was $75 per hour. (Daghighian Decl., ¶¶ 3-8.) Knight Law

11  billed a total 46.7 hours for a total of $16,737.50. (Mikhov Decl., ¶ 2; Exh. A.) HDMN billed a

12  total of $99,438.75 and has submitted copies of its billing records to support those attorney's

13  fees. (Mikhov Decl., ¶ 2; Daghighian Decl., ¶ 9, Exh. A.) Two of Plaintiffs' attorneys, Steve

14  Mikhov of Knight Law and Sepehr Daghighian of HDMN, have submitted declarations attesting

15  to the billing rates, qualifications, skill, and experience of each of the attorneys in their respective

16  law firms who performed work on the case. (Mikhov Decl., ¶¶ 23-29; Daghighian Decl., ¶¶ 3-8.)

17      Defendants concede that Plaintiffs are entitled to recover their reasonably incurred

18  attorney's fees, but contend that some of the attorney's fees requested must be stricken because

19  the fees incurred were unreasonable.

20      First, Defendants contend that the hourly rates for Plaintiffs' attorneys are excessive and

21  should be reduced to no more than $175 to $400 per hour. Defendants argue that Plaintiffs have

22  provided no admissible evidence as to the prevailing rate for attorneys conducting non-

23  contingent litigation of the same type. However, Mikhov and Daghighian attest to the rates of

24  attorneys in the community who specialize in consumer litigation. (Mikhov Decl., ¶ 32;

25  Daghighian Decl., ¶ 10.) The court finds that the hourly rates requested for each of Plaintiffs'

26  attorneys are reasonable based on each attorney's respective qualifications, skill, and experience,

27  and the prevailing rates in the community for similar work.

28

1       Second, Defendants contend that Plaintiffs are not entitled to recover fees incurred

2   subsequent to execution of the April 8, 2019 offer to compromise because it provides that "the

3   parties agree that if the parties cannot come to an agreement by stipulation, fees by motion will

4   not incorporate fees not yet incurred after the execution of this CCP 998 offer." (Mikhov Decl.,

5   ¶ 16, Exh. D, pp. 1:27-2:3.).  The fees incurred by HDM subsequent to the settlement agreement

6   amount to 17.55 hours of work totaling $6,086.25. (Acosta Decl., Exh. A, Category 1.)  To the

7   extent that the fees incurred by Plaintiffs subsequent to the execution of the offer to compromise

8   were incurred in connection with this motion for attorney's fees pursuant to Civil Code section

9   1794, subdivision (d), the court finds the fees incurred subsequent to the settlement agreement

10  were reasonably incurred by Plaintiffs. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 ["[A]n

11  attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*,

12  including those relating solely to the fee."] (emphasis in original).)  However, the court finds that

13  the time and billing entries for (1) "Prepare Notice of Settlement of Entire Case" on May 2,

14  2019, for 0.1 hours and $35 in fees, and (2) "Communication with Clients" on August 29, 2019,

15  for 0.2 hours and $70 in fees (Acosta Decl., Exh. A, Category 1, pp. 1:28-2:2) were not incurred

16  by Plaintiffs in connection with this motion for attorney's fees.  Therefore, the court reduces

17  Plaintiffs' billing by $105.

18      Third, Defendants contend that Plaintiffs' billing must be reduced to the extent it contains

19  clerical work. Defendants argue that Plaintiffs' billing invoices reveal time entries that include

20  substantial clerical work, such as drafting cover letters, calendaring, signing documents, and

21  scheduling, amounting to 20.85 hours for $5,095.00 total. (Acosta Decl., Exh. A, Category 2.)

22  After reviewing the billing, the court finds that the attorney's fees were reasonably incurred by

23  Plaintiffs.

24      Fourth, Defendants object to Plaintiffs' requested attorney's fees on the grounds that the

25  case was overstaffed and Plaintiffs' counsel double-billed.  "[S]imultaneous representation by

26  multiple law firms posed substantial risks to task padding, over-conferencing, attorney stacking

27  (multiple attendance by attorneys at the same court functions), and excessive research."

28  (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 272.)  Defendants argue that staffing 10

4

1    attorneys from two firms led to inefficiency and duplication of work.  Defendants argue that,

2    once HDMN was associated in as lead counsel in February 2018, HDMN exclusively handled

3    the case moving forward but Knight Law and HDMN consistently billed twice for simple entries

4    such as analyzing the same document requests and documents produced, reviewing the same

5    hearing results, and reviewing documents that had already been reviewed or drafted.  (Acosta

6    Decl., Exh. A, Category 3.)  After reviewing Defendants' Exhibit A, Category 3, which lists each

7    alleged example of overstaffing or double-billing by Plaintiffs' counsel, the court finds that the

8    attorney's fees were reasonably incurred by Plaintiffs, and not unreasonable for excessive inter-

9    office communications or double-billing.

10           Fourth, Defendants contend that time entries with no dates must be audited and reduced

11   accordingly.  Specifically, Defendants point to 2.1 hours billed for "initial communication with

12   clients and evaluation of clients' claims," "analyze vehicle documentation," and "communication

13   with clients" by Knight Law.  (Acosta Decl., Exh. A, Category 4.)  Although these billing entries

14   are not dated, the court finds that the attorney's fees were reasonably incurred by Plaintiffs.

15           Based on its review of the evidence presented (including the work and time entries on the

16   attorney's billing records), the court finds that the billing entries in Plaintiffs' attorneys' bills do

17   not evidence inefficient or unreasonable billing, duplication of effort, padding of time entries,

18   over-conferencing, or multiple attendance by attorneys at the same court functions, as a result of

19   the staffing and division of labor among Plaintiffs' attorneys' on this case.  The court also finds

20   that the hourly rates charged by each of Plaintiffs' attorneys are reasonable based on their

21   respective qualifications, skill, and experience, and the prevailing rates in the community for

22   similar work.  Therefore, the court finds that the lodestar attorney's fees requested by Plaintiffs

23   were reasonably incurred by Plaintiffs in connection with the commencement and prosecution of

24   this action.  (Civ. Code, § 1794, subd. (d).)

25           Plaintiffs also seek an adjustment to their attorneys' fee request by a lodestar multiplier of

26   0.5.  "[T]he lodestar is the basic fee for comparable legal services in the community; it may be

27   adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty

28   of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the

1  nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of

2  the fee award. [Citation omitted.]  The purpose of such adjustment is to fix a fee at the fair

3  market value for the particular action.  In effect, the court determines, retrospectively, whether

4  the litigation involved a contingent risk or required extraordinary legal skill justifying

5  augmentation of the unadorned lodestar in order to approximate the fair market rate for such

6  services.  The '"experienced trial judge is the best judge of the value of professional services

7  rendered in his court, and while his judgment is of course subject to review, it will not be

8  disturbed unless the appellate court is convinced that it is clearly wrong."'"  (*Ketchum v. Moses*

9  (2001) 24 Cal.4th 1122, 1132.)

10       The court finds that, although Plaintiffs' case was taken on a contingency basis, none of

11  the other factors supports the application of a multiplier.  There is no indication that this case was

12  complex or presented challenging legal issues.  There is no evidence that Plaintiffs' attorneys

13  were precluded from taking other cases because of the nature of this case, nor is the success

14  achieved by Plaintiffs' attorneys exceptional.  Finally, the court finds that Defendants did not do

15  anything to unreasonably delay resolution of this case.

16       The court also notes that the hourly rates requested by Plaintiffs are reasonable because

17  of counsels' demonstrated skill and experience.  Because the quality of representation and the

18  degree of skill exercised by counsel is already factored into the lodestar, it would be

19  unreasonable to award an enhancement.  (*See Holguin v. Dish Network LLC* (2014) 229

20  Cal.App.4th 1310, 1333 ["Where, as here, the court determines that the lodestar itself constitutes

21  a reasonable fee for the action at issue, no enhancement is warranted."].)

22       The court therefore declines to apply a multiplier to the lodestar amount.

23       Because Defendants state that they are not contesting the amount of costs and expenses

24  sought by Plaintiffs (Opp'n Memorandum, p. 2:11-13), the court finds that the $28,439.91 in

25  costs and expenses requested by Plaintiffs were reasonably incurred by Plaintiffs in connection

26  with the commencement and prosecution of this action.  (Civ. Code, § 1794, subd. (d).)

27

28

6

1  **ORDER**

2      For the reasons set forth above, Plaintiffs' motion for attorney's fees is granted.  The

3  court orders that Plaintiffs shall recover a total of $116,071.25 in attorney's fees, consisting of

4  $99,333.75 (which includes the $5,981.25 incurred in preparing this motion and in anticipation

5  for the reply and hearing on this motion, but does not include the $105 incurred on May 2, 2019

6  and August 29, 2019) in attorney's fees for work performed by Hackler Daghighian Martino &

7  Novak P.C., plus $16,737.50 in attorney's fees for work performed by Knight Law Group LLP,

8  pursuant to Civil Code section 1794, subdivision (d).

9      The court orders that Plaintiffs shall also recover $28,439.91 from defendants FCA US

10  LLC and San Fernando Motor Company for costs and expenses, pursuant to Civil Code section

11  1794, subdivision (d).

12      Pursuant to the orders set forth above, the court orders that defendants FCA US LLC and

13  San Fernando Motor Company shall pay (1) $99,333.75 in attorney's fees to Hackler Daghighian

14  Martino & Novak P.C., (2) $16,737.50 in attorney's fees to Knight Law Group LLP, and (3)

15  $28,439.91 in costs and expenses to Knight Law Group LLP.

16

17      The court orders Plaintiffs to give notice of this ruling.

18

19  IT IS SO ORDERED.

20  DATED:  February 5, 2020

21

22

23  Robert B. Broadbelt III
    Judge of the Superior Court

24

25

26

27

28

7

# EXHIBIT R

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 31

**BC686906**                                                      January 16, 2020
**SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL**                             8:30 AM

Judge: Honorable Yolanda Orozco              CSR: None
Judicial Assistant: Hortencia Garcia          ERM: None
Courtroom Assistant: Theresa de la Paz       Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Edward O. Lear by Daniel Kalinowski

For Defendant(s): Samantha J. Hughes

**NATURE OF PROCEEDINGS:** Hearing on Motion for Attorney Fees; Order to Show Cause
Re: Dismissal (Settlement)

The Court's tentative ruling is posted online for the parties to review.

The matter is called for hearing.

Both parties submit to the Court's tentative ruling.

The Court adopts its tentative ruling as the final order of the Court as follows:

Background

On December 14, 2017, Plaintiff Shahriar Yazdanniaz filed the instant suit against Defendants
FCA US LLC, Orange Coast Auto Group, LLC, and Does 1 through 10. On January 18, 2019,
Plaintiff filed a First Amended Complaint ("FAC"). The FAC asserts causes of action for:

1. Breach of Express Warranty – Violation of Song-Beverly Act;
2. Breach of Implied Warranty – Violation of Song-Beverly Act;
3. Violation of the Song-Beverly Act Section 1793.2; and
4. Fraudulent Inducement – Concealment.

On August 8, 2019, Plaintiff filed a Notice of Settlement of Entire Case and has filed this motion
for fees.

Legal Standard

Attorneys' fees are allowed as costs when authorized by contract, statute, or law. (Code Civ.
Proc, § 1033.5, subd. (a)(10)(B).)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 31

BC686906                                                          January 16, 2020
**SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL**                            8:30 AM

Judge: Honorable Yolanda Orozco              CSR: None
Judicial Assistant: Hortencia Garcia         ERM: None
Courtroom Assistant: Theresa de la Paz       Deputy Sheriff: None

In a lemon law action, costs and expenses, including attorney's fees, may be recovered by a prevailing buyer under the Song-Beverly Act. (See Civ. Code, § 1794(d).) Section 1794 provides:

If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

(Civ. Code, § 1794 [emphasis added].) Thus, the statute includes a "reasonable attorney's fees" standard.

The attorney bears the burden of proof as to "reasonableness" of any fee claim. (Code Civ. Proc., § 1033.5(c)(5).) This burden requires competent evidence as to the nature and value of the services rendered. (Martino v. Denevi (1986) 182 Cal.App.3d 553, 559.) "Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." (Id.)

A plaintiff's verified billing invoices are prima facie evidence that the costs, expenses, and services listed were necessarily incurred. (See Hadley v. Krepel (1985) 167 Cal.App.3d 677, 682.) "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated to not suffice." (Lunada Biomedical v. Nunez (2014) 230 Cal.App.4th 459, 488, quoting Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n (2008) 163 Cal.App.4th 550, 564.)

Evidentiary Objections

Defendants submit a number of objections to the Declarations of Steve Mikhov and Edward O. Lear.

Plaintiff also submits a number of objections to the Declaration of Samantha J. Hughes.

The objections are immaterial to the Court's disposition. The Court therefore declines to rule upon them.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 31

BC686906                                                        January 16, 2020
SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL                              8:30 AM

Judge: Honorable Yolanda Orozco            CSR: None
Judicial Assistant: Hortencia Garcia       ERM: None
Courtroom Assistant: Theresa de la Paz     Deputy Sheriff: None

Discussion

Plaintiff seeks attorneys' fees and costs in the amount of $74,454.75 consisting of $45,801.25 in attorneys' fees, $5,752.87 in costs, and a lodestar multiplier of 0.5 for an additional $22,900.63.

Hourly Rate

"The reasonable hourly rate is that prevailing in the community for similar work." (PLCM Group v. Drexler (2000) 22 Cal.4th 1084, 1095.) "The experienced trial judge is the best judge of the value of professional services rendered in [her] court." (Ibid.)

Plaintiff seeks to recover attorneys' fees for 14 different attorneys who worked on the case. Their hourly rates are as follows:

Steve Mikhov: $550/hour (Mikhov Decl. ¶ 19)
Amy Morse: $350/hour (Mikhov Decl. ¶ 20)
Kristina Stephenson-Cheang: $375/hour (Mikhov Decl. ¶ 21)
Daniel Kalinowski: $250/hour (Mikhov Decl. ¶ 22)
George Aguilar: $275/hour (Mikhov Decl. ¶ 23)
Kirk Donnelley: $400/hour (Mikhov Decl. ¶ 24)
Maite Colon: $275/hour (Mikhov Decl. ¶ 25)
Matthew Evans: $400/hour (Mikhov Decl. ¶ 26)
Sundeep Samra: $225/hour (Mikhov Decl. ¶ 27)
Edward Lear: $595/hour (Lear Decl. ¶ 4)
Rizza Gonzales: $400/hour (Lear Decl. ¶ 6)
Mike Bergin: $150/hour (Lear Decl. ¶ 7)
Gina Kripotos: $250/hour (Lear Decl. ¶ 8)
Saba Zafar: $400/hour (Lear Decl. ¶ 9)

For each of the attorneys, attorneys Steve Mikhov and Edward Lear attest to their legal experience and the reasonableness of their rates. (Mikhov Decl. ¶ 16-27; Lear Decl. ¶ 2-9.)

In opposition, Defendants argue that Plaintiff's counsel's hourly rates are excessive. Defendants assert that Plaintiff's attorneys padded their bills by overstaffing what was otherwise a routine lemon law case with fourteen attorneys from three law firms. Citing to Morris v. Hyundai Motors America ((2019) Cal.App.5th 24), Defendants contend that the Court should reduce

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 31

BC686906                                                                January 16, 2020
**SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL**                                8:30 AM

Judge: Honorable Yolanda Orozco          CSR: None
Judicial Assistant: Hortencia Garcia     ERM: None
Courtroom Assistant: Theresa de la Paz   Deputy Sheriff: None

Plaintiff's attorneys' fees by limiting the billing to one partner and two associates from the Knight Law Group. Defendants argue that Knight Law Group should be limited to the $23,035.00 in billing by partner Amy Morse and associates Kristina Stephenson-Cheang and George Aguilar, with Ms. Cheang's rate reduced to $300 per hour. Defendants assert that Century Law Group's fees should be limited to those generated by partner Edward O. Lear and associate Rizza Gonzales with Mr. Lear's rate reduced to $400 per hour and Ms. Gonzales' rate reduced to $300 per hour for total billing of $2,780.00.

In reply, Plaintiff argues that Defendants have not provided any actual evidence suggesting that the requested rates are improper. Plaintiff asserts that the Morris case cited by Defendants involves substantially different facts and circumstances than those here.

The Court finds that the hourly rates requested by Plaintiffs are reasonable and commensurate with rates charged by attorneys with comparable skill and expertise. The rates suggested by Defendant are not supported by any evidence and thus the Court declines to adjust the rates as requested.

Reasonable Hours Incurred

"A trial court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney ... involved in the presentation of the case." (Christian Research Institute v. Alnor (2008) 165 Cal.App.4th 1315, 1321.) "The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time involved. The court may also consider whether the amount requested is based upon unnecessary or duplicative work." (Wilkerson v. Sullivan (2002) 99 Cal.App.4th 443, 448.)

While not per se objectionable, block billing can exacerbate the vagueness of an attorney fee request and support a court's finding that time entries were inflated and non-compensable. (Christian Research Institute v. Alnor (2008) 165 Cal.App.4th 1315, 1325-1326.)

Plaintiff's counsel provides detailed billing records for this case. (Mihkov Decl., Exh. A; Lear Decl., Exh. A.) Plaintiff seeks attorneys' fees in the amount of $45,801.25. Plaintiff argues that this case required a range of specialized knowledge, including: (1) an understanding of the full scope of consumer protection laws, which are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge of auto manufacturers' and dealers'

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 31

BC686906                                                    January 16, 2020
**SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL**                         8:30 AM

Judge: Honorable Yolanda Orozco          CSR: None
Judicial Assistant: Hortencia Garcia     ERM: None
Courtroom Assistant: Theresa de la Paz   Deputy Sheriff: None

policies and protocols for repairing vehicles and complying with their legal obligations. (Mihkov Decl., ¶ 60.) Plaintiff contends that counsel acquired knowledge and insight about these over the course of many years of litigation, and this experience typically results in significantly higher judgments or settlements for their clients, like Plaintiff here.

Plaintiff argues that Defendants should have acknowledged the defects in Plaintiffs' vehicle and resolved the matter before this case was ever filed. Plaintiff asserts that instead, Defendants engaged in expensive litigation, including denying all liability, engaging in extensive discovery, and forcing Plaintiff's counsel to expend numerous hours preparing for trial. Plaintiff contends that with little effort, Defendants could have resolved this matter much earlier and saved tens of thousands in attorneys' fees, costs and expenses by doing so. Plaintiff argues that Defendants ultimately capitulated, but not before causing substantial fees to be incurred. Plaintiff asserts that when Defendants cause the entirety of fees to be incurred, they have no legitimate basis for complaining about the amount of attorneys' fees reasonably and actually incurred, especially when Defendants had the opportunity to resolve the matter before a lawsuit was even filed.

In opposition, Defendants argue that numerous time entries submitted by Plaintiff's counsel contain entries that lump together several tasks. Defendants assert that the amount of hours block billed amount to 39.45 hours and $15,511.25 in fees. Defendants contend that because it is not clear from the entries provided how much time counsel spent on necessary tasks related to the prosecution of Plaintiff's Song-Beverly causes of action, as opposed to administrative tasks, other non-legal tasks, and objectionable tasks, the Court should invoke its discretion and reduce Plaintiff's counsel's claimed hours and fees significantly.

Defendants additionally argue that the amount of work attributed in Plaintiff's motion to many tasks appears to reflect what counsel believes the "value" of that task should be, not the actual time spent. Defendants assert that the hours that were value billed amount to 22.3 hours and $8,120.00 in fees.

Defendants contend that Plaintiff is also not entitled to attorneys' fees under Code Section 1794(d) for non-Song-Beverly causes of action or unnecessary litigation. For example, Plaintiff seeks attorneys' fee incurred in connection with amending the complaint to allege a cause of action for fraud and for the drafting of fifteen (15) motions in limine that Plaintiff failed to file or serve. Defendants assert that the fees incurred as a result of amending the complaint to allege a fraud cause of action are not recoverable as a fraud cause of action is separate and apart from Plaintiff's breach of warranty claims and therefore not recoverable under the plain language of Civil Code section 1794(d). As to the motions in limine, Defendants contend that because Plaintiff never filed any motions in limine, they could not have been necessary to the prosecution

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 31

BC686906                                                              January 16, 2020
**SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL**                          8:30 AM

Judge: Honorable Yolanda Orozco              CSR: None
Judicial Assistant: Hortencia Garcia         ERM: None
Courtroom Assistant: Theresa de la Paz       Deputy Sheriff: None

of Plaintiff's Song-Beverly claims.

In reply, Plaintiff argues that Defendants fail to rebut that reasonableness presumption afforded by Plaintiff's fee bill. Plaintiff asserts that rather than carry its burden and offer evidence disputing Plaintiff's showing, Defendants incorrectly try to place the burden on Plaintiff. As to Defendants' arguments regarding block-billing, Plaintiff contends that the items Defendants identify as block billing are not examples of block billing, but instead describe the work performed by the attorney. As to Defendants' argument regarding value billing, Plaintiff argues that Defendants contention is not supported. Finally, as to Defendants' arguments regarding work related to non-Song-Beverly causes of action, Plaintiff asserts that the filing and defense of the FAC cannot be extricated from the prosecution of the Song-Beverly Act claims. Plaintiff contends that moreover, the 998 accepted by Defendant sets forth "Defendants shall pay attorney fees, costs, and expenses actually and reasonably incurred in the commencement and prosecution of this action." (Mikhov Decl., Exh. D, E.) Plaintiff argues that they cannot now seek to undo the bargain it entered into by now arguing that the attorneys' fees related to "prosecution of this action" somehow does not include prosecution of the fraud cause of action. Finally, as to the motions in limine, Plaintiff asserts that the motions were prepared in December 2018 when trial was scheduled to commence on March 11, 2019, with an FSC on March 1, 2019. Plaintiff contends that it is not inappropriate for counsel to prepare motions in limine in advance of the trial date.

The Court finds that the amount of fees request is unreasonable. First, as to the fee motion, the Court is not persuaded that Plaintiff will incur an additional 5 hours reviewing the opposition, preparing a reply, and preparing for and attending the hearing on the motion. Accordingly, a total of $800 representing 2 hours billed has been deducted from the total amount of fees requested.

The Court additionally finds that Plaintiff's counsel billed for time wherein one attorney was responsible for attending a hearing or deposition and another attorney was responsible for reviewing the transcript and drafting a summary. The Court finds such time is duplicative and therefore unreasonable. Accordingly, a total of $937.50 representing 2.5 hours billed has been deducted from the total amount of fees requested.

As to Defendants arguments regarding block-billing, value billing, and entries related to Plaintiff's fraud cause of action and motions in limine, the Court finds that such time was reasonably incurred, billed, and recorded and was contemplated by the parties' settlement agreement. Accordingly, Plaintiff may thus recover for such time. It appears to the Court that Plaintiff's counsel delegated tasks to attorneys with lower rates to ensure Plaintiff was appropriately billed.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 31

BC686906                                                           January 16, 2020
SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL                                 8:30 AM

Judge: Honorable Yolanda Orozco              CSR: None
Judicial Assistant: Hortencia Garcia         ERM: None
Courtroom Assistant: Theresa de la Paz       Deputy Sheriff: None

Having analyzed the motions and pleadings filed, and having reviewed the billing statements provided, the Court determines that a reasonable lodestar in this case, to limit any duplicative and excessive fees, is $44,063.75.

Lodestar Multiplier

While the lodestar reflects the basic fee for comparable legal services in the community, it may be adjusted based on various factors, including "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award" and (4) the success achieved. (Serrano v. Priest (1977) 20 Cal.3d 25, 49.)

Nonetheless, the court must not consider extraordinary skill and the other Serrano factors to the extent these are already included with the lodestar. (Ketchum v. Moses (2001) 24 Cal. 4th 1122, 1138-1139.) "[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable." (Id. at 1139.)

Plaintiff seeks a lodestar multiplier of 0.5 in the additional amount of $22,900.63. Plaintiff argues that throughout the litigation, there always existed the possibility that Plaintiff would not prevail. Plaintiff asserts that the risk was further compounded by the fact that Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement. Plaintiff contends that if he did not prevail, his attorneys would have suffered a substantial loss of uncompensated attorney hours and thousands of dollars in out-of-pocket expenses. Plaintiff argues that he requests a 0.2 enhancement based on that risk.

Plaintiff further argues that Defendants dragged this case out for nearly two years before agreeing to a reasonable settlement offer proposed by Plaintiff. Plaintiff asserts that his attorneys are not paid at all if they lose, and need to absorb significant delay in being paid if Plaintiff does win. On account of the substantial delay in payment, Plaintiff requests a 0.3 enhancement.

In opposition, Defendants argue that each of the factors Plaintiff cites commands that the attorneys' fees claimed should be adjusted downward. Defendants assert that this was a routine lemon law case that did not present novel issues or preclude Plaintiff's counsel from handling any other cases while they litigated this case. Defendants contend that moreover, this case did

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 31

BC686906                                                January 16, 2020
**SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL**                      8:30 AM

Judge: Honorable Yolanda Orozco          CSR: None
Judicial Assistant: Hortencia Garcia     ERM: None
Courtroom Assistant: Theresa de la Paz   Deputy Sheriff: None

not proceed to trial. Defendants argue that such circumstances do not amount to a rare and exceptional case justifying a multiplier.

The Court finds that under the circumstances of this case, a lodestar multiplier is not appropriate. Nothing before the Court indicates that the case presented novel issues or that the quality of representation far exceeded the quality of representation that would have been provided by attorneys of comparable skill and experience billing at the same rates. While Plaintiff argues that counsel accepted the case only on a contingency basis, the Court finds that such considerations and risks are already included within the lodestar amount.

Based on the foregoing, the Court declines to award a lodestar multiplier.

Costs

Allowable costs "shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (Code Civ. Proc., § 1033.5, subd. (c)(2).) Any items not specifically mentioned by statute "may be allowed or denied in the court's discretion." (Id., subd. (c)(4).)

"'If the items appear to be proper charges the verified memorandum is prima facie evidence that the costs, expenses and services therein listed were necessarily incurred by the defendant [citations], and the burden of showing that an item is not properly chargeable or is unreasonable is upon the [objecting party].' [Citation.]" (Nelson v. Anderson (1999) 72 Cal.App.4th 111, 131.) The Court therefore first determines if the statute expressly allows for the item, and whether it appears proper on its face. If so, "the burden is on the objecting party to show them to be unnecessary or unreasonable." (Id.)

The Beverly-Song Act allows a successful plaintiff to recover both "costs" and "expenses." (See Civ. Code, § 1794, subd. (d).) Courts have held that "it is clear the Legislature intended the word 'expenses' to cover items not included in the detailed statutory definition of 'costs.'" (Jensen v. BMW of North America, Inc. ("Jensen") (1995) 35 Cal.App.4th 112, 137.) The court in Jensen held that "[t]he legislative history indicates the Legislature exercised its power to permit the recovery of expert witness fees by prevailing buyers under the Act … ," noting that the legislature included "expenses" in the lemon law act because "'[t]he addition of awards of "costs and expenses" by the court to the consumer to cover such out-of-pocket expenses as filing fees, expert witness fees, marshall's fees, etc., should open the litigation process to everyone.' [Citation.]"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 31

**BC686906**                                                                    January 16, 2020
**SHAHRIAR YAZDANNIAZ VS FCA US LLC ET AL**                                        8:30 AM

Judge: Honorable Yolanda Orozco              CSR: None
Judicial Assistant: Hortencia Garcia         ERM: None
Courtroom Assistant: Theresa de la Paz       Deputy Sheriff: None

Plaintiff seeks costs in the amount of $5,752.87. Defendants do not challenge Plaintiff's costs.

The Court finds that Plaintiff is entitled to costs sought under Civil Code section 1794. The
Court thus awards Plaintiff costs in the amount of $5,752.87.

Conclusion

Plaintiff's motion for attorney fees is GRANTED in part. The Court awards Plaintiff attorneys'
fees in the amount of $44,063.75 and costs in the amount of $5,752.87, for a total of $49,816.62
in attorneys' fees and costs.

The Motion for Attorney Fees filed by Shahriar Yazdanniaz on 12/18/2019 is Granted in Part.

Order to Show Cause Re: Dismissal (Settlement) is continued to 03/10/2020 at 08:30 AM in
Department 31 at Stanley Mosk Courthouse.

Moving party to give notice.

# EXHIBIT S

**FILED**
Superior Court of California
County of Los Angeles

JAN 1 0 2020

Sherri R. Carter, Executive Officer/Clerk
By _Jontee Marquez_ , Deputy
Jontaé M. Marquez

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

CLAUDIA P. EWING, et al.;

    Plaintiffs,

vs.

FCA US LLC, et al.;

    Defendants.

Case No. BC638178

DEPARTMENT 45

[TENTATIVE] ORDER

Action Filed: 10/20/16
Settlement Entered: 05/28/19

| | |
|---|---|
| Hearing Date: | January 10, 2020 |
| Moving Party: | Plaintiffs Claudia P. Ewing and Joshua W. Ewing |
| Responding Party: | Defendants FCA US LLC and Glenn E. Thomas Company, Inc. |

**Motion for Attorney's Fees**

The court has considered the moving, opposition, and reply papers.

The court **GRANTS IN PART** Plaintiffs' motion for attorney's fees. The court awards

Plaintiffs a total amount of $104,263.50 in attorney fees.

**Background**

On October 20, 2016, plaintiffs Claudia P. Ewing and Joshua W. Ewing (collectively,

"Plaintiffs") filed this action against defendants FCA US LLC and Glenn E. Thomas Company,

Inc. (collectively, "Defendants"). Plaintiffs' Complaint alleges 3 causes of action against

Defendants: (1) breach of express – violation of Beverly Song Act; (2) breach of implied

warranty – violation of Beverly Song Act; and (3) fraudulent inducement – concealment. Trial

was set for May 28, 2019. On May 28, 2019, Plaintiffs filed a Notice of Settlement.

On November 11, 2019, Plaintiffs filed this motion for attorney fees in the amount of

$148,935.00 and for costs in the amount of $25,711.17, for a total request of $174,646.17.

Defendants filed their opposition on November 20, 2019 and Plaintiff filed his reply on

November 26, 2019. On November 25, 2019, Defendants filed a motion to tax Plaintiffs'

$25,711.17 in costs, which is set to be heard on February 5, 2020.

## Evidentiary Objections

The court **OVERRULES** Defendants' objections to the declaration of Steve Mikhov in

their entirety.

The court **OVERRULES** Defendants' objections to the declaration of Edward Lear in

their entirety.

The court **OVERRULES** Plaintiffs' objections to the declaration of Leon Roubinian in

their entirety.

## Legal Standard

"As a general rule, the prevailing party may recover certain statutory costs incurred in the

litigation up to and including entry of judgment. [Citations.] These costs may include attorney

fees, if authorized by contract, statute . . . or law. [Citation.] . . . attorney fees require a separate

noticed motion. [Citations.]" (*Lucky United Props. Inv., Inc. v. Lee* (2010) 185 Cal.App.4th 125,

137.) This motion may be brought: (1) after judgment or dismissal, for fees incurred "up to and

including the rendition of judgment in the trial court--including attorney's fees on an appeal

before the rendition of judgment…"; and (2) on an interim basis, upon remittitur of appeal, of

only fees incurred on appeal. (CRC, Rule 3.1702(b)-(c).)

2

In determining what fees are reasonable, California courts apply the "lodestar" approach. (See, e.g., *Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1332.) This inquiry "begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (See *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) From there, the "[t]he lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Id.*) Relevant factors include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.)

**Discussion**

*Entitlement to Attorney Fees*

Plaintiffs move for attorney fees in the total amount of $148,935.00 (lodestar of $99,290.00 with 1.5 multiplier), pursuant to CCP § 1032(a)(4) and Civil Code § 1794(d). Plaintiffs assert that they are the prevailing party and, therefore, are entitled to statutory attorney fees.

Plaintiffs and Defendants filed a Notice of Settlement on May 28, 2019. Defendants do not dispute that Plaintiffs are entitled to attorney fees in this case. The court therefore finds that Plaintiffs are entitled to attorney fees in connection with their claims in this matter.

///

///

*Reasonableness of Attorney's Fees*

    a.  <u>Attorney Hourly Rate and Attorney Hours</u>

Defendants contend that the entire $20,072.50 billed by the Knight Law Group ("KLG") should be excluded because KLG's work was duplicated by Century Law Group LLP ("CLG") when KLG brought CLG onto the case as trial counsel.

The factors considered in determining the modification of the lodestar "include the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or failure, *and other circumstances in the case*." (*EnPalm, LLC v. Teitler Family Trust* (2008) 162 Cal.App.4th 770, 774, emphasis in original.) A negative modifier was appropriate when duplicative work had been performed. (*Thayer v. Wells Fargo Bank, N.A.* (2001) 92 Cal.App.4th 819.)

Plaintiffs' attorney's fees include billing from the KLG, which initially litigated the case, and CLG, which associated in as trial counsel. The court finds that Defendants fail to establish that it was improper for Plaintiff's counsel to have two firms billing on this matter. The parties litigated this case for about three years and settled only on the day of trial. Defendants provides no legal support for their novel contention that a firm's entire bill should be excluded merely because another firm was brought in as trial counsel.

Defendants also run through the usual arguments made in lemon law attorney's fees motions without specifying how any of the arguments should reduce the attorney's fee award. Plaintiffs offer the expected responses. Defendants argue that Plaintiffs' claims lack novelty or difficulty. Plaintiffs counter that Defendants' litigation tactics ran up the bills. Defendants claim the settlement was not exceptional because it represented less than the statutorily enumerated damages. Plaintiffs argue the settlement was more than double the purchase price of the vehicle

at issue. Defendants argue Plaintiffs' counsel displayed no special skill in this litigation because Plaintiffs' counsel merely uses the same templates in all lemon law cases. Plaintiffs retort lemon law requires specialized legal knowledge and specialized factual knowledge of automobile mechanics, which Plaintiffs counsel's templates deliver at a bargain to their clients. Defendants argue Plaintiffs have not supplied any evidence that Plaintiffs' counsel took this case on contingency. Plaintiffs contend Defendants have failed to provide evidence that the case was not taken on contingency. The court finds none of Defendants' arguments merit a downward adjustment of the lodestar. None of Defendants' arguments explain how the attorney fee award might be reduced in a principled manner for the various claimed deficiencies. Further, Plaintiffs have a response to each of Defendants' contentions.

Defendants next identify 14 instances of duplicative billing, excessive rates, and unreasonably spent time. The 14 instances will be addressed in turn.

Defendants argue that the $3,980 billed on October 9, 2017 alone by Mr. Lear and Ms. Gonzales to strategize between Plaintiffs' two firms is duplicative and excessive. Plaintiffs retort that Defendants have at times been represented by multiple law firms, and that Plaintiffs involving 15 lawyers on this case leads to efficiency because each lawyer specializes in a particular task. The court finds Defendants' argument convincing. Billing almost $4,000 for attorneys in two firms to strategize with each other is excessive and duplicative. Plaintiffs' counsel's business model may be premised on the belief that task specialization leads to efficiency. But, that does not require the court to turn a blind eye to the places where that model is inefficient, namely in strategizing and familiarizing more than a dozen attorneys with a single case file. This amount will be halved to $1,990 to represent the time a single attorney might take to think through such strategy themselves.

Defendants argue that $1,890 billed for a partner spending 5.4 hours preparing discovery requests is excessive because drafting discovery is not a task that requires a partner's skill and 5.4 hours is too much time to adjust the names and dates on the same templates that Plaintiffs' counsel uses in every case. Plaintiffs assert that they made 320 discovery requests. The court finds the number of hours and hourly rate that Plaintiffs seek for these tasks are unreasonable as Plaintiffs' argument does not address why a partner needed to draft discovery requests from templates or take more than half a day to do so. This amount will be reduced to two hours at an associate's rate of $250, for a total of $500, to represent a reasonable time and rate for such work.

Defendants argue that $210 billed by a partner at KLG to review an opposition to a motion was duplicative because a partner at CLG had already drafted the moving papers and the reply three months earlier. Plaintiffs offer no retort. The court finds Plaintiffs' billing entry is unreasonable because it is duplicative and the task was unnecessary. This amount will be eliminated.

Defendants argue that $862.50 billed for preparing deposition summaries is excessive because the hourly rate for this work should not be $375 per hour. Plaintiffs do not explain how the rate was reasonable. The court finds the hourly rate unreasonable because that rate is for an attorney with 11 years of lemon law experience. Deposition summaries do not require such specialized experience and should not be billed at the corresponding rate. The court reduces this amount to $517.50, representing the 2.3 hours of work at an associate's rate of $225 per hour.

Defendants argue that a total of $272.50 billed for work related to Plaintiffs' counsel's failure to appear at two hearings is excessive because Defendants should not have to pay for work caused by Plaintiffs' counsel's scheduling errors. Plaintiffs offer no response. The court

finds Defendants' argument has merit. Plaintiffs' billing entry was not reasonably incurred because it is unreasonable for Plaintiffs' counsel to fail to attend court hearings. This amount will be excluded.

Defendants argue that $330.00 billed by a partner to review and audit billing statements should be excluded because it is a nonbillable administrative task. Plaintiffs offer no response. The court finds this billing entry unreasonable because the task is nonbillable administrative work. This amount will be excluded.

Defendants argue that $600 billed to review motions in limine on December 18, 2017 was unreasonable because the motions in limine were not served until the next day. Plaintiffs argue the date of the entry was wrong but the work was still done. The court finds this entry is reasonable given the apparent mistake in dating the work. This amount will not be reduced.

Defendants argue that $3,120 billed by CLG to draft an MSC statement was excessive because it involved reviewing discovery responses, which KLG had already done. Plaintiffs concede that 3.8 hours of that work billed at $400 per hour was inaccurately billed, constituting a reduction of $1,520. The court finds this entry was admittedly incorrectly billed. This amount will be reduced to $1,600.00.

Defendants argue that $4,940 billed by CLG for 12.35 hours drafting motions in limine is excessive because Plaintiffs' counsel uses the same boilerplate motions in each lemon law case. Plaintiffs counter that CLG conformed each motion to the facts of the case and it would have taken longer without templates. The court finds Plaintiffs' response does not justify why it is reasonable to take a business day and a half to add the facts of this case to a standardized set of motions. The court reduces this amount to six hours of work by CLG's partner, totaling $2,400.00.

7

Defendants argue that $400 billed by CLG for meeting with clients is excessive because no further description is provided of the meeting. Plaintiffs argue that meeting with a client is not objectionable and it does not need to be described further. The court finds that Plaintiffs' billing entry is reasonable because a lack of description does not make the time spent on the task excessive. This amount will not be reduced.

Defendants argue that $4,500 billed by CLG for nine hours of defending Plaintiffs' joint deposition is excessive because the deposition only lasted five hours. Plaintiffs argue the nine-hour entry includes travel to and from the downtown deposition site and debriefing Plaintiffs after the deposition. The court finds Plaintiffs' charge is unreasonable because, even assuming two hours of travel from Century City to downtown, Plaintiffs' counsel would have been debriefing Plaintiffs for two hours after their depositions. The court finds that Plaintiff does not justify taking two hours to discuss a deposition between people who were all in the deposition room together. The court reduces this amount to seven hours of work at this attorney's rate of $500 per hour, totaling $3,500.

Defendants argue that $2,231.25 billed by CLG's managing partner to review motions in limine and the facts of the case for the final status conference and mandatory settlement conference was duplicative because another attorney drafted the motions in limine and a statement for the mandatory settlement conference. Plaintiffs retort this work was necessary for oral argument. The court finds this charge duplicative and therefore unreasonable. This amount will be reduced to $1,000.

Defendants argue that $375 billed by CLG's law-student intern to calculate damages is excessive because damages in a lemon law case are merely the value of the vehicle multiplied by

two for a statutory penalty. Plaintiffs offer no rebuttal. The court finds this entry is unreasonable because damages calculations in this type of case are very simple. This amount will be excluded.

Lastly, Defendants argue that the $1,200 billed to draft this motion and the $2,000 billed to reply and appear on this motion are excessive. Plaintiffs retort that a motion for attorney fees is fact driven and the reply must respond to the arguments raised in opposition. The court finds these charges are unreasonable because a partner does not need to prepare a boilerplate motion, like the present one, from scratch. Plaintiffs' charge of three hours to prepare the moving papers is unreasonable. Plaintiffs' charge of three hours to prepare for and attend the hearing on this motion is unreasonable, particularly since the same attorney prepared the moving papers and the reply. The court reduces this amount to $2,000.

Cumulatively, Plaintiffs' counsel's bill is reduced by $12,403.75. The court finds Plaintiffs' counsel reasonably incurred $86,886.25 in attorney fees.

### b. Lodestar Multiplier

Plaintiff also seeks a 1.5 multiplier based upon the contingent risk Plaintiff's counsel undertook in this representation. The lodestar figure may be adjusted based on relevant factors, which include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum, supra*, 24 Cal.4th at 1132.)

Here, the court finds Plaintiffs establish that a multiplier is justified in this matter. Plaintiffs' counsel accepted this case on contingency, advanced costs, and was required to secure a settlement greater than Defendants' Section 998 offer in order to get any attorney fees. Thus,

Plaintiffs' counsel took on financial risk in accepting this case and litigating it for three years up to the day of trial. However, since none of the other factors favor a multiplier for Plaintiff, the court finds that it is reasonable to reduce the multiplier to a 1.2 multiplier. Accordingly, a 1.2 multiplier is justified–an additional $17,377.25–to compensate Plaintiffs' counsel for the financial risk present in this representation.

*Conclusion*

Based on the foregoing, the court GRANTS IN PART Plaintiffs' motion for attorney fees. The court awards Plaintiff attorney fees in the lodestar amount of $84,886.25, with a 1.2 multiplier in the amount of $17,377.25, for Plaintiffs' claims in this case and $2,000 for this motion, for a total award of $104,263.50.

## SUMMARY OF PLAINTIFF'S AWARD

|  | Requested | AWARDED |
|---|---|---|
| **Lodestar:** | $96,090 | $84,886.25 |
| **Enhancement Multiplier:** | 1.5x | 1.2x |
| **Attorney's Fees Motion** | $3,200 | $2,000 |
| **TOTAL:** | $148,935 | **$104,263.50** |

It is so ordered.

Date:  January 10, 2020

MEL RED RECANA
Judge of the Superior Court

10

# EXHIBIT T

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 26 2019

Sharri R. Carter, Executive Officer/Clerk
By Cher Mason, Deputy

*Superior Court of California*

*County of Los Angeles*

*Department 36*

TANISHA LASHAY PITTS

    Plaintiff,

    v.

FCA US LLC, a Delaware Limited Liability Company; FAB4 LLC, a California Limited Liability Company dba RUSSELL WESTBROOK CHRYSLER DODGE JEEP RAM; and DOES 1 though 10, inclusive

    Defendant.

Case No.:    BC690577

Hearing Date: 8/26/2019

**RULING RE: MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

The motion is GRANTED for $66,059.71.

"'[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate ...'" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1134.) The lodestar method is based on the factors to the particular case: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." (*Id.* at 1132.) "The ''experienced

1   trial judge is the best judge of the value of professional services rendered in his court, and while

2   his judgment is of course subject to review, it will not be disturbed unless the appellate court is

3   convinced that it is clearly wrong.'"" (*Id.*; *see also Doppes v. Bentley Motors, Inc.* (2009) 174

4   Cal.App.4th 967, 997 [holding the lodestar method is the proper means of calculating attorney's

5   fees under Civ. Code § 1794(d) for Song-Beverly claims].)

6

7   Factors that the court may consider for applying a lodestar multiplier are (1) the novelty and

8   difficulty of the questions, and the skill displayed in presenting them, (2) the extent to which the

9   nature precluded other employment by the attorneys, (3) the contingent nature of the fee award,

10   from the viewpoint of eventual victory on the merits and the viewpoint of establishing eligibility

11   for an award (4) the result obtained by the litigation, (5) the quality of the representation, and (6)

12   any delay in receipt of payment. (*Serrano III v. Priest* (1977) 20 Cal. 3d 25, 48.)

13

14   Here, Plaintiff moves for attorney's fees, costs, and expenses under Civil Code § 1794. Plaintiff

15   asserts that she is the prevailing party under Civil Code § 1794(d) and may recover her attorney's

16   fees and costs.  Plaintiff may have reasonable attorney's fees as the prevailing party under both

17   the Song-Beverly Act. (See Civ. Code § 1794(d); *Murillo v. Fleetwood Enterprises, Inc.* (1998)

18   17 Cal.4th 985, 990.)

19

20   Plaintiff claims attorney's fees for her counsel Knight Law Group, LLC for $19,892.50 and her

21   counsel Century Law Group, LLP for $31,251.00. (Mikhov Decl. ¶ 2, Exh. A.)  Plaintiff's

22   counsel also requests a 0.5 enhancement, for $25,571.75, to account for the delay in payment and

23   contingent risk posed by the case.  Plaintiff further claims $14,916.21 in costs and expenses.

24   (Mikhov Decl. ¶ 2, Exh. B.)  Although not required, Plaintiff has submitted the billing records

25   from counsel to support the motion. (Mikhov Decl. Ex. A; *see Horsford v. Board of Trustees*

26   (2005) 132 Cal.App.4th 359, 396 ["[T]he verified time statements of the attorneys, as officers of

27   the court, are entitled to credence in the absence of a clear indication the records are

28   erroneous"].)

Base Fees:

Plaintiff claims attorney's fees for $51,143.50. (Mikhov Decl. ¶ 2, Exh. A.) Defendants contend there is no basis for Plaintiff's attorneys' high billing rates. (Opp. p. 4:22-28) Defendants object to several specific billing entries based on vagueness, unreasonableness, or duplicity. (Opp. pp. 5-8.) Defendant's arguments regarding the attorneys' fees are based on conjuncture and unsupported by any significant evidence beyond opinion. The court finds Defendants' contentions that Plaintiff's counsel overbilled their hourly rates and time unpersuasive. As Plaintiff has met her initial burden by supplying verified time statements of the attorneys, the court is inclined to grant Plaintiff's requested base fees for $51,143.50.

Lodestar Multiplier:

Plaintiff requests a 0.5 multiplier because Plaintiff advanced all litigation costs and expenses without reimbursement, because Defendants extended the case for over a year before agreeing to a reasonable settlement, and because Plaintiff risked substantial loss of uncompensated attorney hours and thousands of dollars in out-of-pocket expenses. Defendants oppose the fees requested and argue there is nothing novel or requiring special skill about this case. Based on the case history, evidence, and arguments of counsel, the Court is not inclined to grant a multiplier. The evidence by Plaintiff does not sufficiently establish that the case was risky or involved novel issues which required particular skill. The Court finds the initially requested fees to be a reasonable amount given the parties' evidence and arguments, and enough to reasonably compensate Plaintiff's counsel. Defendants' counter request to apply a negative multiplier is denied, as Defendants provide no evidence that the case was over litigated beyond Plaintiff's continuing to take and defend depositions for 3 weeks after receiving the settlement offer. The court denies the request for a lodestar multiplier.

Costs:

Plaintiff requests $14,916.21 in costs and expenses. Defendants argue that Plaintiff's expert witness fee for expert Dr. Luna for $3,970.00 is not recoverable under Civil code section

1   1794(d) because the expert was designated as a fraud expert not an expert in Song-Beverly

2   matters and fraud is not a cause of action under Song-Beverly. (Opp. p. 9:3-11.) Defendants cite

3   no legal authority for this proposition. Civil Code section 1794(d) states:

4   "(d) If the buyer prevails in an action under this section, the buyer shall be allowed by the court

5   to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses,

6   including attorney's fees based on actual time expended, determined by the court to have been

7   reasonably incurred by the buyer in connection with the commencement and prosecution of such

8   action." (Civ. Code, § 1794.)

9

10  California courts have interpreted "costs and expenses" broadly in relation to costs requests

11  under Civil Code section 1794(d), finding that reasonably incurred expert witness fees with the

12  commencement and prosecution of the action may be recovered. (*Jensen v. BMW of North*

13  *America, Inc.* (1995) 35 Cal.App.4th 112, 138, as modified on denial of reh'g (June 22, 1995);

14  *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 42.) The expert witness was

15  unquestionably deposed with the prosecution, regardless of the hypothesized purpose for the

16  expert. Although Plaintiff may have had Defendants' offer in hand, an acceptance had not been

17  communicated to Defendants and trial was still a possibility. As a practical matter, should the

18  matter have progressed to trial, Plaintiff could not have prosecuted her case without expert

19  testimonies. The court will award costs in the amount.

20

21

22

23                                                    **GREGORY W. ALARCON**

24  Dated:      AUG 2 ö 2019                          _____

25                                                    Gregory Alarcon

26                                                    Superior Court Judge

27

28

# EXHIBIT U

Clerk: CVK

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06290-R-JEM | | Date | 07-01-2019 |
|---|---|---|---|---|
| Title | ***Bruce Nai Hung Li v. FCA US LLC; et al.*** | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Christine Chung | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiff's Motion for Attorneys' Fees (DE 46)**

## I.  **INTRODUCTION**

On April 18, 2017, Bruce Nai Hung Li ("Plaintiff") filed a complaint against FCA US LLC ("Defendant") in Los Angeles Superior Court. Plaintiff asserted three claims: breach of express warranty—violation of the Song-Beverly Act (claim 1); breach of implied warranty—violation of Song-Beverly Act (claim 2); and fraudulent inducement—concealment (claim 3).

On August 25, 2017, this case was removed to the United States District Court for the Central District of California pursuant to diversity jurisdiction. On July 10, 2018, the parties arrived to the first day of trial and agreed to settle the case for $96,000.00.

Presently before the Court is Plaintiff's Motion for Attorneys' Fees under the Song-Beverly Act seeking a total amount of $95,908.61. This amount consists of: (1) an award of attorneys' fees pursuant to California Civil Code section 1794(d) under the "lodestar" method in the amount of $49,265.00; (2) a "lodestar" modifier of .5 under California law, in the amount of $24,632.50; and (3) reimbursement of costs and expenses in the amount of $22,011.11. For the following reasons, the Court **GRANTS in part** Plaintiff's motion, awarding Plaintiff $49,265.00 in attorneys' fees and $22,011.11 in costs and expenses.

## II.  **FACTUAL BACKGROUND**

The dispute at issue arises from Plaintiff's purchase of a 2015 Jeep Cherokee, manufactured by Defendant, with a faulty Totally Integrated Power Module ("TIPM"). Within the applicable express warranty period, the vehicle began exhibiting electrical issues and required several safety recalls. Plaintiff first presented the vehicle to an FCA-authorized repair facility after about 8,770 miles for a safety recall. Plaintiff returned to FCA's repair facility again on 4 separate occasions for a total of 10

Case 2:23-cv-03454-SVW-JC   Document 23-3   Filed 09/22/23   Page 149 of 233   Page
ID #:305
Case 2:17-cv-06290-R-JEM   Document 34   Filed 07/01/19   Page 2 of 5   Page ID #:1708

Clerk: CVK

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06290-R-JEM | Date | 07-01-2019 |
|---|---|---|---|
| Title | *Bruce Nai Hung Li v. FCA US LLC; et al.* | | |

safety recalls. Plaintiff later experienced further issues with the vehicle resulting from the defective TIPM which caused the air bag light and check engine light to turn on several times. In sum, Plaintiff delivered the vehicle to FCA's authorized repair facility at least nine times due to electrical issues.

## III.   JUDICIAL STANDARD

The Song-Beverly Act provides: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

## IV.   DISCUSSION

In awarding attorneys' fees, courts retain broad discretion in determining what is a reasonable award. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1137–39 (2001). The California Court of Appeal has expressly held that the lodestar method applies to determining attorneys' fees under the Song-Beverly Act. *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 817 (2006). The lodestar method requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th 140, 154 (2006). The party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rate." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). To challenge attorneys' fees as excessive, the challenging party must "point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008). General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. *Id.*

Therefore, to assess the reasonableness of attorneys' fees sought by Plaintiff, the Court considers the reasonableness of the hourly rate and the hours expended, respectively.

### i.   *Hourly Rates*

In California, "the reasonable hourly rate . . . is that prevailing in the community for similar work." *Ctr. for Biological Diversity v. Cty. of San Bernardino*, 185 Cal. App. 4th 866, 901 (2010) (internal quotations omitted). The Court has discretion to adjust the hourly rate based on the following facts, assuming they are not already subsumed in the lodestar calculation: (1) the novelty and difficulty of the questions involved, (2) the skills displayed in presenting those questions, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of

Case 2:23-cv-03454-SVW-JC   Document 23-2   Filed 09/22/23   Page 150 of 233   Page
Case 2:17-cv-06290-R-JEM   Document 54-3   Filed 07/01/19   Page 3 of 5   Page ID #:104
ID #:306

Clerk: CVK

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06290-R-JEM | Date | 07-01-2019 |
|---|---|---|---|
| Title | **_Bruce Nai Hung Li v. FCA US LLC; et al._** | | |

the fee award. *Id.* at 1132, 1138. "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." *Id.* at 1132.

For the court to determine the hourly rate, "the parties seeking fees must submit 'satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No. CV 12-02943 MMM (FFMx), 2014 WL 12586434, at *12 (C.D. Cal. Nov. 7, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 896–96 n.11 (1984)), *aff'd sub nom. Mireskandari v. Associated Newspapers, Ltd.*, 665 F. App'x 570 (9th Cir. 2016). The district court may also rely upon its own familiarity with the legal market to set the attorney's hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiff seeks fees incurred by the Knight Law Group, LLP ("Knight Law") and the Law Offices of Michael H. Rosenstein, LC. Specifically, Plaintiff seeks fees incurred by the following attorneys at Knight Law: attorney of record Steve Mikhov ("Mikhov") at a rate of $550 per hour; attorney Amy Morse ("Morse") at a rate of $350 per hour; attorney Russell Higgins ("Higgins") at a rate of $450 per hour; attorney Deepak Devabose ("Devabose") at a rate of $275 per hour; attorney Kristina Stephenson-Cheang ("Stephenson-Cheang") at a rate of $375 per hour; attorney Kirk Donnelly ("Donnelly") at a rate of $400 per hour; attorney Christopher Urner ("Urner") at a rate of $325 per hour; and attorney Lauren C. Martin ("Martin") at a rate of $250 per hour. Furthermore, Plaintiff seeks fees incurred by the following attorneys at the Law Offices of Michael H. Rosenstein, LC: attorneys Michael H. Rosenstein ("Rosenstein") at a rate of $550 per hour; attorney Brian T. Shippen-Murray at a rate of $350 per hour; and attorney James P. Martinez at a rate of $275 per hour. Plaintiff's Motion is supported by declarations from Mikhov and Rosenstein in which they detail their experience and expertise in the field of consumer law. In sum, Plaintiff seeks to recover attorneys' fees in the amount of $49,265.00.

Defendant argues that while Plaintiff is entitled to recover attorneys' fees, costs, and expenses in a Song-Beverly case, Plaintiff's attorneys' fees are unreasonable and that the number of lawyers who worked on the case was unnecessary. However, in challenging the reasonableness of fees, a fee opponent "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. County of Nevada*, 67 F.3d 248, 255 (1995). Failure to submit evidence on any specific aspect of Plaintiff's fee claim results in waiver of any objection. *Blum v. Stenson*, 465 U.S. 866, 892 (1984). Here, Defendant fails to submit any evidentiary support that fees were not incurred or were unreasonable. Rather, Defendant makes conclusory statements lacking any substantive support. In addition, while Defendant criticizes Plaintiff's use of 11 attorneys, these law firms claim to have a strategy of having specialized attorneys work on different aspects of the case which results in greater efficiency and efficacy. This Court declines to admonish the use of a larger number of attorneys, as it appears there was no duplicative billing.

Case 2:23-cv-08454-SVW-JC   Document 23   Filed 09/22/23   Page 151 of 233   Page
Case 2:17-cv-06290-R-JEM   Document 34   Filed 07/01/19   Page 4 of 5   Page ID #:308
ID #:307

Clerk: CVK

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06290-R-JEM | | Date | 07-01-2019 |
|---|---|---|---|---|
| Title | ***Bruce Nai Hung Li v. FCA US LLC; et al.*** | | | |

Based on the submitted materials, the Court's review of the recent Real Rate Report, and the Court's familiarity with the current local market, the Court finds that Plaintiff's requested rates per hour are reasonable.

        *ii.*    <u>*Hours Expended*</u>

Knight Law purportedly spent 68.3 hours on this matter and the Law Offices of Michael Rosenstein purportedly spent 68.9 hours on this matter. Defendant counters that Plaintiff's request is unreasonable and should be reduced.

After reviewing the submitted materials, the Court finds that the itemizations of each attorney are reasonable. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (explaining that, in most instances, courts "should defer to the winning lawyer's professional judgment" about hours spent on the case).

Defendant contests some of the billable hours and argues that two law firms were not necessary to litigate this matter. However, the Law Offices of Michael Rosenstein were retained only when it seemed apparent that the case would continue to trial. The attorneys from the Law Officer of Michael Rosenstein specialize in preparing cases for trial and were brought on to provide Plaintiff with greater efficiency at the trial stage and all the necessary tasks in trial preparation. However, this Court finds that bringing in another law firm for this purpose is appropriate. Furthermore, the Court finds the tasks billed by each lawyer to be appropriate and reasonable.

    **A.**    **Lodestar Calculation**

The hours expended in this matter by Knight Law were 68.3, amounting to $25,370.00, and the hours expended in this matter by the Law Offices of Michael H. Rosenstein, LC were 68.9, amounting to $23,895.00. The Court finds that these hours are generous but nevertheless reasonable. The Court further finds that the requested hourly rates are reasonable. Accordingly, $49,265.00 is a presumptively reasonable fee award.

    **B.**    **Lodestar Modifier Calculation**

Once a lodestar amount is determined, the amount may be augmented by taking various relevant factors into account, including: "(1) the novelty and difficulty of the questions involved and the skilled displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award." *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 819 (2006).

Case 2:23-cv-03454-SVW-JC   Document 23-3   Filed 09/22/23   Page 152 of 233   Page
ID #:308
Case 2:17-cv-06290-R-JEM   Document 54   Filed 07/01/19   Page 5 of 5   Page ID #:1100

Clerk: CVK

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06290-R-JEM | Date | 07-01-2019 |
|---|---|---|---|
| Title | ***Bruce Nai Hung Li v. FCA US LLC; et al.*** | | |

Plaintiff seeks a lodestar multiplier of .5 amounting to $24,632.50. However, the Court finds Plaintiff's argument unpersuasive. First, there was no novelty to this case and no special skill was required to handle it. This was a run of the mill Song-Beverly case with a fraud cause of action. The legal issues were common to Song-Beverly cases in which Plaintiff's counsel specializes. All that was needed to litigate this case was legal counsel competent in consumer protection laws. Second, Plaintiff does not even make an argument that counsel was precluded from taking on other work. Third, the Court rejects Plaintiff's argument that the uncertainty of prevailing in this matter based on a contingent fee warrants an award adjustment. While Plaintiff claims that FCA dragged this case out for nearly fifteen months before agreeing to settle and Plaintiff risked not recovering anything for the time expended and costs advanced, there is a risk and delay inherent in every contingency matter. Thus, the Court denies Plaintiff's request for a lodestar multiplier of .5.

### C.   Costs and Expenses

In addition to attorneys' fees, Plaintiff moves to be reimbursed for costs and expenses incurred. Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover, as part of the judgment, a sum equal to the aggregate amount of costs and expenses. Cal. Civ. Code § 1794(d).

Plaintiff filed a verified Application to the Clerk to Tax Costs establishing costs necessarily incurred. The detailed application of costs amounts to a total of $22,011.11. Having reviewed the document, the Court finds it appropriate for Defendant to reimburse Plaintiff the total amount of costs incurred.

## V.   CONCLUSION

In light of the foregoing, the Court **GRANTS in part** Plaintiff's Motion for Attorneys' Fees (DE 46) and awards Plaintiff $49,265.00 in attorneys' fees and $22,011.11 in reimbursement of costs and expenses.

**IT IS SO ORDERED.**

0    :    00

Initials of Preparer          cch

# EXHIBIT V

Electronically Received 06/20/2019 04:37 PM

**FILED**
Superior Court of California
County of Los Angeles

**06/25/2019**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ O. Chavez _____ Deputy

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| ANTHONY S. CARRUTHERS,<br><br>             Plaintiff,<br><br>     vs.<br><br>**FCA US LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,**<br><br>             Defendants. | Case No. BC639911<br><br>~~[PROPOSED]~~ ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES<br><br>Date:  May 8, 2019<br>Time:  8:30 a.m.<br>Dept.:  56<br>Judge: Hon. Holly Fujie |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff's Motion for Attorney's Fees, Costs and Expenses, scheduled for hearing on May 8, 2019, at 8:30 a.m., in Department 56, of the above-entitled court located at 111 North Hill

-1-

1  Street, Los Angeles, California, 90012, the Honorable Holly Fujie, presiding. Plaintiff moved the

2  court for an award of $65,045.00 in lodestar attorney fees plus a .5 lodestar multiplier, and

3  $10,117.42 in costs and expenses.

4       Having read the motion, the memoranda and the declarations filed by the parties, the Court

5  adopts its tentative ruling as follows:

6     1.  Plaintiff's Motion for Attorney's Fees, Costs and Expenses is GRANTED, in part;

7     2.  Plaintiff is awarded lodestar attorney's fees in the amount of $65,045.00;

8     3.  The Court declines to award a multiplier;

9     4.  Plaintiff's costs and expenses will be determined at Defendant's Motion to Tax Costs on

10        June 12, 2019.

11     **IT IS HEREBY ORDERED.**

12

13                                 IT IS SO ORDERED

14                                      **Holly J. Fujie**

15  Dated: _____  06/25/2019         _____ Holly J. Fujie / Judge

16                                       Judge of the Superior Court

17  Prepared by:
   **KNIGHT LAW GROUP, LLP**
18  Steve Mikhov (SBN 224676)
   Deepak Devabose (SBN 298890)
19  10250 Constellation Blvd., Suite 2500
20  Los Angeles, CA 90067
   Telephone: (310) 552-2250
21  Fax: (310) 552-7973
22  stevem@knightlaw.com
   deepakd@knightlaw.com
23  Attorneys for Plaintiff,
   **ANTHONY S. CARRUTHERS**

24

25

26

27

28

[PROPOSED] ORDER

1

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

2

3     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 10250 Constellation Blvd., Suite 2500, Los Angeles, CA 90067.

4

5     I served the foregoing document described as:

6     **[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

7

8     Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

9

10    Michelle J. Droeger, Esq.
CLARK HILL PLC

11    1055 West Seventh Street, 24th Floor
Los Angeles

12    Fax: 213-488-1178
**Counsel for Defendant,**

13    **FCA US LLC**

14    XX    BY MAIL:  I am readily familiar with this firm's practice of collection and processing

15          correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon

16          fully prepaid at a Postal Service collection box at Los Angeles, California, in the ordinary course of business. The envelope was sealed and placed for collection that same day

17          following ordinary business practices, addressed to the above-referenced attorney.

18    XX    BY FACSIMILE: By personally faxing the above-referenced document to the facsimile

19          number below the recipient's name.

20    I declare under penalty of perjury under the laws of the State of California that the

21          foregoing is true and correct.

22    Executed on June 13, 2019 at Los Angeles, California.

23

24

25                                                SARAH SEMSAR

26

27

28

-1-
PROOF OF SERVICE

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 10250 Constellation Blvd., Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Michelle J. Droeger, Esq.
CLARK HILL PLC
1055 West Seventh Street, 24th Floor
Los Angeles
Fax: 213-488-1178
**Counsel for Defendant,**
**FCA US LLC**

XX    BY MAIL:  I am readily familiar with this firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at a Postal Service collection box at Los Angeles, California, in the ordinary course of business. The envelope was sealed and placed for collection that same day following ordinary business practices, addressed to the above-referenced attorney.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 20, 2019 at Los Angeles, California.


_____
SARAH SEMSAR

# EXHIBIT W

FILED
Superior Court of California
County of Los Angeles

JUN 05 2019

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Daisy G. Vallin

Superior Court of California

County of Los Angeles

Department 51

| | |
|---|---|
| JANIECE CAROLEEN GARZA,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, et al.,<br><br>Defendants. | Case No.: BC *635166*<br><br>Hearing Date: 6/4/19<br><br>Trial Date: None set<br><br>**RULING RE:**<br><br>Motion for Attorney Fees, Costs, and Expenses |

### Background

Plaintiff Janiece Caroleen Garza ("Plaintiff") sued Defendants FCA US LLC, et al. ("Defendants") for breach of express and implied warranty under Song-Beverly Consumer Warranty Act.

On December 11, 2018, Notice of Settlement was filed.

On May 3, 2019, prevailing Plaintiff filed this Motion for Attorney Fees, Costs, and Expenses against Defendants in the total amount of $104,187.50.

The Court considered the moving, opposition, and reply papers and oral argument.

### Standard

Under the Song-Beverly Act, a prevailing buyer shall recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred in the action. Civ. Code § 1794(d).

"The determination of what constitutes a reasonable fee generally 'begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate....'" "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award...." Graciano v. Robinson Ford Sales, Inc. (2006) 144 Cal.App.4th 140, 154.

The court has the discretion to increase or decrease the lodestar figure by applying a positive or negative multiplier based on a variety of factors that judge did not consider when determining the lodestar figure. See Ketchum v. Moses (2001) 24 Cal.4th 1122, 1138; Northwest Energetic Servs., LLC v. California Franchise Tax Bd. (2008) 159 Cal.App.4th 841, 879-882. The purpose of a fee enhancement is "primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class." Ketchum, supra, 24 Cal.4th at

1122. However, "the trial court is not required to include a fee enhancement for exceptional skill, novelty of the questions involved, or other factors. Rather, applying a multiplier is discretionary." Rey v. Madera Unif. Sch. Dist. (2012) 203 Cal.App.4th 1223, 1242.

Analysis

Plaintiff moves for reasonable attorney fees, costs, and expenses from Defendants on the grounds that, as a prevailing party in this action, Plaintiff is entitled to recover costs and expenses including attorneys' fees per Civ. Code § 1794(d) and the parties' settlement agreement. Plaintiff declares that it is entitled to the lodestar amount of $63,364.25, lodestar modifier of 0.5 in the amount of $31,682.13, and actual costs and expenses of $9,141.12. (Mtn., p. 2, Mikhov Decl., Exs. A-B.) Plaintiff argues that the hourly rates and time expended are reasonable because of the complexity of the case and special knowledge required of Plaintiff's counsels. In addition, Plaintiff's counsel requests for a 0.5 enhancement of the lodestar amount based on the contingent nature of the fee award and the risk of significant delay in getting fees paid. (Mtn., p.p. 13-14.)

On the other hand, Defendants argue that no attorney's fees, costs or expenses should be awarded to Plaintiff for any work done after the date of the first statutory repurchase offer made by Defendants, because Plaintiff deliberately rejected Defendants' good-faith settlement offers. Defendants also contend that 0.5 enhancement of the lodestar amount is inappropriate on the same ground.

The Court finds that Plaintiff met the burden of showing that the fees incurred are, for the most part, reasonable in amount under Civ. Code § 1794(d). The instant case required comprehensive understanding of "lemon law" and intricacies of automobile and its industry, not to mention asymmetric information between parties. Also, Plaintiff's counsel faced contingency risk of not receiving compensation at all after over two years of litigation costs and expenses. Based on these factors, Plaintiff satisfied the burden of proving the reasonable number of hours devoted to the litigation, through declarations and billing records. The burden shifts.

Defendants fail to rebut the claimed costs, since they merely contend that amounts of attorneys' fees are excessive without providing a specific analysis or factual support. See Mallard v. Progressive Choice Ins. Co. (2010) 188 Cal.App.4th 531, 545; Raining Data Corp. v. Barrenechea (2009) 175 Cal.App.4th 1363, 1376 (an "'assertion [that] is unaccompanied by any citation to the record or any explanation of which fees were unreasonable or duplicative' is insufficient to disturb the trial court's discretionary award of attorney fees."). The mere fact that Plaintiff rejected their previous settlement offers does not suffice.

With the exception of the maximum hourly rate requested, which will be reduced to $500 per hour, and the deletion of expert fees for Dr. Luna, the Court finds that the lodestar amount of $63,039.25 in attorney fees and $7249.12 in costs and expenses are reasonable.

Nevertheless, the Court declines to grant the lodestar enhancement, because the court must not intertwine considerations relevant to the determination of the lodestar amount with factors relevant to whether the lodestar should be adjusted upward. Ketchum, supra, 24 Cal.4th at 1139; see Northwest Energetic Services, LLC, supra, 159 Cal.App.4th at 879. The factors claimed by Plaintiff have already been included within the lodestar, and multiplying the fee award will result in unfair double counting and be unreasonable. See Ketchum, supra, 24 Cal.4th at 1139.

Conclusion

Plaintiff's Motion for Attorney Fees, Costs, and Expenses in the amount of $70,288.37 is GRANTED.

Plaintiff to give notice.

Dated:        JUN 0 5 2019

Dennis Landin
Superior Court Judge

# EXHIBIT X

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Stanley Mosk Courthouse, Department 50

**BC631896**                                                              April 9, 2019
**CHIARA P DI MARTINO VS HYUNDAI MOTOR AMERICA**                               8:30 AM

Judge: Honorable Teresa A. Beaudet          CSR: Noelle C. Krawiec
Judicial Assistant: S. Fletcher             ERM: None
Courtroom Assistant: G. Mack                Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Steve Mikhov, Esq. by Hadi Gerami

For Defendant(s): Julian G. Senior, Esq.

**NATURE OF PROCEEDINGS:** Hearing on Motion to Tax Costs; Hearing on Motion for Attorney Fees

Matter is called for hearing.

Pursuant to Government Code sections 68086, 70044, California Rules of Court, rule 2.956, and the stipulation of appearing parties, Noelle C. Krawiec, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

Matter is argued and the Court rules as follows: The Motion for Attorney Fees filed by on 01/14/2019 is Granted. The Motion to Tax Costs filed by Hyundai Motor America on 01/08/2019 is Denied.

Plaintiff's is entitled to recover $57,910 in attorneys' fees and $4,431.31 in costs from Defendant

Plaintiff is to give notice.

Order is signed and filed and incorporated herein by reference.

---

# EXHIBIT Y

Electronically Received 03/19/2019 10:34

**FILED**
Superior Court of California
County of Los Angeles

**03/28/2019**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Deputy
Jean Gurnee

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

|  |  |
|---|---|
| ANTONIO MARTINEZ, | Case No. BC624319 |
| Plaintiff, | Unlimited Jurisdiction |
| vs. | [PROPOSED] **ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES** |
| FCA US LLC, a Delaware Limited Liability Company; CHAMPION DODGE, LLC, a California Corporation, dba CHAMPION CHRYSLER JEEP DODGE; and DOES 1 through 10, inclusive, | Date: February 20, 2019<br>Time: 9:00 a.m.<br>Dept.: 96<br>Judge: Hon. Anthony J. Mohr |
| Defendants. |  |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff's Motion for Attorney's Fees, Costs and Expenses, came on regularly for hearing on February 20, 2019, at 9:00 a.m., in Department 96, of the above-entitled court located at 111

-1-

North Hill Street, Los Angeles, California, 90012, the Honorable Anthony J. Mohr, presiding. Plaintiff moved the court for an award of $69,565.00 in lodestar attorney fees plus a .5 lodestar multiplier, and $4,992.80 in costs and expenses.

Michael H. Rosenstein of The Law Offices of Michael H. Rosenstein, LC appeared on behalf of Plaintiff Antonio Martinez and Lynn R. Levitan of Clark Hill, LLP appeared on behalf of Defendants FCA US LLC and Champion Dodge, LLC. Having read the motion, the memoranda and the declarations filed by the parties, and having heard oral argument of counsel, the Court issued its ruling, as follows:

1. Plaintiff's Motion for Attorney's Fees, Costs and Expenses is GRANTED;

2. The Court finds that the following hourly rates requested by counsel are reasonable:

   Knight Law Group, LLP

   - Steve Mikhov $550.00/hr
   - Kristina Stephenson-Cheang $375.00/hr
   - Amy Morse $350.00/hr
   - Christopher Thoms $350.00/hr
   - Michelle Lumasag $200.00/hr

   The Law Offices of Michael H. Rosenstein, LC

   - Michael H. Rosenstein $550.00/hr
   - Brian Murray $350.00/hr
   - Jamie Adler $300.00/hr

3. Plaintiff is awarded full lodestar attorney's fees in the amount of $69,565.00;

4. The Court finds that Plaintiff is entitled to a multiplier of 0.2 in the amount of $13,913.00;

///
///
///
///
///
///

-2-
[PROPOSED] ORDER

5.  Plaintiff is awarded full costs and expenses in the amount of $4,992.80;

6.  Plaintiff is awarded a total amount of attorney's fees, costs and expenses in the amount of $88,470.80.

**IT IS HEREBY ORDERED.**

IT IS SO ORDERED

Dated: _____03/28/2019_____

_____Anthony Mohr / Judge_____

Judge of the Superior Court

Prepared by:
**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
Deepak Devabose (SBN 298890)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Email: stevem@knightlaw.com
        deepakd@knightlaw.com

Attorneys for Plaintiff,
**ANTONIO MARTINEZ**

[PROPOSED] ORDER

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 10250 Constellation Blvd., Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Lynn R. Levitan, Esq.
CLARK HILL PLC
1055 W. Seventh Street, 24th Floor
Los Angeles, CA 90017
Fax: 213-488-1178
llevitan@clarkhill.com
**Counsel for Defendants,**
**FCA US LLC and**
**CHAMPION DODGE, LLC**

XX    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

XX    BY MAIL: I am readily familiar with this firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at a Postal Service collection box at Los Angeles, California, in the ordinary course of business. The envelope was sealed and placed for collection that same day following ordinary business practices, addressed to the above-referenced attorney.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 11, 2019 at Los Angeles, California.

SARAH SEMSAR

-1-

PROOF OF SERVICE

PROOF OF SERVICE
(Code of Civil Procedure §1013a)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 10250 Constellation Blvd., Suite 2500, Los Angeles, CA 90067.

I served the foregoing document described as:

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

Said document was served on the interested parties in this action, by placing true copies thereof enclosed in sealed envelopes, with postage prepaid, addressed as follows:

Lynn R. Levitan, Esq.
CLARK HILL PLC
1055 W. Seventh Street, 24th Floor
Los Angeles, CA 90017
Fax: 213-488-1178
llevitan@clarkhill.com
**Counsel for Defendants,**
**FCA US LLC and**
**CHAMPION DODGE, LLC**

XX    BY MAIL: I am readily familiar with this firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at a Postal Service collection box at Los Angeles, California, in the ordinary course of business. The envelope was sealed and placed for collection that same day following ordinary business practices, addressed to the above-referenced attorney.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 19, 2019 at Los Angeles, California.

SARAH SEMSAR

-1-

PROOF OF SERVICE

# EXHIBIT Z

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 38

BC671090                                                          January 25, 2019
**ANTONIUS A NIEUVENHUIS VS FORD MOTOR**                                   9:30 AM
**COMPANY**

| | |
|---|---|
| Judge: Honorable Maureen Duffy-Lewis | CSR: None |
| Judicial Assistant: Robert R. Alva | ERM: None |
| Courtroom Assistant: Roger Lomeli | Deputy Sheriff: None |

APPEARANCES:

For Plaintiff(s): Steve Borislav Mikhov, Esq. by Roger Kirnos

For Defendant(s): Robert Christopher Rodriguez

**NATURE OF PROCEEDINGS:** Hearing on Motion for Attorney Fees

Pursuant to Government Code sections 68086, 70044, California Rules of Court, rule 2.956, and the stipulation of appearing parties, Adriana Patron #13834, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

Motion is called for hearing and argued.

In this lemon law matter, plaintiff seeks attorney fees; a lodestar amount of $38,735 with a 1.5 multiplier. Plaintiff also seeks costs and expenses of $2,021.33.

Motion GRANTED.

$38,735 is reasonable. No multiplier.

Court also awards $2,021.33 in costs and expenses.

Counsel for plaintiff to give notice.

# EXHIBIT AA

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 09/17/18 | DEPT. 39

| | |
|---|---|
| HONORABLE ELIZABETH R. FEFFER   JUDGE | R. KARAPETYAN   DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #6 | JUSTUS ALENTIE   CSR# 13859 |
| L. BITUIN, C.A.   Deputy Sheriff | REPORTER IN PRO TEMPORE   Reporter |

| | | | |
|---|---|---|---|
| 9:00 am | BC620996 | Plaintiff Counsel | CHRISTOPHER M. THOMAS (X) |
| | AVILIO SICILIANO | | |
| | VS | Defendant | |
| | KIA MOTORS AMERICA INC | Counsel | MARCELO LEE          (X) |

**NATURE OF PROCEEDINGS:**

PLAINTIFF AVILIO SICILIANO MOTION FOR ATTORNEY'S
FEES, COSTS AND EXPENSES;

The Stipulation and Order to Use Certified Shorthand
Reporter appointing official Court reporter pro
tempore in the current proceedings is signed and
filed this date.

Matter is called for hearing.

After hearing arguments from counsel, the court rules
as follows:

Plaintiff's Motione for Attorney's fees is GRANTED
in the amount of $30,592.50.

Plaintiff is entitled to costs in the requested amount
of $3,303.67.

Counsel for plaintiff is to submit an order.

Plaintiff is to give notice.

Page   1 of  1   DEPT. 39

MINUTES ENTERED
09/17/18
COUNTY CLERK

09/20/2018

# EXHIBIT BB

CALIFORNIA SUPERIOR COURT
COUNTY OF LOS ANGELES, CENTRAL DISTRICT
DEPARTMENT 45

**FILED**
ON ANGELES SUPERIOR COURT

APR 0 4 2018

By _____ , Deputy Clerk

CHARLES MARGESON VS FORD MOTOR COMPANY
BC 549430

---

## ORDER

The Court granted Plaintiff's *Ex Parte* Application To Set Aside And/Or
Clarify/Reconsider The Order Entered on Plaintiff's Motion For Attorney
Fees on February1, 2018.  After hearing counsel for the plaintiff and
defendant, the Court took the matter under submission to determine why
there is an inconsistency in the amount of the attorney's fees in the tentative
issued to counsel before the Feb. 1st hearing and the tentative that was
signed by the Court immediately thereafter.

The Court now rules that the signed tentative order was the first tentative
that *had been revised* by the Court changing the 1.4 multiplier to 1.8
increasing the attorney fees from $741,839.70 to $953,793.90.

Wherefore, the Court clarifies its Order awarding the plaintiff's counsel
attorney fees in the amount of $953,793.90.

The Clerk is ordered to serve the parties by facsimile.

IT SO ORDERED.
April 4, 2018.

MEL RED RECANA
Judge

1

o: 13236535542@Fax.lacourt.org          "SMC-DEPT.45"                04/0    04:35 PM        Page 1 of 2



LA Superior Court
111 North Hill Street,
Los Angels, CA 90012

| DATE: | Apr. 4, 2018 |
| ATTN: | 13236535542@fax.lacourt.org |
| FROM: | "SMC-DEPT.45" |
| SUBJECT: | =?utf-8?B?UO1DLURFUFQuNDU=?= |

**Note:**
Please open the attached document. It was scanned and sent to you using a Xerox Phaser
MFP. For more information on Xerox products and solutions, please visit
http://www.xerox.com.

*Fax Server Powered by* **STREEM CENTER™**

Opt-Out: Not Defined

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

FILED
Superior Court of California
County of Los Angeles
FEB 01 2018
Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Daniel Haro

CHARLES MARGESON,

Plaintiff,

vs.

FORD MOTOR COMPANY

Defendant.

Case No. BC549430

DEPARTMENT 45

[TENTATIVE] ORDER

Complaint Filed: June 20, 2014
Judgment Entered: September 21, 2017

Hearing Date:        January 5, 2018
Moving Party:        Plaintiff Charles Margeson
Responding Party:    Defendant Ford Motor Company

**Motion for Attorney's Fees**

The Court considered the moving papers, opposition, and reply.

The motion is **GRANTED IN PART**. Plaintiff is awarded $529,885.50 in fees, with a 1.4 multiplier in the amount of $211,954.20, for a total award of **$741,839.70**.

**A.    Background**

This is a lemon law case. On July 4, 2006, Plaintiff purchased a new 2006 Ford F-350 truck, which allegedly had engine defects. Plaintiff asserted six causes of action against defendant Ford Motor Company for: 1) fraud in the inducement-intentional, 2) fraud in the inducement-concealment, 3) negligent misrepresentation, 4) fraud in performance of contract-intentional misrepresentation, 5) violation of the Consumer Legal Remedies Act, and 6) violation of the Song-Beverly Act.

1

On May 24, 2017, a jury trial was held.  On June 16, 2017, the jury reached a verdict in favor of Plaintiff in the amount of $72,564.04 in actual damages, $141,973.30 in civil penalties, and $1,451,280.80 in punitive damages, for a total judgment of $1,665,818.14.  Of the actual damages, the parties stipulated that $58,876.00 was for the purchase of the vehicle and $13,688.04 is for the incidental and consequential damages.  Judgment was entered on September 21, 2017.

On October 6, 2017, Plaintiff filed a memorandum of costs.  Plaintiff claimed a total of $99,451.81 in costs.

On November 17, 2017, Plaintiff was awarded $107,830.16 in prejudgment interest.

On January 5, 2018, Plaintiff's costs of $99,451.81 were taxed in the amount of $2,611.00.

Plaintiff filed this motion for attorney's fees on December 15, 2017.  Defendant filed an opposition on January 12, 2018.  Plaintiff filed a reply on January 19, 2018.

## B.   Evidentiary Matters

All of Plaintiff's evidentiary objections and objection to Defendant's Appendix of Documentary Evidence are **OVERRULED**.

## C.   Discussion

In this motion, Plaintiff seeks a total award of attorney's fees of $953,793.90 (lodestar of $529,885.50 with a 1.8 multiplier).

## 1.   Legal Standard

"As a general rule, the prevailing party may recover certain statutory costs incurred in the

litigation up to and including entry of judgment. [Citations.] These costs may include attorney

fees, if authorized by contract, statute … or law. [Citation.] … attorney fees require a separate

noticed motion. [Citations.]" (*Lucky United Props. Inv., Inc. v. Lee* (2010) 185 Cal.App.4th

125, 137.) This motion may be brought: (1) after judgment or dismissal, for fees incurred "up to

and including the rendition of judgment in the trial court--including attorney's fees on an appeal

before the rendition of judgment…"; and (2) on an interim basis, upon remittitur of appeal, of

only fees incurred on appeal. (Cal. Rules of Court, rule 3.1702(b)-(c).)

In determining what fees are reasonable, California courts apply the "lodestar" approach.

(See, e.g., *Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1332.) This inquiry

"begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the

reasonable hourly rate." (See *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) From

there, the "[t]he lodestar figure may then be adjusted, based on consideration of factors specific

to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*)

Relevant factors include: "(1) the novelty and difficulty of the questions involved, (2) the skill

displayed in presenting them, (3) the extent to which the nature of the litigation precluded other

employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum v.*

*Moses* (2001) 24 Cal.4th 1122, 1132.)

## 2.   Entitlement to Attorney's Fees

"If the buyer prevails in an action under this section [the Song–Beverly Consumer

Warranty Act], the buyer shall be allowed by the court to recover as part of the judgment a sum

equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been *reasonably incurred* by the buyer in connection with the *commencement* and *prosecution* of such action." (*Id.*, § 1794, subd. (d), italics added.) "[S]ection 1794(d) ... contemplates a final disposition or determination of the rights of the parties in the action, upon which foundation the prevailing party may then be determined and, assuming that the plaintiff prevailed, costs and fees awarded." (*Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1261–62.) Once the buyer is determined to be the prevailing party, he or she must demonstrate that their fees are (a) allowable, (b) reasonably necessary to the conduct of the litigation, and (c) reasonable in amount. (See *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 998.)

Moreover, under the Consumer Legal Remedies Act, "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." (Civ. Code, §1780, subd. (e).)

By obtaining a judgment in his favor, Plaintiff prevailed in this action. Therefore, the Court examines the reasonableness of the amount of fees that Plaintiff is requesting.

//

//

//

### 3.    Amount of Attorney's Fees to be Awarded

Plaintiff requests a lodestar of $529,885.50, based on the following:

| Law Firm | Lodestar |
|---|---|
| Knight Law Group, LLP | $290,830.00 |
| Altman Law Group | $196,225.00 |
| Law Offices of Michael H. Rosenstein | $6,312.50 |
| Rosner, Barry & Babbitt, LLP | $36,518.00 |
| **Total:** | **$529,885.50** |

In support of the requested lodestar, Plaintiff's counsel submitted the declarations of Steve Mikhov, Bryan Altman, Michael Rosenstein, and Hallen Rosner in support of the motion and the invoices for counsel.

Plaintiff contends that this case was heavily litigated, involving discovery disputes, review of numerous documents produced in discovery, attending mediation out-of-state, and handling a three-week trial. Defendant had an opportunity to resolve this dispute by buying back Plaintiff's vehicle, making a reasonable settlement offer, or accepting the Court's mediator's proposal, but failed to do so, thereby necessitating the fees that Plaintiff incurred in this case.

Defendant contends that the requested fees are unreasonable and excessive. Defendant claims that it offered to repurchase Plaintiff's vehicle prior to filing a response to the complaint, thereby eliminating the contingency risk. Defendant also contends that Plaintiff's counsel failed to demonstrate the reasonableness of their hourly rate. Defendant also contends that Plaintiff is not entitled to a multiplier because Plaintiff's case did not involve any novel issues and no exceptional skill was exhibited.

### a.   Multiplier

Plaintiff is requesting a fee enhancement of a multiplier of 1.8.  Factors that may be considered are (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them, (2) the extent to which the nature of the litigation precluded other employment by the attorneys, (3) the contingent nature of the fee award, from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award (4) the result obtained by the litigation, (5) the quality of the representation, and (6) any delay in receipt of payment.  (*Serrano III v. Priest* (1977) 20 Cal. 3d 25, 48.)

The Court finds that based on the judgment obtained in trial and Plaintiff's counsel's skill in demonstrating Defendant's prior knowledge of defects in the subject vehicle, a multiplier of 1.4, as opposed to 1.8, is appropriate.

### b.   Reasonableness of Lodestar

After reviewing the declarations submitted by Plaintiff's counsel and having observed the work Plaintiff's counsel performed to obtain the favorable result for their client over the course of a three-week trial, the Court finds that the hours Plaintiff's counsel expended were necessary and reasonable to prevail in this matter.  Accordingly, the Court includes the entirety of the requested hours in the lodestar.

//

//

//

4.    **Conclusion**

For the reasons stated above, the motion is **GRANTED IN PART**.  Plaintiff is awarded

$529,885.50 in fees, with a 1.4 multiplier in the amount of $211,954.20, for a total award of

**$741,839.70**.

It is so ordered.

Date:    February 1, 2018

MEL RED RECANA
Judge of the Superior Court

# EXHIBIT CC



# UNITED STATES CONSUMER LAW

# ATTORNEY FEE SURVEY REPORT

## 2017-2018



## Ronald L. Burdge, Esq.

# United States Consumer Law
# Attorney Fee Survey Report 2017-2018

Survey Conducted By
and
Survey Report Authored By

Ronald L. Burdge, Esq.
Burdge Law Office Co. L.A.
8250 Washington Village Drive
Dayton, OH 45458-1850
Voice: 937.432.9500
Fax: 937.432.9503

Email: Ron@BurdgeLaw.com



Attribution, No Derivs
CC-BY-ND

This copyright license allows for redistribution, commercial and non-commercial use, as long as all quoted and selected contents are passed along unchanged and with credit to the publication and author.

Copyright © 2019 by R.L.Burdge
September 10, 2019

This publication contains the results of proprietary research.

This publication was created to provide accurate and authoritative information concerning the subject matter covered. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney or expert. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

# Acknowledgments

This work is dedicated to the private and public practice members of the Consumer Law bar and the Judicial officers who decide Consumer Law disputes and cases across the United States and its territories, all of whom tirelessly dedicate their careers to helping people find Justice every day in our legal system. Without their support and participation, the research for this publication would not have been possible.

I am grateful to the members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys and the many friends and supporters of the National Consumer Law Center, and to the Consumer Law bar who participated in the research that formed the foundation of this Survey Report. They are the men and women who make Justice work every day.

A special thanks is extended to Ira Rheingold, Richard Dubois, Willard Ogburn, Jon Sheldon, Charles Delbaum, Robert Hobbs, Edward Boltz, and many, many others for their constant encouragement of this project, advice and assistance since the survey began in 1999. The support, suggestions and comments from countless others over the years have contributed greatly to the result before you.

Finally, no words could adequately express my thanks to my wife, who guided, supported and encouraged me every day for the decades throughout this work. I could not do what I do, and I would accomplish nothing without her.

Ronald L. Burdge, Esq.
September 10, 2019


This Survey Report is available as a free pdf download
from this web site:
www.AttorneyFeeStudy.com


This Survey Report is also available as a free pdf download
from the web site accessed via any QR reader with this image:

Table of Contents

1. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Methods to Update Survey Results from 2017-2018 to Current Date . . . . . . . . . . 2
    Goals of Survey Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    What's New . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Survey Report Sections Explained . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Niche Areas in the Field of Consumer Law Defined . . . . . . . . . . . . . . . . . . . . . . 8
    Geographic Areas Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    The Average and the Median: What it Means to You . . . . . . . . . . . . . . . . . . . . . 9
    Interpreting the Findings: Primary and Minor Variable Factors . . . . . . . . . . . . . 11
    Survey Techniques Explained . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Survey Design Methodology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Data Gathering Methodology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Data Analysis Methodology Explained. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Peer Review of Methodologies and Survey Analyses . . . . . . . . . . . . . . . . . . . . . 18
    Error Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Section 508 Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2. Summary Profile of the Typical U.S. Consumer Law Attorney . . . . . . . . . . . . . . . . . 21
    National Summary Profile Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Conclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    National Summary Profile Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    Explanation of Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    National Summary Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    National Median Rates for Practice Areas Table. . . . . . . . . . . . . . . . . . . . . . . . . 37
    National Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    National Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    National Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    National Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

3. State Summary Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    Billable Attorney and Paralegal Participation Data Count By State . . . . . . . . . . . 42
    Explanation of Tables. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
    Alabama . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
        Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
    Alaska . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
        Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
    Arizona . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
        Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
    Arkansas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
        Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
        Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
        Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
        Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
Colorado . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
Connecticut . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
Delaware . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
District of Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
Florida . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
Georgia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79
Hawaii . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
Idaho . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
Illinois . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87
Indiana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
Iowa . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
Kansas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Kentucky . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95
Louisiana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97
Maine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99
Maryland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
Minnesota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111
Mississippi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
Missouri . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
   Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
   Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
Montana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119
Nebraska . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
Nevada . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123
New Hampshire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
New Jersey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126
   Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 127
   Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 127
   Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129
New Mexico . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 130
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131
New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133
    Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134
    Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134
    Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135
North Carolina. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
    Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138
    Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138
    Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139
North Dakota. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141
Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 143
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 143
    Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 144
    Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 144
    Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145
Oklahoma. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 147
Oregon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 149
Pennsylvania . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151
    Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 152
    Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 152
    Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 153
Puerto Rico . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 154
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 155
Rhode Island . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 156
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 157
South Carolina . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 158
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 159
South Dakota. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 160
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 161
Tennessee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Texas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 164
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165
    Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166
    Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166
    Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 167
Utah . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 168
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 169
Vermont . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 170
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 171
Virgin Islands U.S. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 172
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 173
Virginia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 174
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175
Washington . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 177
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 177
    Specialty Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 178
    Small Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 178
    Large Firm Size Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 179
West Virginia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 181
Wisconsin. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 182
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 183
Wyoming . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 184
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 185

4. Metropolitan Area Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 186
  Billable Attorney and Paralegal Data County By Metro Area . . . . . . . . . . . . . . 186
  Explanation of Table. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 193
  Alabama, Birmingham - Hoover . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 196
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 196
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 196
  Alabama, Huntsville . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 198
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 198
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 199
  Alabama, Mobile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 200
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 200
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 201
  Alabama, Montgomery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 202
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 202
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 203
  Alaska, Anchorage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 204
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 204
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 205

Alaska, Fairbanks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 206
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 206
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 207
Alaska, Juneau. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 208
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 208
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 209
Arizona, Flagstaff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 210
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 210
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 211
Arizona, Phoenix - Mesa - Scottsdale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 212
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 212
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 213
Arizona, Tucson. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215
Arizona, Yuma. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 217
Arkansas, Fayetteville - Springdale - Rogers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 218
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 218
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 219
Arkansas, Little Rock - North Little Rock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 220
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 220
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 221
Arkansas, Texarkana. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 222
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 222
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 223
California, Bakersfield . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 225
California, Fresno - Madera . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 226
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 226
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 227
California, Los Angeles - Long Beach - Anaheim . . . . . . . . . . . . . . . . . . . . . . . . . . 228
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 228
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 229
California, Riverside - San Bernardino. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 230
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 230
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 231
California, Sacramento - Roseville . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 232
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 232
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 233
California, San Diego . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 234
     Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 234
     Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 235

vi

California, San Francisco . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 236
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 236
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 237
California, San Jose - Santa Clara . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 238
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 238
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 239
Colorado, Colorado Springs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 240
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 240
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 241
Colorado, Denver - Aurora . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 242
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 242
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 243
Colorado, Fort Collins - Loveland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 244
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 244
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 245
Connecticut, Bridgeport - Stamford - Norwalk . . . . . . . . . . . . . . . . . . . . . . . . . . . 246
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 246
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 247
Connecticut, New Haven - Milford . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 249
Delaware, Dover . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 250
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 250
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 251
Delaware, Wilmington - New Castle - Newark . . . . . . . . . . . . . . . . . . . . . . . . . . . 252
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 252
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 253
Florida, Cape Coral - Fort Myers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 254
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 254
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 255
Florida, Jacksonville . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 256
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 256
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 257
Florida, Miami - Fort Lauderdale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 258
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 258
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 259
Florida, Tallahassee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 260
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 260
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 261
Florida, Tampa - St. Petersburg . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 262
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 262
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 263
Florida, Orlando . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 264
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 264
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 265

Georgia, Atlanta . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 266
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 266
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 267
Georgia, Augusta . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 268
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 268
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 269
Georgia, Macon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 270
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 270
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 271
Georgia, Savannah . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 272
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 272
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 273
Hawaii, Honolulu . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 274
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 274
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 275
Idaho, Boise City . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 277
Idaho, Idaho Falls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 278
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 278
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 279
Illinois, Chicago . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 280
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 280
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 281
Illinois, Rockford . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 283
Illinois, Springfield . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 284
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 284
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 285
Illinois, St Louis Metro East . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 286
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 286
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 287
Indiana, Fort Wayne . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 288
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 288
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 289
Indiana, Gary - Hammond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 290
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 290
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 291
Indiana, Indianapolis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 292
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 292
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 293
Indiana, South Bend - Elkhart - Mishawaka . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 294
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 294
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 295

Indiana, Terre Haute .............................................................. 296
    Median Rate for Practice Areas ................................... 296
    Experience Variable Table ........................................ 297
Iowa, Cedar Rapids............................................................... 298
    Median Rate for Practice Areas ................................... 298
    Experience Variable Table ........................................ 299
Iowa, Des Moines ................................................................ 300
    Median Rate for Practice Areas ................................... 300
    Experience Variable Table ........................................ 301
Iowa, Dubuque ................................................................... 302
    Median Rate for Practice Areas ................................... 302
    Experience Variable Table ........................................ 303
Kansas, Kansas City .............................................................. 304
    Median Rate for Practice Areas ................................... 304
    Experience Variable Table ........................................ 305
Kansas, Wichita.................................................................. 306
    Median Rate for Practice Areas ................................... 306
    Experience Variable Table ........................................ 307
Kentucky, Lexington.............................................................. 308
    Median Rate for Practice Areas ................................... 308
    Experience Variable Table ........................................ 309
Kentucky, Louisville ............................................................. 310
    Median Rate for Practice Areas ................................... 310
    Experience Variable Table ........................................ 311
Louisiana, Baton Rouge .......................................................... 312
    Median Rate for Practice Areas ................................... 312
    Experience Variable Table ........................................ 313
Louisiana, New Orleans .......................................................... 314
    Median Rate for Practice Areas ................................... 314
    Experience Variable Table ........................................ 315
Louisiana, Shreveport............................................................ 316
    Median Rate for Practice Areas ................................... 316
    Experience Variable Table ........................................ 317
Maine, Bangor.................................................................... 318
    Median Rate for Practice Areas ................................... 318
    Experience Variable Table ........................................ 319
Maine, Portland.................................................................. 320
    Median Rate for Practice Areas ................................... 320
    Experience Variable Table ........................................ 321
Maryland, Baltimore.............................................................. 322
    Median Rate for Practice Areas ................................... 322
    Experience Variable Table ........................................ 323
Massachusetts, Boston - Cambridge ............................................... 324
    Median Rate for Practice Areas ................................... 324
    Experience Variable Table ........................................ 325

Massachusetts, Springfield . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 326
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 326
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 327
Michigan, Detroit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 328
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 328
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329
Michigan, Flint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 331
Michigan, Grand Rapids. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333
Michigan, Kalamazoo - Portage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 335
Michigan, Lansing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 336
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 336
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337
Michigan, Marquette . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 339
Minnesota, Duluth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 340
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 340
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 341
Minnesota, Minneapolis - St Paul . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 342
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 342
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 343
Mississippi, Gulfport - Biloxi. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 345
Mississippi, Jackson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 346
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 346
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347
Missouri, Columbia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 348
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 348
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349
Missouri, Kansas City . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 350
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 350
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 351
Missouri, Springfield . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 352
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 352
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 353
Missouri, St Louis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 354
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 354
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 355

Montana, Billings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 356
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 356
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 357
Montana, Missoula . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 358
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 358
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 359
Nebraska, Lincoln . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 360
    Median Rates for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 360
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 361
Nebraska, Omaha . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 362
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 362
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 363
Nevada, Las Vegas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 364
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 364
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 365
Nevada, Reno - Carson City . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 366
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 366
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 367
New Hampshire - Manchester . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 368
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 368
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 369
New Jersey, Newark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 370
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 370
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 371
New Jersey, Trenton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 372
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 372
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 373
New Mexico, Albuquerque - Santa Fe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 374
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 374
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 375
New Mexico, Farmington . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 376
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 376
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 377
New Mexico, Las Cruces . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 378
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 378
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 379
New York, Albany - Schenectady . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 380
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 380
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 381
New York, Buffalo - Niagara Falls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 382
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 382
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 383
New York, New York City . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 384
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 384
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 385

xi

New York, Rochester . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 386
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 386
    Experience Variable Tab. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 387
New York, Syracuse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 388
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 388
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 389
North Carolina, Asheville. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 391
North Carolina, Charlotte . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 392
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 392
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 393
North Carolina, Fayetteville. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 394
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 394
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 395
North Carolina, Greensboro . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 396
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 396
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 397
North Carolina, Raleigh . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 398
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 398
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 399
North Dakota, Bismarck. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 400
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 400
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 401
North Dakota, Fargo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 402
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 402
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 403
North Dakota, Grand Forks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 404
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 404
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 405
Ohio, Cincinnati . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 406
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 406
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 407
Ohio, Cleveland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 408
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 408
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 409
Ohio, Columbus. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 410
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 410
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 411
Ohio, Toledo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 412
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 412
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 413
Oklahoma, Oklahoma City. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 414
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 414
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 415

Oklahoma, Tulsa . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 416
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 416
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 417
Oregon, Eugene . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 418
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 418
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 419
Oregon, Portland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 420
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 420
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 421
Pennsylvania, Erie . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 422
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 422
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 423
Pennsylvania, Harrisburg - Carlisle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 424
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 424
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 425
Pennsylvania, Philadelphia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 426
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 426
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 427
Pennsylvania, Pittsburgh . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 428
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 428
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 429
Pennsylvania, Scranton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 430
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 430
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 431
Puerto Rico, San Juan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 432
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 432
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 433
Rhode Island, Providence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 434
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 434
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 435
South Carolina, Charleston . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 436
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 436
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 437
South Carolina, Columbia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 438
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 438
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 439
South Carolina, Greenville - Spartanburg - Anderson . . . . . . . . . . . . . . . . . . . . . . 440
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 440
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 441
South Dakota, Rapid City . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 442
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 442
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 443
South Dakota, Sioux Falls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 444
 Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 444
 Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 445

Tennessee, Chattanooga................................................446
    Median Rate for Practice Areas.................................446
    Experience Variable Table.....................................447
Tennessee, Knoxville ................................................448
    Median Rate for Practice Areas.................................448
    Experience Variable Table.....................................449
Tennessee, Memphis ................................................450
    Median Rate for Practice Areas.................................450
    Experience Variable Table.....................................451
Tennessee, Nashville................................................452
    Median Rate for Practice Areas.................................452
    Experience Variable Table.....................................453
Texas, Amarillo ................................................454
    Median Rate for Practice Areas.................................454
    Experience Variable Table.....................................455
Texas, Austin................................................456
    Median Rate for Practice Areas.................................456
    Experience Variable Table.....................................457
Texas, Dallas − Fort Worth ................................................458
    Median Rate for Practice Areas.................................458
    Experience Variable Table.....................................459
Texas, El Paso ................................................460
    Median Rate for Practice Areas.................................460
    Experience Variable Table.....................................461
Texas, Houston ................................................462
    Median Rate for Practice Areas.................................462
    Experience Variable Table.....................................463
Texas, San Antonio ................................................464
    Median Rate for Practice Areas.................................464
    Experience Variable Table.....................................465
Utah, Provo - Orem ................................................466
    Median Rate for Practice Areas.................................466
    Experience Variable Table.....................................467
Utah, Salt Lake City ................................................468
    Median Rate for Practice Areas.................................468
    Experience Variable Table.....................................469
Utah, St. George ................................................470
    Median Rate for Practice Areas.................................470
    Experience Variable Table.....................................471
Vermont, Burlington................................................472
    Median Rate for Practice Areas.................................472
    Experience Variable Table.....................................473
Virginia, Alexandria - Arlington ................................................474
    Median Rate for Practice Areas.................................474
    Experience Variable Table.....................................475

Virginia, Charlottesville . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 476
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 476
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 477
Virginia, Richmond. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 478
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 478
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 479
Virginia, Norfolk – Virginia Beach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 480
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 480
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 481
Washington, Richland - Kennewick - Pasco. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 482
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 482
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 482
Washington, Seattle - Tacoma. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 484
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 484
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 484
Washington, Spokane. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 486
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 486
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 487
Washington, Yakima. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 488
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 488
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 489
West Virginia, Charleston . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 490
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 490
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 490
West Virginia, Huntington. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 492
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 492
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 493
West Virginia, Morgantown. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 494
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 494
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 495
Wisconsin, Eau Claire. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 496
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 496
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 497
Wisconsin, Madison . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 498
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 498
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 499
Wisconsin, Milwaukee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 500
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 500
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 501
Wyoming, Casper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 502
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 502
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 503
Wyoming, Cheyenne. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 504
    Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 504
    Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 505

5. Cases Employing Use of Prior Editions of this Survey Report . . . . . . . . . . . . . . . . . 506
    Cases Listed by State or Other Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 510

6. Cases on Use of Survey Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 546

7. About the Editor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 548

8. Recommendations for Future Survey Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 549

Appendix 1. 2017-2018 Survey Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 550

Appendix 2. Geographic Area Definitions Used in Prior Survey Reports . . . . . . . . . . . 556

Appendix 3.  Statement of Peer Review by The National Association of Legal Fee
    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 557

Appendix 4.  Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 559

1. Introduction

This Survey Report publishes the results of the United States Consumer Law Attorney Fee Survey for 2017-2018. This Survey Report continues to be the only national survey of Consumer Law practitioners in the United States and is the only Consumer Law survey whose methodologies have been independently peer reviewed and is supported by the National Association of Legal Fee Analysis, a non-profit professional national association of attorney fee experts in the field of legal fee analysis.

The Survey is based on data provided by private practitioners and also data culled from all court cases reporting attorney fee decisions in the field of Consumer Law in Lexis and Westlaw and unreported state court decisions during 2017 and 2018.  These Consumer Law Survey Reports have been used in more than 40 jurisdictions, including state and federal courts, the U.S. Court of Federal Claims, the U.S. Department of Justice, the U.S. Department of Labor, and the American Arbitration Association to determine reasonable attorney fee rates.

Attorneys in every state and the U.S. Territories took part in the national survey and the results this year continue the trend of being the most comprehensive since our continuous research work began in 1999.

The survey participant data is based on a survey employing an online, email, and telephone survey of attorneys representing about 4,500 members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys and other known attorneys practicing in the field of Consumer Law as identified through Avvo.com, Lawyers.com, and court filings and fee decisions around the country. There were 1,592 participating attorneys in this survey with data reported for 2,078 paralegals, establishing a robust 35.37% participation rate. A recent internet search for similar state bar association surveys located 7 recent surveys with an average participation rate of 11.8%.[1]

---

[1] A March 2019 Google  search of the term  "Economics of  Law Practice Survey,"  a common  title for many  bar association  surveys,  resulted in survey  reports with participation  rates  that  could  be  compared  to state attorney  totals as follows: Colorado (6.7%), Florida (of over 100,000 members, 3,284 were polled and 682 responses received; 20.7% of those polled, less than 1% of total membership), Kansas (9.3%), Michigan (30.3%: 20.9% of private practitioners and 9.4% of non-private practitioners), New Mexico (10.8%), Wisconsin (13.5%).

Methods to Update Survey Results from 2017-2018 to Current Date

Because the survey was conducted in 2017 and 2018, the hourly rates and other data reported represent 2017 and 2018 values. The reader may find some minor adjustment necessary or desirable for application outside of 2017 and 2018. Courts[2] have at times used percentage increases derived from the U.S. Census Consumer Price Index[3] to adjust rates to updated levels.

Goals of Survey Report

The primary goals of this research project have been and continue to be to:

- provide timely, relevant and accurate data benchmarks and information to inform and guide practical, management, and planning decisions by Consumer Law attorneys and firms, including private practitioners, non-private practitioners, the judiciary and government workers
- better understand the demographics of Consumer Law attorneys and their practice
- monitor and document general and key trends in the Consumer Law field of the legal profession, based on previous and present survey research and analysis
- understand how attorney compensation (e.g., hourly rate) is impacted by common variable factors (e.g., years in practice, niche area of practice, experience level, geographic location, and more)
- collect thorough and accurate information on the economic realities associated with the career field of Consumer Law to share with the bar and bench
- create a point of reference for future economic surveys of Consumer Law practitioners

---

[2] *Barnard v. Berryhill*, 2019 U.S. Dist. LEXIS 38671 (D.C. N.D. E. D. Ohio, Mar. 11, 2019); *United States Postal Serv. Fed. Credit Union v. Edwin*, 2018 U.S. Dist. LEXIS 31532, 2018 WL 1077291 (D. Virgin Islands, St. Croix Div., Feb. 27, 2018).

[3] *See* CPI Inflation Calculator, available at https://www.bls.gov/data/inflation_calculator.htm (Last visited Oct. 1, 2019).

What's New

A number of beneficial changes in format and content are introduced with this edition of the Survey Report. This section provides a central point where changes that appear in this new edition of the Survey Report are highlighted, explained and contrasted with the previous edition.

Foremost is the addition of survey data derived from hundreds of attorney fee decisions in and related to the field of Consumer Law which were issued by state and federal courts and administrative agencies in the United States and its Territories during 2017 and 2018. Sources for these fee decisions included Lexis, Westlaw, unreported case decisions, and private attorneys across the United States and it Territories. In each such fee decision, the court-awarded hourly rates were matched with the Court's geographical jurisdiction, each identified participating attorney's years in practice and firm size, their primary field of practice, the relevant Consumer Law niche area involved in the case, their law firm size, and other required survey data. Where the necessary survey data was not present in the court decision itself, internet research was undertaken to gather the missing relevant survey data points. In those few cases where necessary survey data points were still absent, individual attorneys were contacted to obtain the data points.

Thus, this edition of the Survey Report provides data that is based on reported data from participants and also actual fee decisions made by courts and agencies in the United States during 2017 and 2018. Such decision-based data was included in this Survey Report without regard to whether or not the decision forum relied on prior editions of this Survey Reports, e.g., all Consumer Law fee decisions in 2017 and 2018 were included in the resulting survey data upon which this Survey Report is based. The addition of these datapoints to the survey data allows the resulting Survey Report to achieve the highest level of accuracy in its results.

In the interests of transparency, a new table has been included at the beginning of the State and Metropolitan Area Tables, displaying the quantity of billable attorney and paralegal/legal assistant participation data counts for each section.

Another major change was the substantial increase in the quantity of metropolitan areas that are now individually reported in the Survey Report. The Survey Report now provides a data breakdown on 157 major metropolitan areas in the United

States, geographically covering 66.5% of the entire U.S. population.

The explanation of survey techniques, previously Section 5 of earlier Survey Reports, is now more centrally located in this Section 1, the Introduction.

The Summary Profile of the Typical U.S. Consumer Law Attorney, section 2, has been expanded to include comparison data fields contrasting current data results with results from the last Survey Report, for easy comparison of broad historical data points.

This Survey Report continues coverage of every state, the District of Columbia and the two most heavily populated U.S. Territories, Puerto Rico and the U.S. Virgin Islands. With the increased inclusion of a larger quantity of greater metropolitan areas, the Survey Report now includes coverage of one or more greater metropolitan areas in every state. Data for every non-metropolitan area in the United States is still reported.

Since this survey began in 1999, greater localized data reporting has continued to be preferred by the Bench and Bar.  To better serve the continued sharpening of this shift in focus, the Survey Report has evolved over time from its original twelve multi-state regions to individualized and localized data reporting for rural and urban areas. This change continues our effort to provide the reader with a quick and easy analysis of relevant data on an ever increasing and higher level of locality. It is expected that the resulting analyses will be of greater use to the reader, the profession, the Bench, and Bar.

Consumer Law is recognized as a specialized field of law by courts[4] as well as universities, law schools and the profession itself. As the field has continued to mature, niche specialty areas developed within the broader field of Consumer Law and have been recognized as such by the Courts. Subtle differences in practices and hourly rates can be found when these niche areas are examined that can provide a better understanding of these niche practices to practitioners and courts. Such data continues to be reported herein.

Specific factors are recognized to commonly have a larger impact on an hourly rate than other, less common factors. These factors can vary the hourly rate by their

---

[4] As said by the Ohio 9th District Court of Appeals,  "[c]onsumer law is a specialty area that is not common among many legal practitioners." *Crow v. Fred Martin Motor Co.*,  2003-Ohio-1293 (Summit, App. No. 21128).

application and continue to be called Variables in this Survey Report. Thus what might be termed as Years in Practice, in prior editions of this survey and elsewhere, is now termed more accurately as an Experience Variable. The experience level of an advocate is a primary variable in determining a reasonable hourly rate.

To more clearly identify the meaning of "Firm Size" in the Survey Report tables, the title has been changed to "Average Number of Attorneys in Firm."

To better understand the "years in practice" variable and its localized impact on a professional's hourly rate in larger greater metropolitan areas, a selected group of data-rich greater metropolitan areas in this Survey Report are now followed by an Experience Variable table that shows changing hourly rates over a practitioner's career. These Experience Variable tables take the years in practice of legal practitioners and breaks it down into brackets, generally in five year increments and capped by the elder bracket of 41+ years in practice. The average attorney hourly rate for each bracket is then provided.

Previously the ten states with the largest survey participation provided detailed data that allowed those state Survey Reports to include additional data tables, including a Specialty Variable table, Small Firm Size Variable table, and Large Firm Size Variable table. The substantial increase in survey participation and the addition of datapoints from court fee award data has allowed detailed, in-depth analysis to now be reported on 16 states, Arkansas, California, Colorado, Florida, Georgia, Illinois, Massachusetts Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas, Washington.

The Specialty Variable table focuses on the percentage of practice time that is consumed by the practitioner on Consumer Law matters in brackets of ten percentage points from 50% to 100%. The average attorney hourly rate for each bracket is then provided.

The Small Firm Size Variable table and the Large Firm Size Variable table each take the Experience Variable tables and separate them by law firm size, as measured by the average number of attorneys in the firm, and then report the average attorney hourly rates for each years in practice bracket therein. This allows further contrast of data between large and small firm members by their levels of experience.

The Table of Authorities has been expanded with additional case citations that provides a convenient alphabetical listing of cases and authorities cited in this Survey

Report, updated to September 10, 2019.

## Survey Report Sections Explained

After this introductory section, the results of this Survey Report are reported first from a national viewpoint and then in two major localized data sections. At the beginning of each Section is an explanatory table of the Section's structure and content.

Section 2 of this Survey Report contains the Summary Profile of the Typical U.S. Consumer Law Attorney, a collective approach to the entire survey results which yields a general picture of key aspects of the typical U.S. Consumer Law practitioner in the United States and its territories. It is based on the survey results as a whole and may serve as a benchmark for both larger and local comparisons by the reader.

Section 3 begins the State Summary Tables analyses for each state in the United States, the District of Columbia, Puerto Rico and the U.S. Virgin Islands and includes a table of the Median Rate for the niche Practice Areas, reporting the 25% Median, the Median, and the 95% Median hourly rate brackets. This section provides the Survey's analytical approach to each state or area's survey results, which yields a more detailed summary picture of key aspects of the typical U.S. Consumer Law practitioner in each survey state or area.

Section 4 contains data for the greater metropolitan area tables for 157 greater metropolitan areas (GMA) in the United States. These GMA selections are based chiefly on the basis of their larger population count. For each GMA, this section contains a similar averages and median summary table as was included in Section 3 and also adds a Median Rate table for the niche Practice Areas and an Experience Variable Table (i.e., years in practice) to each greater metropolitan area analysis. This approach allows for a highly localized data reporting. Although the greater metropolitan area Median Rate for the niche Practice Areas tables only lists the Median point and not the 25% and 95% Median points that are listed in the state Median Rate for Practice Areas tables, there is a simple and statistically reliable way to calculate those greater metropolitan points if the reader desires to do so in a specific situation.

Since the Median Rate for Practice Areas provided in Section 3 give the 25% and 95% Median points and the table in Section 4 does not do so, the greater metropolitan area 25% and 95% points can be calculated based on the percentage difference away

from the Median point. For example, in the state Median Rate for Practice Areas table for Alabama, the Credit Rights fields for 25%, Median, and 95% list hourly rates of $263, $350, and $625 respectively. In the Birmingham, Alabama greater metropolitan Mediate Rate for Practice Areas table, the Credit Rights field only lists the Median at an hourly rate of $350.  Referring to the greater metropolitan table field for Credit Rights shows the Median hourly rate to be $350. The state table field for the Median is $350. The greater metropolitan table field is 100% of the state table field number. Applying that percentage to the 25% and the 95% Median points will result in a close approximation of the Birmingham 25% and 95% Median points, e.g. $263 and $625 respectively.

Section 5 provides a brief discussion of cases employing the use of prior editions of this Survey Report along with a listing of citations to cases which have used or cited the Survey Report since its inception, both pro and con. Specific hourly rates in fee award decisions are included in recent cases, where available. Also included is a list of all known cases giving negative treatment of prior editions of the Survey Report with an editor's remark as to each that provides a better understanding of the difference between the prior edition of the Survey Report under consideration in that specific case and noting differences in the more recent and current Survey Report. It should be noted that the methodologies of these Survey Reports has evolved during the last twenty years to address any perceived deficiencies noted by the Bench and Bar and commentators.

Section 6 discusses various cases that have dealt with the actual use of survey data in court proceedings such as fee hearings, with citations.

Section 7 provides biographical information about the Survey Report Editor.

Section 8 provides contact information for the reader's recommendations for future survey data gathering or other suggestion.

The Appendices contain supporting material to enable the reader to better understand the survey and this Survey Report, including the actual survey questions and possible answers for each, a peer review statement, and more.

To easily locate any specific case cited in this Survey Report, consult the Table of Authorities in Appendix 4.

## Niche Areas in the Field of Consumer Law Defined

Consumer Law is recognized as a specialized area of law dealing with issues arising from transactions involving one or more persons acting as individuals or as a family. As a field of law, however, Consumer Law can be further reduced to finite and separate niche areas, typically rooted in the protection afforded by different types of consumer rights that are most often based on specific state and federal statutes. These include, for example, the United States Bankruptcy Code, the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Equal Credit Opportunity Act, the Truth in Lending Act, the Uniform Consumer Sales Practices Act (in the form of its state adaptations that are commonly called Unfair and Deceptive Acts and Practices, i.e., UDAP laws, Landlord-Tenant Statutes, the Mortgage Action and Forbearance Act, Credit Discrimination, the Magnuson Moss Warranty Act, state Lemon and Warranty laws, State and Federal Odometer Tampering laws, laws dealing with telemarketing, "junk" faxes, prepaid entertainment programs, and more. These numerous statutes can be grouped by the type of rights they each seek to preserve and protect for the purpose of this survey, because of the similarities involved in asserting such rights.

While Consumer Law is a field of law, for a closer analysis of the niche areas within Consumer Law, the following categorization has been made for purposes of this Survey Report and the Median Rate for Practice Areas tables:

1. Consumer Bankruptcy
2. Consumer Protection Class Action (based upon one of the other niche areas)
3. Credit Rights (FCRA, FDCPA, ECOA, TILA, Credit Discrimination, Credit Reporting, Debt Defense, etc)
4. Mortgage (Foreclosure Defense, RESPA, HOLA, Housing Rights, Landlord-Tenant, other real estate rights enforcement laws, etc.)
5. Vehicle Litigation (Autofraud, Lemon Law, Warranty Law, Vehicle-related UDAP claims, Repossession Law, etc.)
6. TCPA (the Telephone Consumer Protection Act)
7. Other (Common Law Fraud, unfair and deceptive acts, etc.)

## Geographic Areas Defined

Survey participant data and Consumer Law case decisions on attorney fees has

been analyzed and compiled for this Survey Report for all 50 states and the geographic areas of the District of Columbia, Puerto Rico and the U.S. Virgin Islands and 157 greater metropolitan areas.

This national Survey Report also takes a localized view of the survey data by its inclusion of specific survey questions that differentiate population size and geographic areas of practice, which allows for data analysis of one or more greater metropolitan areas in every state. This enables a more detailed, specific and slightly different analysis of the survey data for the reader's review, application and analysis.

Generally, a greater metropolitan statistical area contains a core urban area of 50,000 or more population and includes the adjacent counties or municipalities that have a high degree of social and economic integration, as measured by commuting to work, with the urban core. However, a greater metropolitan area in this Survey Report is not defined the same as in the U.S. Census. The key difference is that in the Census definition of a metropolitan statistical area (MSA), the MSA may cross state or other governmental borders. In this Survey Report, data responses were confined to state or territorial political boundaries. For example, in this Survey Report the Chicago greater metropolitan area does not include the northwest Indiana area where Gary, Hammond and other Indiana cities are located which are socio-economically connected to Chicago, Illinois.

To provide even more detailed data, this survey obtained from each survey participant and case decision the specific niche area(s) of Consumer Law in which the participant or case attorney practiced. Thus, the differences in practicing in one niche area of Consumer Law can be compared with any of the other niche areas.

The responsive data enables an even more narrow and localized analysis to be generated and which provides median-based hourly rate numbers for these niche areas of Consumer Law within the wider field of Consumer Law itself, with a greater focus on geographic locality.

### The Average and the Median: What it Means to You

To assure an adequate understanding, interpretation and application of the data in this Survey Report, a brief explanation of common data terminology in this Survey Report may be useful.

The tables in this Survey Report use some terms whose meaning, while understood by statisticians, may not be clear to all readers. This Survey Report presents the compiled data in measures of central tendency (mean and median) and dispersion or spread (percentiles). These data points can also be combined to more precisely derive results that may be applicable in circumstances requiring more specific calculations because of the characteristics of a given situation where data is sought by the reader.

The mean (sometimes called the arithmetic average) is calculated by adding the values of all responses, then dividing by the number of responses.

For example, five responses are reported, 3, 4, 6, 8 and 12. The average is calculated by adding their values (3 + 4 + 6 + 8 + 12 = 33), then dividing by the number of responses (5). Thus, the average is 33 / 5 = 6.6.

The median has a different meaning.  It is the middle value of a series of values, which is initially rank-ordered from low to high. By definition, half the numbers are greater and half are less than the median. Both mean and median values are used throughout this Survey Report to denote the measure of central tendency, e.g., as a pointer for the central area of survey results without regard to the average.

Statisticians variously agree that using the median as a statistic reduces the effect of extreme outlier numbers (extremely high or low values, such as 12 in the above example) while the average does not do so because it takes all numbers into account.

As an example of how using a median affects the above numbers, the same five responses are reported, 3, 4, 6, 8 and 12. The median is the middle number of the order of distribution, 6. Note, however, that the average of this same distribution of numbers is 6.6. Depending on the set of numbers under analysis, the mean (i.e., the average) may be incrementally higher or lower than the actual median of that set of numbers.

The median literally is the value in the middle. It represents the mid way point in a sequence of numbers. It is determined by lining up the values in the set of data (for example, in this fee survey that would be all of the individual fee rate responses logged in the survey) from the smallest to the largest. The one in the dead-center position is the median number.

The median is not the average of the numbers because you don't add anything in the list, but you merely determine the center of the list. Some statisticians say that using

the mean (instead of the average) gives less weight to the individual numbers that are on the outer limits of the survey responses and thus it is more likely to direct the survey to the real center of the responses.

The median result of a set of numbers may be higher or lower than the average of that same set of numbers. Because the median number is commonly not the same as the average number, being either slightly above or below it, we are including both the average and the median results for key data points in the survey.

The dispersion of data around the median, which is at the 50th percentile point, is reported in three increments in several places throughout the Survey Report:

- 25th percentile (what statisticians call the lower quartile); one-fourth of the number values are less and three-fourth of the values are more than this value

- 75th percentile (the upper quartile); three-fourths of the number values are less and one-fourth are more than this value

- 95th percentile; ninety-five percent of the number values are less and only five percent are more than this value.

Interpreting the Findings: Primary and Minor Variable Factors

An hourly attorney fee rate may commonly be impacted by a combination of several factors each applied when applicable and potentially varying degrees. The four primary factors are years in practice, firm size, practice location, and degree of practice concentration. These four variables are widely known to have a significant impact on an hourly rate and in this survey are identified as the primary variables. This Survey Report provides data on all these variable factors.

Another often widely variable factor that is sometimes considered in determining a reasonable hourly rate is reputation, although it is highly individualistic. Characteristics that may contribute to the individual attorney's reputation would include trial experience, continuing legal education presentations in or related to an attorney's primary practice field, related articles and book publications, and publicly available professional rating services such as Martindale-Hubbell and Avvo. Individual

analysis of these characteristics can be undertaken where and when and to the degree deemed appropriate.

Depending on the specific situation, there are other variable factors that historically are often of less impact than the primary variables, such as advertising, personal client relationships, and other more remote factors. These minor variables may apply in often unique instances but almost always to a lesser variable degree than the primary variables. Most often these minor variables are highly individualistic to the practitioner at hand and can be examined where and when and to the degree deemed appropriate.

Thus, the information presented here on the factors that are primary variables will be indicative of a particular attorney's reasonable hourly rate but there may be times when a further, more detailed analysis of minor variable factors may be useful to further refine and modify the result of the primary variable factors to a specific situation. Such a detailed analysis requires an individualistic inquiry and even then the potential impact of such these additional variables may be limited and doubtful.

A Summary Profile of the Typical U.S. Consumer Law Attorney is presented at the outset of this Survey Report in Section 2, in order to provide a summary profile of the average U.S. Consumer Law attorney and their practice. It may be viewed as the average of all survey responses nationwide. Charts appear here which are employed in the state and greater metropolitan sections, enabling a local versus national comparison of data.

The Experience Variable Tables present an analysis of the impact that the years of experience in practice has on hourly rates. Each greater metropolitan area has its own table of survey results with the levels of experience, e.g., years in practice, being divided into 11 time frames with less than one year and more than 41 years bracketing the outer limits at each end.

One might think that longevity of practice would dictate an increasingly higher hourly rate and these tables report survey results that test that assumption and, in some cases, variations are observed. For instance, since the beginning of this survey work twenty years ago, a bell shaped curve and other seemingly odd variations have historically been observed among senior levels of years in practice. Economic and social trends outside of this survey may further test the assumption of a relationship between increasing years in practice and an increasing hourly rate, but these are not considered

in this survey.

The State and Metropolitan Summary Tables in Sections 3 and 4 are presented to give an overview of the practice of Consumer Law lawyers for each listed state, area or greater metropolitan area. Note the use of both average and median results in these sections, with the median used to reduce the effect of extremely high or low values in some data. These tables also show the difference in survey results when comparing the average hourly rates and the median hourly rates, a factor considered by some statisticians to arrive at what they may consider to be more neutral or accurate survey results.

## Survey Techniques Explained

Surveys are widely considered to be important tools in any evaluation process. There are fundamentally two types of surveys: open ended questioning and closed ended questioning.

Open ended questions allow the responder to respond in any manner at all with no definite or limited answer. Close ended questions provide a limited number of possible answers from which a response can be chosen by the responder. Because open ended questions allow for an unlimited response, they can lead to a subjective analysis and the results are almost always more difficult to interpret and quantify for analysis.

Close ended questions, however, lend their responses to an easy and objective statistical analysis. This survey employed only close ended questions.

There are five types of close ended questions.

A Likert-scale question allows for responses on a scale and allows a responder to state their feelings about an issue, such as strongly agree to strongly disagree. Multiple choice questions allow the responder to select from a finite number of responses. Ordinal questions ask the responder to rate things in relation to each other, such as selecting the most important to the least important responses about an issue. Categorical questions first place the responder in a category and then poses questions based on those categories, such as preceding questions with the initial inquiry of whether the responder is male or female. Numerical questions are used when the answer must be a real number.

Different types of questions are used in survey work so that different types of result analyses may be conducted, but the most common survey techniques are the numerical and the multiple choice question because of the ease with which conclusions may be derived from the raw data.

In general, this survey used numerical and multiple choice questions. This allows for precise responses that can readily be cataloged and statistically interpreted. Categorical questions also exist within the survey that allowed for more information to be obtained from practitioners of consumer bankruptcy law, while allowing non-consumer bankruptcy practitioners to skip that focused section of the survey.

## Survey Design Methodology

In addition to considering the types of questions to be employed in a survey, the very design of the survey itself should be considered. This requires considering the placement, wording, sequencing, and other factors that can influence accurate data gathering.

In designing the United States Consumer Law Attorney Fee Survey, the author considered all procedure, question and design factors enumerated and discussed in three primary sources: *Evaluating Survey Questions: An Inventory of Methods* prepared by the Subcommittee on Questionnaire Evaluation Methods of the Statistical and Science Policy Office in the U.S. Office of Management and Budget (January 2016), and *Evaluating Survey Questions* by Doctor Chase H. Harrison of Harvard University's Program on Survey Research, and *Methods for Testing and Evaluating Survey Questions* by Stanley Presser et al, as published in Public Opinion Quarterly Vol. 68, Issue 1 (March 2004).

## Data Gathering Methodology

Understanding the data gathering methodology for this survey may assist the reader to understand, interpret, and apply the results published in this Survey Report.

This Survey Report is based on the results from two primary sources of data: the survey that was fielded to advocates operating in the field of Consumer Law during 2017 and 2018 and a continual survey of all available court and administrative decisions on

attorney fees in consumer civil and administrative litigation during 2017 and 2018. It is expected that this blend of data practitioner reported rates and court actual rate decisions will achieve a high level of accuracy.

In each case, the answers to a select number of key data questions was obtained. In addition, specific consumer bankruptcy practice questions were added to provide a more detailed analysis of that niche area, because of unique aspects and issues in Bankruptcy Law. The analysis of that data appears in a separate Survey Report.

The fielded survey was administered via email, ordinary mail, facsimile and telephonic data gathering and invitations to an internet-based online questionnaire. The survey was closed when data compilation began in early 2019.

In compiling this Survey Report, a valuable contribution was made by members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys, and Consumer Law attorneys independently determined to exist across the United States and its territories, who were invited to participate during 2017 and 2018.

The entire active membership of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys, along with other known Consumer Law practitioners from around the United States and its territories were asked to participate in the survey.

Invitations to participate were also randomly sent to Consumer Law attorneys discovered through internet search engine results conducted on a national level, including specific lawyer and professional listing web sites such as Avvo.com, Lawyers.com and LinkedIn.com, as well as randomly selected physical telephone book specialty listings. Invitations to participate were also randomly sent to attorneys identified through court filings in various jurisdictions and bar association directories.

As noted above, this survey included a systematic, comprehensive survey of court and administrative agency cases involving disputed attorney fee issues in consumer civil and administrative agency litigation. The resulting fee decisions which are included in the survey database came from every state, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.

To accomplish this case survey, case alerts were created and established in Lexis

and Westlaw so that the Survey Editor would receive alerts to every consumer dispute decision involving attorney fees. With each such alert, the case decision was read, the fee-prevailing attorneys identified and researched. In some cases the attorneys were invited to participate in the survey or directly asked survey questions, but in many cases the research results revealed the survey's required responses for each such attorney and were entered individually into the survey database. As a result, this Survey Report presents the results of both attorney participants and actual decisions made by courts and administrative agencies that occurred during 2017 and 2018.

As with prior surveys, an on-line survey service was utilized to gather and tabulate the results with safeguards in place to limit data input to one participant per survey. Additional direct email and telephone survey input was also utilized. As the data was analyzed, all substantial outlier data points were each investigated for authenticity, and disregarded where authenticity was not established.

Our similar studies have been undertaken continually since 1999. The objective of these studies has been to determine and report upon the demographics of Consumer Law practitioners, including attorney hourly billing rate, firm size, years in practice, concentration of practice, areas of primary and secondary practice, paralegal billing rates and other data of use to the profession.

The collected information has been condensed into this national reference to provide useful data and benchmarks to inform the public, bar, and bench, to assist attorneys who handle consumer disputes as they manage their practice, and provide useful aid to judicial officers as they seek to determine applicable reasonable hourly rates in the cases and disputes before them.

The data is reported in a variety of focus tables below, allowing the reader to consider the data from several viewpoints of selected factors or criteria. Nevertheless there may be situations where a practitioner desires a data analysis and report specific to their practice or situation. If a more detailed analysis of data for any geographic or practice-specific situation is necessary, it can be performed upon request directed to the editor of this work.

Data Analysis Methodology Explained

The data analysis relies on descriptive statistics, including averages, medians, and percentiles. The average, also known as the mean, is calculated by adding all of the

respondents' numerical answers for a particular item and dividing by the total number of respondents. The median, also known as the midpoint, is the point at which half of the responses are above and half are below that number.

The percentiles, e.g., 25th, 75th, and 95th, represent the point in the range of responses at which 25%, 75%, 95% of the respective responses occur for a specific question. For example, the 95th percentile hourly rate amount is the hourly rate amount at which 95% of the reported hourly rate amounts were below and 5% of the hourly rate amounts were above the number quoted.

Items may not sum up to 100% due to rounding in some cases. A data result is indicated as a dash mark (e.g., " - ") in this Survey Report if no data or if insufficient data was reported.

Data is presented for all of the United States and the geopolitical areas of the District of Columbia, Puerto Rico and the U.S. Virgin Islands. Some survey data quantities allowed for greater and closer analysis than other geographic areas because not all reported at high levels of data responses. In almost all table fields, survey participation yielded sufficient data for reliable analysis without any necessary use of inferential analysis. In the State Summary Tables, the minimum state participation level was 10 survey data points or participants for analyses to be performed. In the Metropolitan Summary Tables, the minimum greater metropolitan participation level was also 10 survey data points or participants for analyses to be performed. In a Median Rate for Practice Areas table, if one field had no resulting data then the remaining six other practice area fields in that table would be considered and the median result entered in the field that had insufficient participation.

This was a robust survey, e.g., there are more than 4,153 fields of data calculation in this Survey Report but only six data fields lacked sufficient data input when the survey was closed, which represents 0.0014447387 of all data presented. The results for these 6 data fields were marked with a dash, indicating deficient data level to make a reliable computation. In any other inatance, the result would be imputed using a variation of the scientifically accepted standard Maximum Likelihood Estimation (MLE) method statistical approach, which estimates the parameters of a statistical model given observations by finding the parameter values that maximize the likelihood of making the observations given the parameters. This approach assumes a uniform prior distribution of the parameters, which was verified to exist by examination of the presented data in this survey. The common variation of MLE employed here used multiple but related

fields as sources of data for imputation, invoking multiple fields of related known data to arrive at imputed data for the 11 missing fields. Data fields used for imputation purposes were limited to geographically contiguous data fields because of the established multi-state regional data relationships observed over our 20 years of previous survey data analyses. Simply put, data movement has always been more relational within a geographical area than when contrasted between geographical areas.

In performing calculations of state data for any field in any table, several rules applied for the imputation of missing or insufficient data.

First, if the current survey state data was insufficient then using the prior survey result the editor looked first for a field with data in the prior survey that was contiguous to the data deficient field in the current survey. Next, the editor determined the percentage change from one data field to the next data field in the prior survey and then applied that percentage change to the current survey to calculate the percentage change that would occur from the same known contiguous field to the data deficient field in the current survey. Finally, if there was none then the editor would use the average of all contiguous states' data in the deficient field to determine the entry for the insufficient data field.

In the greater metropolitan area Median Rate for Practice Areas table, if any data field was insufficient then the state data for that field is used. In performing calculations for the greater metropolitan Experience Variable Table, if greater metropolitan data was insufficient then the current survey uses the state data result for that field where data is insufficient. In performing the greater metropolitan area calculations for any field, if greater metropolitan area data is insufficient then the current survey uses the state data result for that field.

Peer Review of Methodologies and Survey Analyses

The National Association of Legal Fee Analysis (NALFA) has reviewed this edition of the United States Consumer Law Attorney Fee Survey Report prior to publication and has announced its support of the methodology used in the data collection and analyses performed. See Appendix 3.

NALFA is a 501(c)(6) non-profit professional association for the legal fee analysis field, providing services on attorney fee and legal billing matters. Courts and clients turn

to NALFA for expertise when attorney fees and expenses are at issue in large complex cases. NALFA members include fully qualified attorney fee experts, special fee masters, bankruptcy fee examiners, fee dispute mediators and legal bill auditors and NALFA members follow Best Practices in legal fee analysis. For more information, visit www.thenalfa.org.

## Error Rate

Before this publication, a hand selected review was conducted of selected data received during this survey and compared with the data reported in the previous survey. The results indicate an error rate of less than one percentage point at the 95% confidence level in the present Survey Report, a number substantially lower than the published error rate of similar types of surveys.

## Section 508 Compliance

The United States Consumer Law Attorney Fee Survey is the only survey of its type that is Section 508 Certified. This means that the survey program on which this survey runs meets all current U.S. Federal Section 508 certification guidelines.

Section 508 is a Federal law that outlines the requirements to make online information and services accessible to users with disabilities. All Federal agencies are required to use 508 certified software and technologies when available.

The Voluntary Product Accessibility Template (VPAT) was used in the design of the survey. VPAT's purpose is to assist Federal contracting officials and others in making preliminary assessments regarding the availability of commercial "Electronic and Information Technology" products and services with features that support accessibility. The VPAT was developed by the Information Technology Industry Council (ITI) in partnership with the U.S. General Services Administration (GSA).

Use of the VPAT means that this survey is built on programming that includes a text element for every non-text element of the survey web page, web pages are designed so that all information displayed with color is also available without color, all parts of the survey are readable without having to open another window, and other techniques to enable disabled persons to fully participate in every aspect of the Fee Survey.

The editor deems it important that the survey reach the broadest range of potential respondents possible in order to provide the reader with the most accurate results. By including survey feedback from the disabled demographic, the survey ensures a more representative population is able to participate so that all demographics may be included in the survey results.

California

| | This Survey |
|---|---|
| Average Number of Attorneys in Firm | 2.73 |
| Median Years in Practice | 158.0 |
| Average Concentration of Practice in Consumer Law | 72.1 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Average Number of Paralegals in Firm | 1.21 |
| Last Time Attorney Rate Changed (Average in Months) | 16.92 |
| Average Billable Paralegal Rate | 143 |
| Average Attorney Rate for All Attorneys | 450 |
| 25% Median Attorney Rate for All Attorneys | 350 |
| Median Attorney Rate for All Attorneys | 430 |
| 75% Median Attorney Rate for All Attorneys | 513 |
| 95% Median Attorney Rate for All Attorneys | 663 |
| Median Metropolitan Attorney Rate | 440 |
| Median Non-Metropolitan Attorney Rate | 450 |
| Median Attorney Rate in Northern Area of State | 450 |
| Median Attorney Rate in Southern Area of State | 425 |
| Median Attorney Rate in Eastern Area of State | 413 |
| Median Attorney Rate in Western Area of State | 475 |
| Median Attorney Rate in Central Area of State | 425 |

Median Rates for Practice Areas

|  | 25% Median | Median | 95% Median |
|---|---|---|---|
| Attorneys Handling Bankruptcy Cases | 338 | 413 | 631 |
| Attorneys Handling Class Action Cases | 350 | 488 | 700 |
| Attorneys Handling Credit Rights Cases | 325 | 412 | 663 |
| Attorneys Handling Mortgage Cases | 313 | 412 | 624 |
| Attorneys Handling Vehicle Cases | 338 | 450 | 663 |
| Attorneys Handling TCPA Cases | 350 | 425 | 725 |
| Attorneys Handling Other Cases | 263 | 350 | 600 |

Experience Variable Table

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 225 |
| 1-3 | 286 |
| 3-5 | 291 |
| 6-10 | 307 |
| 11-15 | 406 |
| 16-20 | 422 |
| 21-25 | 507 |
| 26-30 | 514 |
| 31-35 | 505 |
| 36-40 | 370 |
| 41-44 | 400 |
| 45+ | 531 |

Specialty Variable Table

| Percentage of Consumer Law Practice | Average Attorney Hourly Rate |
|---|---|
| 100 | 472 |
| 90 | 476 |
| 80 | 471 |
| 70 | 335 |
| 60 | 389 |
| 50 | 392 |

Small Firm Size Variable Table

| Years in Practice | Average Attorney Hourly Rate |
|---|---|
| <1 | 300 |
| 1-3 | 309 |
| 3-5 | 283 |
| 6-10 | 403 |
| 11-15 | 417 |
| 16-20 | 491 |
| 21-25 | 517 |
| 26-30 | 533 |
| 31-35 | 460 |
| 36-40 | 529 |
| 41-44 | 300 |
| 45+ | 531 |

Large Firm Size Variable Table

| Years in Practice | Average Attorney Hourly Rate |
|---|---|
| <1 | 200 |
| 1-3 | 250 |
| 3-5 | 310 |
| 6-10 | 416 |
| 11-15 | 430 |
| 16-20 | 572 |
| 21-25 | 483 |
| 26-30 | 425 |
| 31-35 | 688 |
| 36-40 | 397 |
| 41-44 | 600 |
| 45+ | 691 |

Cases Listed by State or Other Jurisdiction

A more comprehensive listing of cases using the *U.S. Consumer Law Attorney Fee Survey Report* when deciding attorney fee disputes in Consumer Law cases includes those on the following list.

## Alabama

*Hicks v. City of Tuscaloosa*, 2016 U.S. Dist. LEXIS 174579, 2016 WL 7029827 (N.D. Alabama, May 24, 2016) (considering 2010-2011 Survey Report in Discrimination under Family and Medical Leave Act case, granting $154,192.50 in fees).

*Jordan v. City of Birmingham*, 2015 U.S. Dist. LEXIS 183532, 2015 WL 12830455 (N.D. Alabama, Jun. 22, 2015) (considering 2010 - 2011 Survey Report, in EEOC case, requested fees of $61,850 granted to Plaintiff as supported by Survey Report).

## Arizona

*Savage v. NIC, Inc.*, 2010 U.S. Dist. LEXIS 60311, 2010 WL 2347028 (D. Ariz., Jun. 9, 2010) ([year not stated] Survey Report, in FDCPA, Credit Rights case, requested fees of $17,442 granted).

*Shelago v. Marshall & Ziolkowski Enterprise, LLC*, 2009 U.S. Dist. LEXIS 38940, 2009 WL 1097534 (D. Ariz., 2009., Apr. 21, 2009) ([year not stated] Survey Report in FDCPA, Credit Rights case, $17,175 requested and granted).

## California

*Warren v. Kia Motors America*, 2018 Cal. App. LEXIS 1144, 2018 WL 6520889 30 Cal.App.5th 24, 241 Cal.Rptr.3d 263 (C.A. 4th App Dist, Div. Two, Cal., Dec. 12, 2018) (2015-2016 Survey Report, in Lemon Law, Vehicle Litigation case, trial court's reduction of lodestar calculation making fees proportionate to damages was reversed).

*Medina v. South Coast Car Co.*, 15 Cal. App. 5th 671, 2017 Cal. App. LEXIS 820, 2017 WL 4247131 (C.A. 4th App Dist, Div. One, Cal., Sept 19, 2017) (2013-2014 Survey Report, in vehicle sales fraud case, $128,004 granted and upheld on appeal).

*Hollandsworth v. McDowell*, 2015 WL 12830177 (Cal. Super., May 20, 2015) (2007 Survey Report, in vehicle warranty breach case, $27,027 requested and granted).

## California, C.D.

*Biggerstaff v. Saul*, 2019 WL 4138015 (C.D. Cal., July 5, 2019) (while quoting applicable hourly rates from Survey Report, court adopted "de facto hourly rate of

"$1,400 per hour for combined attorney and paralegal time") (2015-2016 Survey Report, in EAJA, Social Security case, $32,760 granted).

*Liu v. BMW of North America, LLC*, 2019 WL 4196061 (C.D., W.D., Cal. May 29, 2019) (2013-2014 Survey Report, in Vehicle Warranty Law case, $140,567 granted) ($475 @ 12 Years; $500 @ 43 Years; $450 @ 14 Years; $550 @ 26 Years).

*Sayeed v. Cheatham Farms Master Homeowners' Ass'n*, 2019 WL 1949028 (C.D. Cal., Apr. 16, 2019) ("in recent years, the majority [of district courts in California] have been willing to consider the Report's results as evidence of prevailing hourly rates in FDCPA and Rosenthal Act cases.") (2015-2016 Survey Report, in FDCPA, Credit Rights, Udap case, $53,640 granted) ($450 @ 26 Years).

*Cunningham v Meridian Credit Group, LLC*, 2019 U.S. Dist. LEXIS 23680, 2019 WL 643966 (C.D. Cal., Feb. 11, 2019) (2013-2014 Survey Report, in Credit Rights, FDCPA case, $8,410 granted) ($300 @ 2 years; $400 @ 4 years).

*Castaneda v. Ocwen Loan Servicing*, 2018 U.S. Dist. LEXIS 198852 (C.D. Cal., Nov. 21, 2018) (2015-2016 Survey Report, in Mortgage, Credit Rights, FCRA, FDCPA case, $77,418 granted) (movant cited two pages of excerpted fee survey without explanation of how they supported request and cited rates from Arizona instead of the relevant Los Angeles community; court used hourly rates requested by one movant and reduced the other movant 10% after using awards by movant and its own knowledge of the local legal market) ($550 at 27 years; $450 @ 8 years).

*Carrion v Kirby Oldsmobile, Inc.*, 2018 WL 6137127 (D.D. Cal., Nov. 9, 2018) (objection to admission into evidence of *United States Consumer Law Attorney Fee Survey Report* overruled; attorney performing paralegal duties in case awarded paralegal hourly rate) (2015-2016 Survey Report, Vehicle Warranty case, $32,786.25 granted) ($475 @ 21 Years; $450 @ 21 Years; $350 @ 8 Years; $150 @ 15 Years for attorney performing paralegal duties).

*Low-Iacovino v. Benefit Plan Committee of Nonbargained Program of AT&T Pension Benefit Plan*, 2018 WL 6985241 (C.D. Cal., July 2, 2018) (2015-2016 Survey Report, in ERISA case, $33,630 granted) (Survey Report helpful but evidence of comparable rates in comparable ERISA cases desired and used by Court in fee decision).

*Townsend v. Yorkshire Acquisition Group*, 2018 U.S. Dist. LEXIS 142429, 2018 WL 4006956 (C.D. Cal., May 7, 2018) (2013-2014 Survey Report, in Credit Rights, FDCPA case, $4,480 granted) ($400 @ 3 Years; $300 @ 1 Year).

*Wilson v Berryhill*, 2018 WL 6010320 (C.D. Cal., May 4, 2018) (2013-2014 Survey Report, in EAJA, Social Security case, $4,341 granted).

*Benedict v. Fidelity Capital Holdings, Inc.*, 2016 WL 11518497 (C.C. Cal., June 9,

2016) (2013-2014 Survey Report, in FDCPA, Credit Rights case, $14,820 granted) ($650 @ 25 Years).

*Vardanyan v. CMRE Fin. Servs.*, 2013 U.S. Dist. LEXIS 183486(C.D. Cal., Feb. 11, 2013) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $18,303 granted).

*Ramirez v. N. Am. Asset Servs., LLC*, 2012 U.S. District LEXIS 54641, 2012 WL 1228086 (C.D. Cal., Apr. 9, 2012) (2007 Survey Report, in FDCPA, Credit Rights case, $2,126 requested and granted).

*Krapf v. Nationwide Credit, Inc.*, 2010 U.S. Dist. LEXIS 116689, 2010 WL 4261444 (C.D. Cal., Oct. 21, 2010) (2007 Survey Report, in FDCPA, Credit Rights case, hourly rates requested and approved, $26,120 granted).

## California, E.D.

*Flory v. McCabe, Weisberg & Conway, LLC*, 2019 WL 2562632 (D. NJ, June 20, 2019) (2015-2016 Survey Report, in FDCPA, Credit Rights case, $$3,762.50 granted) ($350 @ 25 Years).

*Uhl v. Colvin*, 2016 U.S. Dist. LEXIS 78779, 2016 WL 3361800 (E.D. Cal., Jun. 15, 2016) (2013-2014 Survey Report, in EAJA Social Security case, $10,363 granted).

*Davis v. Hollins Law*, 25 F.Supp.3d 1292, 2014 U.S. Dist. LEXIS 81024, 2014 WL 2619651 (E.D. Cal., Jun. 12, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights case, data-supported hourly rates used, $35,813 granted).

## California, N.D.

*Reenders v Premier Recovery Group*, 2019 WL 2583595 (N.D. Cal., May 7, 2019) (2015-2016 Survey Report, in FDCPA, Credit Rights case, $ 1,350 granted) ($225 @ 2 Years).

*Slotnick* v. I.C.Q. Search and Recovery, 2018 WL 6258888 (C.D. Cal., Sept. 19, 2018) (2015-2016 Survey Report, in FDCPA, Credit Rights case, $31,455 granted) ("The Court finds that the Attorney Fee Survey is an adequate means of establishing average billing rates for consumer protections attorneys in this forum" citing *Ramirez v. N. Am. Asset Servs. LLC*) ($400 @ 10 Years).

*Bratton v. FCA US LLC*, 2018 U.S. Dist. LEXIS 180975, 2018 WL 5279581 (N.D. Cal. Oct. 22, 2018) ("A number of courts, including courts in this District, have also found that the United States Consumer Law Attorney Fee Survey Report may be used as evidence of prevailing rates.") (2015-2016 Survey Report, in vehicle warranty breach case, $27,092 granted) ($350 @ 16 Years; $500 @ 15 Years; $400 @ 15 Years; $325 @ 11 Years; $350 @ 5 Years; $250 @ 4 Years).

*Forkum v. Co-Operative Adjustment Bureau, Inc.*, 2014 U.S. Dist. LEXIS 106912, 2014 WL 3827955 (N.D. Cal. Oakland Div., Aug. 4, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $21,097 granted) (initial motion denied without prejudice at 2014 U.S. Dist. LEXIS 91148, 2014 WL 3101784).

*Senah, Inc. v. Xi'an Forstar S&T Co*, 2016 U.S. Dist. LEXIS 72293, 2016 WL 3092099 (N.D. Cal., Jun. 2, 2016) (2013-2014 Survey Report, in breach of contract case, $145,692 granted).

*Klein v. Law Offices of D. Scott Carruthers*, 2015 U.S. Dist. LEXIS 75269, 2015 WL 3626946 (N.D. Cal., Jun. 10, 2015) (2013-2014 Survey Report, in FDCPA, Credit Rights case, $4,886 granted).

*Hampton v. Colvin*, 2015 U.S. Dist. LEXIS 53630, 2015 WL 1884313 (N.D. Cal., Apr. 23, 2015) (2010-2011 Survey Report, in EAJA Social Security case, $3,741 granted).

*Brown v. Mandarich Law Group, LLP*, 2014 U.S. Dist. LEXIS 47020, 2014 WL 1340211 (N.D. Cal., Apr. 2, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $7,485 granted).

*Castro v. Commercial Recovery Sys.*, 2014 U.S. Dist. LEXIS 33675 (N.D. Cal., Mar. 13, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $2,520 granted).

*Stephenson v. Neutrogena Corporation*, 2012 U.S. Dist. LEXIS 105099, 2013 WL 12310811 (N.D. Cal., Aug. 22, 2013) (2010-2011 Survey Report, in Class Action case, $433,333 granted).

*Chan v. Booska*, 2013 U.S. Dist. LEXIS 109005 (N.D. Cal., Jul. 15, 2013) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $9,600 granted).

*Garcia v. Resurgent Capital Servs.*, 2012 U.S. Dist. LEXIS 123889, 2012 WL 3778852 (N.D. Cal., Aug. 30, 2012) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $187,292 granted).

*Ramirez v. North American Asset Services, LLC*, 2012 U.S. District LEXIS 54641, 2012 WL 1228086 (C.D. Cal., Apr. 9, 2012) ([year not stated] Survey Report), in FDCPA, Credit Rights cases, $2,521 granted).

## California, S.D.

*Norris v. Saul*, 2019 U.S. Dist. LEXIS 141318, 2019 WL 3935638 (S.D. Cal., August 20, 2019) (2015-2016 Survey Report, in EAJA case under 42 U.S.C. 406(b), $10,000 granted).

*Jackson v. Berryhill*, 2019 WL 1470869 (S.D. Cal., Apr 3, 2019) (2015-2016 Survey Report, in EAJA, Social Security case, $24,700 granted).

*Cash v Berryhill*, 2019 U.S. Dist. LEXIS 57694, 2019 WL 1469098 (S.D. Cal., Apr 3, 2019) (2015-2016 Survey Report, in EAJA, Social Security case, $21,224 granted).

*Overton v. Berryhill*, 2018 U.S. Dist. LEXIS 209766, 2018 WL 6523442 (S.D. Cal., Dec. 11, 2018) ("While Plaintiff has provided no evidence to support the reasonableness of the requested paralegal rate, despite it being his burden to do so, the Court looks to the [2015-2016] United States Consumer Law Attorney Fee Survey Report ("Report") to determine the market rate for paralegals," adopting the reported $100/hour San Diego paralegal median rate) (2015-2016 Survey Report, in EAJA, Social Security case, $200 @ 41 Years, $9,004 granted).

*Cole v. Mercantile Adjustment Bureau, LLC*, 2018 U.S. Dist. LEXIS 193511, 2018 WL 5920019 (S.D. Cal., Nov. 12, 2018) (2015-2016 Survey Report, in FDCPA, Credit Rights case, $375 @ 7 years; $375 @ 11 years; $150 @ 1 Years, $4,290 granted).

*Ulugalu v. Berryhill*, 2018 U.S. Dist. LEXIS 72442, 2018 WL 2012330 (S.D. Cal., Apr 30, 2018) (In the absence of evidence from the movant, "the Court looks to [the 2015-2016 Survey Report], adopting the reported $100/hour San Diego paralegal median rate) (2015-2016 Survey Report, in EAJA, Social Security case, $6,136 granted).

*Arana v. Monterey Fin. Servs.*, 2016 U.S. Dist. LEXIS 46111, 2016 WL 1324269 (S.D. Cal., Apr. 4, 2016) (2013-2014 Survey Report, in FDCPA, Credit Rights case, $4,450 granted).

*Nguyen v. HOVG, LLC*, 2015 U.S. Dist. LEXIS 124019, 2015 WL 5476254 (S.D. Cal., Sept. 15, 2015) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $41,350 granted).

*De La Torre v. Legal Recovery Law Office*, 2014 U.S. Dist. LEXIS 128220, 2014 WL 4547035 (S.D. Cal., Sept. 12, 2014) ([year not stated] Survey Report, in Cal. Anti-Slapp Law case, $6,321 granted).

*Verdun v. I.C. Sys.*, 2014 U.S. Dist. LEXIS 52238, 2014 WL 1456295 (S.D. Cal., Apr. 14, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $4,819 granted).

*Delalat v. Syndicated Office Sys.*, 2014 U.S. Dist. LEXIS 33756, 2014 WL 930162 (S.D. Cal., Jan. 28, 2014) (2010-2011, 2d Ed. Survey Report, in FDCPA, Credit Rights case, $230,342 granted).

*Crawford v. Dynamic Recovery Servs.*, 2014 U.S. Dist. LEXIS 4057, 2014 WL 130458 (S.D. Cal., Jan. 10, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights

case, $3,496 granted).

*Breidenbach v. Experian*, 2013 U.S. Dist. LEXIS 82093, 2013 WL 2631368 (S.D. Cal., Jun. 11, 2013) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $5,079 granted).

## Colorado

*Harper v. Stellar Recovery, Inc.*, 2015 U.S. Dist. LEXIS 154479, 2015 WL 7253239 (D. Colo., Nov. 16, 2015) (2013-2014 Survey Report, in FDCPA, Credit Rights case, $3,390 granted).

*Villanueva v. Account Discovery Systems, LLC*, 77 F.Supp.3d 1058, 2014 U.S. Dist. LEXIS 180001, 2015 WL 148965 (D. Colo., Dec. 12, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $1,385 granted).

*Crapnell v. Dillon Cos.*, 2015 U.S. Dist. LEXIS 96184, 2015 WL 4484469 (D. Colo., Jul. 22, 2015) (2010-2011 Survey Report, in Sanctions case, $2,100 granted).

*Gregg v. N.A.R., Inc.*, 2014 U.S. Dist. LEXIS 32017, 2014 WL 959412 (D. Colo., Mar. 12, 2014) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $4,694 granted).

*Reichers v. Del. Asset Mgmt., LLC*, 2013 U.S. Dist. LEXIS 164981, 2013 WL 6096136 (D. Colo., Nov. 20, 2013) (rejecting Laffey Matrix, using Survey Report) ([Edition not stated] Survey Report, in FDCPA, Credit Rights case, $2,085 granted).

*Rodriguez v. Luchey & Mitchell Recovery Solutions, LLC*, 2013 U.S. Dist. LEXIS 164285, 2013 WL 6068458 (D. Colo., Nov. 18, 2013) (2010-2011 Survey Report, in FDCPA, Credit Rights, TCPA case, $2,172 granted).

*Andalam v. Trizetto Group*, 2013 U.S. Dist. LEXIS 159656, 2013 WL 5952012 (D. Colo., Nov. 7, 2013) (2010-2011 Survey Report, in Discovery Sanction case, requested hourly rates supported by Survey Report, $2,500 granted).

*Bock v. APIM, LLC*, 2013 U.S. Dist. LEXIS 176648 (D. Colo., Nov. 7, 2013) (2010-2011 Survey Report, in FDCPA, Credit Rights, TCPA case, $2,520 granted).

*Peterson-Hooks v. First Integral Recovery, LLC*, 2013 U.S. Dist. LEXIS 73907, 2013 WL 229544 (D. Colo., May 24, 2013) (2010-2011 Survey Report, in FDCPA, Credit Rights case, $4,837 granted).

*Scadden v. Weinberg, Stein & Associates, LLC*, 2013 U.S. Dist. LEXIS 57939, 2013 WL 1751294, at *6 (D. Colo., Apr. 23, 2013) (rejecting Laffey Matrix, using Survey Report) (2007 Survey Report, in FDCPA, Credit Rights case, $2,862 granted).